# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

E2INTERACTIVE, INC., and
INTERACTIVE COMMUNICATIONS
INTERNATIONAL, INC.,

                    Plaintiffs,

          v.

BLACKHAWK NETWORK, INC.,

                  Defendant.

Case No. 3:09-CV-629-slc

## BLACKHAWK NETWORK, INC.'S ANSWER
## TO AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS

Defendant and Counterclaimant Blackhawk Network, Inc. ("Blackhawk") hereby answers the Amended Complaint ("the Amended Complaint") of Plaintiffs e2lnteractive, Inc. ("e2lnteractive") and Interactive Communications International, Inc. ("InComm") as follows:

### NATURE AND BASIS OF ACTION

1.    Blackhawk admits that the Amended Complaint purports to allege an action arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* Blackhawk further admits that the Amended Complaint purports to seek injunctive relief, damages, and recovery of reasonable costs and attorneys fees, but Blackhawk denies that InComm is entitled to any relief.

### THE PARTIES

2.    Blackhawk is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2 of the Amended Complaint, and therefore denies them.

3.      Blackhawk is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 3 of the Amended Complaint, and therefore denies them.

4.      Blackhawk admits that it is a corporation organized and existing under the laws of the State of Arizona and that Blackhawk has a principal place of business at 6220 Stoneridge Mall Road, Pleasanton, California 94588.

## JURISDICTION AND VENUE

5.      Blackhawk admits that the Amended Complaint purports to allege claims arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and bases subject matter jurisdiction on 28 U.S.C. §§ 1331 and 1338(a).

6.      Blackhawk denies each and every allegation contained in paragraph 6 of the Amended Complaint.

7.      Blackhawk denies each and every allegation contained in paragraph 7 of the Amended Complaint.

## THE PATENTS-IN-SUIT

8.      Blackhawk admits that a copy of United States Patent No. 7,578,439 (the "'439 patent") is attached to the Amended Complaint as Exhibit A.  Blackhawk admits that the '439 patent states on its cover page that it is entitled "System and Method for Authorizing Stored Value Card Transactions," that Phillip Craig Graves, Merrill Brooks Smith, and Phil M. Chakiris are listed as inventors, that the Date of Patent is August 25, 2009, and that the Assignee is listed as e2lnteractive, Inc.  Blackhawk is without knowledge or information sufficient to form a belief as to the truth or falsity as to whether the '439 patent is assigned to e2lnteractive, and therefore denies the allegation.  Blackhawk denies the remaining allegations contained in paragraph 8 of the Amended Complaint.

9.      Blackhawk denies each and every allegation contained in Paragraph 9 of the Amended Complaint.

10.     Blackhawk admits that a copy of United States Patent No. 7,630,926 (the "'926 patent") is attached to the Amended Complaint as Exhibit B.  Blackhawk admits that the '926 patent states on its cover page that it is entitled "Inserting Value Into Customer Account at Point of Sale Using a Customer Account Identifier," that Phillip Craig Graves, Merrill Brooks Smith, and Phil M. Chakiris are listed as inventors, that the Date of Patent is December 8, 2009, and that the Assignee is listed as e2Interactive, Inc.  Blackhawk is without knowledge or information sufficient to form a belief as to the truth or falsity as to whether the '926 patent is assigned to e2Interactive, and therefore denies the allegation.  Blackhawk denies the remaining allegations contained in paragraph 10 of the Amended Complaint.

11.     Blackhawk denies each and every allegation contained in Paragraph 11 of the Amended Complaint.

12.     Blackhawk is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 12 of the Amended Complaint, and therefore denies them.

## ACCUSED PRODUCTS AND SERVICES

13.     Blackhawk denies each and every allegation contained in paragraph 13 of the Amended Complaint.

14.     Blackhawk denies each and every allegation contained in paragraph 14 of the Amended Complaint.

15.     Blackhawk denies each and every allegation contained in paragraph 15 of the Amended Complaint.

## COUNT I

### (Infringement of the '439 Patent)

16.     Blackhawk incorporates by reference its responses to paragraphs 1 through 15 of the Amended Complaint as if set forth fully herein.

17.     Blackhawk denies each and every allegation contained in paragraph 17 of the Amended Complaint.

18.     Blackhawk denies each and every allegation contained in paragraph 18 of the Amended Complaint.

19.     Blackhawk denies each and every allegation contained in paragraph 19 of the Amended Complaint.

20.     Blackhawk denies each and every allegation contained in paragraph 20 of the Amended Complaint.

## COUNT 2

### (Infringement of the '926 Patent)

21.     Blackhawk incorporates by reference its responses to paragraphs 1 through 20 of the Amended Complaint as if set forth fully herein.

22.     Blackhawk denies each and every allegation contained in paragraph 22 of the Amended Complaint.

23.     Blackhawk denies each and every allegation contained in paragraph 23 of the Amended Complaint.

24.     Blackhawk denies each and every allegation contained in paragraph 24 of the Amended Complaint.

25.     Blackhawk denies each and every allegation contained in paragraph 25 of the Amended Complaint.

## AFFIRMATIVE DEFENSES

Blackhawk asserts the following affirmative defenses.  Blackhawk reserves the right to add defenses that may be supported by the facts upon the completion of discovery.

### FIRST AFFIRMATIVE DEFENSE

26.     The Amended Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

27.     The '439 and '926 patents are invalid for failing to comply with one or more provisions of Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### THIRD AFFIRMATIVE DEFENSE

28.     Blackhawk has not infringed and does not infringe, either directly or indirectly, any of the claims of the '439 patent or '926 patent, either literally, under the doctrine of equivalents, willfully or otherwise.

### FOURTH AFFIRMATIVE DEFENSE

29.     e2lnteractive and InComm are estopped, by virtue of cancellations, amendments, representations, and concessions made to the United States Patent and Trademark Office (the "USPTO") during the prosecution of the '439 patent and/or the prosecution of any applications or patents from which it claims priority, from construing any claim of the '439 patent to have been infringed by Blackhawk.

30.     e2lnteractive and InComm are estopped, by virtue of cancellations, amendments, representations, and concessions made to the United States Patent and Trademark Office (the "USPTO") during the prosecution of the '926 patent and/or the prosecution of any applications

or patents from which it claims priority, from construing any claim of the '926 patent to have been infringed by Blackhawk.

## FIFTH AFFIRMATIVE DEFENSE

31.     To the extent that e2lnteractive (or InComm) does not own all rights to the '439 patent or '926 patent, InComm's Amended Complaint must be dismissed for lack of standing.

## SIXTH AFFIRMATIVE DEFENSE

32.     35 U.S.C. § 287 limits recovery of damages, if any, by e2lnteractive and InComm.

## SEVENTH AFFIRMATIVE DEFENSE

33.     e2lnteractive and InComm are not entitled to injunctive relief because any injury is not immediate or irreparable, an adequate remedy at law exists, the balance of hardships favors no injunction, and the public interest is best served by no injunction.

## EIGHTH AFFIRMATIVE DEFENSE

34.     e2lnteractive and InComm are precluded from recovering on their claims for relief pursuant to the doctrines of acquiescence, estoppel, laches, waiver, prosecution laches, and/or other applicable equitable doctrines.

## NINTH AFFIRMATIVE DEFENSE

35.     e2lnteractive and InComm are precluded from recovering on their claims for relief pursuant to the doctrine of unclean hands, including but not limited to their conduct before the USPTO.  Additional factual allegations are set forth below in Blackhawk's Tenth and Eleventh Affirmative Defenses for inequitable conduct, which are incorporated herein by this reference.

## TENTH AFFIRMATIVE DEFENSE

36.    The '439 patent is unenforceable due to inequitable conduct committed during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

### The Dorf '787 Reference

37.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

38.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

39.    On December 10, 2003, prosecuting attorney David E. Baker filed U.S. Patent Application Serial No. 10/732,641 (the "'641 application") with the USPTO.  The '641 application listed Merrill B. Smith, Phillip C. Graves, and Jonathan O'Neal as its inventors and David E. Baker as the prosecuting attorney.  Gregory Murphy took over as prosecuting attorney of the '641 application on January 26, 2006.  On August 22, 2006, the '641 application issued as U.S. Patent No. 7,093,761 (the "'761 patent").

40.    The '761 patent issued prior to the filing of the '766 application and the '439 patent did not claim priority to the '761 patent.

41.    During the prosecution of the '761 patent, Examiner Thien Le cited U.S. Patent No. 6,189,787 (the "Dorf '787 reference") on May 9, 2005 and used it as a base reference in a

rejection of the '641 application.  Examiner Le again cited the Dorf '787 reference as a base reference in a rejection of the '641 application on November 1, 2005.

42.    Graves and Smith became aware of the Dorf '787 reference at least as early as May 9, 2005 through the rejection by Examiner Le.  Murphy became aware of the Dorf '787 reference at least as early as January 26, 2006 when responding to the November 1, 2005 rejection by Examiner Le based on the Dorf '787 reference.

43.    The rejection of the '641 application with the Dorf '787 reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

44.    The rejection of the '641 application with the Dorf '787 reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

45.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."  ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

46.    The rejection of the '641 application with the Dorf '787 reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because the Dorf '787 reference discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

a.  The Dorf '787 reference discloses a point of sale terminal that connects to a processing hub in order to allow a retailer "to remotely activate or add value or loyalty data to a system card." (Dorf '787 reference at 5:15-20.) In fact, Examiner Le in the '761 patent cited the Dorf '787 reference as disclosing a method allowing a card to be "activated or recharged in any amount desired by the customer." ('761 patent, Final Rejection, 11/1/2005, at 5.)

b.  The Dorf '787 reference further discloses that "a security check is performed to verify that this transaction is originating from a retailer that is authorized to sell the prepaid phone cards. If the transaction is originating from an authorized retailer, the transaction will proceed." (Dorf '787 reference at 7:11-15.)

47.  The Dorf '787 reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

48.  As participants in the '641 application, Graves, Smith, and Murphy were aware of the materiality of the Dorf '787 reference to the prosecution of the '439 patent as a result of the citation and two rejections by Examiner Le.

49.  Graves, Smith, and Murphy were under a duty to bring to the attention of the Examiner "information known to that individual to be material to patentability as defined in the section." *See* MPEP Section 2001.04.

50.  Graves, Smith, and Murphy were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

51.  As Graves, Smith, and Murphy were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their

obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Graves, Smith, and Murphy intended to deceive the USPTO by failing to disclose the Dorf '787 reference.

**The Epstein Reference**

52.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

53.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

54.    On December 10, 2003, David E. Baker filed U.S. Patent Application Serial No. 10/732,641 (the "'641 application") with the USPTO.  The '641 application listed Merrill B. Smith, Phillip C. Graves, and Jonathan O'Neal as its inventors and David E. Baker as the prosecuting attorney.  On August 22, 2006, the '641 application issued as U.S. Patent No. 7,093,761 (the "'761 patent").

55.    The '761 patent issued prior to the filing of the '766 application and the '439 patent did not claim priority to the '761 patent.

56.    During the prosecution of the '761 patent, Examiner Thien Le cited US 2003/0105672 (the "Epstein reference") on May 9, 2005 and used it as a secondary reference in a rejection of the '641 application.  Examiner Le again cited the Epstein reference as a secondary reference in a rejection of the '641 application on November 1, 2005.

57.     Graves and Smith became aware of the Epstein reference at least as early as May 9, 2005 through the rejection by Examiner Le.

58.     The Epstein reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

59.     The Epstein reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

60.     On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant." ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

61.     The Epstein reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

a.   The Epstein reference discloses a point of sale terminal having a point-of-sale ID filed that "stores a numeric code that uniquely identifies the point-of-sale location or entity to which the money cards were sold." (Epstein reference at Paragraph [0086].)

b.   The Epstein reference further discloses that a card can be swiped through the machine to run a transaction that "goes through to Wal-Mart, Blockbusters, etc.

severs to the server of the present system which completes the fuel transaction and gives the card value." (*Id.* at Paragraph [0070].)

62.    The Epstein reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

63.    As participants in the '641 application, Graves and Smith were aware of the materiality of the Epstein reference to the prosecution of the '439 patent as a result of the citation and two rejections by Examiner Le.

64.    Graves and Smith were under a duty to bring to the attention of the Examiner "information known to that individual to be material to patentability as defined in the section." *See* MPEP Section 2001.04.

65.    Graves and Smith were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

66.    As Graves and Smith were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Graves and Smith intended to deceive the USPTO by failing to disclose the Epstein reference.

**The Mann Reference**

67.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

68.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C.

Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney. On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

69.    On November 3, 2003, David Baker filed U.S. Patent Application Serial No. 10/698,084 (the "'084 application") with the USPTO. The '084 application listed Jonathan O'Neal as its inventor and David Baker as the prosecuting attorney. On April 18, 2006, the '084 application issued as U.S. Patent No. 7,028,891 (the "'891 patent").

70.    The '891 patent issued prior to the filing of the '439 patent. The '439 patent did not claim priority to the '891 patent, nor did the '891 patent claim priority to the '439 patent.

71.    During the prosecution of the '891 patent, Examiner Allyson Trail cited U.S. Patent No. 6,119,096 (the "Mann reference") in an Ex Parte Quayle action on April 21, 2005.

72.    Graves and Smith became aware of the Mann reference at least as early as April 21, 2005 through the office action by Examiner Trail.

73.    The Mann reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

74.    The Mann reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

75.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to

a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant." ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

76.    The Mann reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

   a.    The Mann reference discloses an "integrated financial transaction system and method for providing debit or credit/charge functions and enabling ingress/egress to halls, stadiums, public mass transit networks, and the like using biometric identification procedures." (Mann reference at 4:34-38.)

   b.    The Mann reference further discloses usage of a set of turnstiles at various locations, "so that scan control and accounting computer **104** can record the entry point in database **106** and then later learn the exit point, to calculate the correct fare to be deducted from the user's account based on distance traveled." (*Id*. at 8:52-59.)

77.    The Mann reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

78.    As participants in the '084 application, Graves and Smith were aware of the materiality of the Mann reference to the prosecution of the '439 patent as a result of the citation and two rejections by Examiner Chandler.

79.    Graves and Smith were under a duty to bring to the attention of the Examiner "information known to that individual to be material to patentability as defined in the section." *See* MPEP Section 2001.04.

80.   Graves and Smith were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

81.   As Graves and Smith were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Graves and Smith intended to deceive the USPTO by failing to disclose the Mann reference.

**The Resnick Reference**

82.   The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

83.   On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

84.   On December 1, 2005, Gregory Murphy filed U.S. Patent Application Serial No. 11/290,606 (the "'606 application") with the USPTO.  The '606 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On December 8, 2009, the '606 application issued as U.S. Patent No. 7,630,926 (the "'926 patent").

85.     The '439 patent was co-pending with the '926 patent throughout the entirety of '439 patent prosecution, from March 27, 2007 through August 25, 2009.  The '439 patent did not claim priority to the '926 patent, nor did the '926 patent claim priority to the '439 patent.

86.     During the prosecution of the '926 patent, Graves, Smith, and Murphy cited the Resnick reference on an Information Disclosure Statement ("IDS") filed on June 26, 2007, showing that Graves, Smith, and Murphy were aware of the Resnick reference during the prosecution of the '439 patent.

87.     The Resnick reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

88.     The Resnick reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

89.     On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."  ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

90.     The Resnick reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

a. The Resnick reference discloses a point-of-sale terminal system that includes "a card reader that enables a merchant's employee to 'swipe' a credit card whereupon the card reader reads the credit card account number for transmission over the financial network as part of a credit (or debit) card purchase transaction." (Resnick reference at Paragraph [0020].) The system can also facilitate a transaction "in which the cardholder delivers cash or other payment to the merchant at the point-of-sale for the purpose of 'recharging' or adding value to an associated user account." (*Id.*)

b. The Resnick reference further contemplates having "one or more point-of-sale terminals to be networked or otherwise coupled to a merchant host computer at the retail location." (*Id.* at Paragraph [0024].) The terminals are able to communicate with a payment processor and a financial network, which will eventually send a message back to the terminal indicating approval or denial of the transaction. (*Id.* at Paragraph [0025].)

91.   The Resnick reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

92.   As participants in the '606 application, Graves, Smith, and Murphy were aware of the materiality of the Resnick reference to the prosecution of the '439 patent as evidenced by the June 26, 2007 IDS.

93.   Graves, Smith, and Murphy were under a duty to bring to the attention of the Examiner "information within their knowledge as to other copending United States applications

which are 'material to patentability' of the application in question." *See* MPEP Section 2001.06(b).

94.     Graves, Smith, and Murphy were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

95.     As Graves, Smith, and Murphy were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Graves, Smith, and Murphy intended to deceive the USPTO by failing to disclose the Resnick reference.

**The Stimson Reference**

96.     The '439 patent is unenforceable due to inequitable conduct committed by inventor Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

97.     On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

98.     On November 13, 2003, David Baker filed U.S. Patent Application Serial No. 10/712,182 (the "'182 application") with the USPTO.  The '182 application listed Merrill B. Smith as its inventors and David Baker as the prosecuting attorney.  Murphy took over as prosecuting attorney of the '182 application on April 28, 2006.  On January 30, 2007, the '182 application issued as U.S. Patent No. 7,168,615 (the "'615 patent").

99.    The '615 patent issued prior to the filing of the '766 application and the '439 patent did not claim priority to the '615 patent.

100.    During the prosecution of the '615 patent, Examiner Allyson Trail cited US Patent No. 6,502,745 (the "Stimson reference") on February 9, 2006 and used it as a base reference in a rejection of the '182 application.

101.    Smith became aware of the Stimson reference at least as early as February 9, 2006 through the rejection by Examiner Trail.  Murphy became aware of the Stimson reference at least as early as April 28, 2006 when responding to the February 9, 2006 rejection by Examiner Trail.

102.    The Stimson reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

103.    The Stimson reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

104.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."  ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

105.    The Stimson reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

a. The Stimson reference discloses a point-of-sale terminal system that allows "for point-or-sale variable authorization and recharging of cards. By the keeping track of the security number and the identification of the authorization data terminal, the system can generate accounting and/or billing information so that system operator can determine which data terminal operator authorized and/or recharged a particular calling card." (Stimson reference at 5:43-50.)

b. The Stimson reference further contemplates asking the customer to fill out a survey, if which the customer agrees to fill, a host computer runs a survey routine, which "typically includes storing and processing 116 various survey parameters such [as] transaction location, terminal ID, time/date of transaction, etc." (*Id*. at 9:39-57.)

106. The Stimson reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

107. As participants in the '182 application, Smith and Murphy were aware of the materiality of the Stimson reference to the prosecution of the '439 patent as a result of the citation and two rejections by Examiner Trail.

108. Smith and Murphy were under a duty to bring to the attention of the Examiner "information known to that individual to be material to patentability as defined in the section." *See* MPEP Section 2001.04.

109. Smith and Murphy were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

- 20 -

110.    As Smith and Murphy were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Smith and Murphy intended to deceive the USPTO by failing to disclose the Stimson reference.

**The Talati Reference**

111.    The '439 patent is unenforceable due to inequitable conduct committed by inventor Merrill B. Smith during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

112.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

113.    On November 3, 2003, David Baker filed U.S. Patent Application Serial No. 10/698,084 (the "'084 application") with the USPTO.  The '084 application listed Jonathan O'Neal as its inventor and David Baker as the prosecuting attorney.  On April 18, 2006, the '084 application issued as U.S. Patent No. 7,028,891 (the "'891 patent").

114.    The '891 patent issued prior to the filing of the '439 patent.  The '439 patent did not claim priority to the '891 patent, nor did the '891 patent claim priority to the '439 patent.

115.    During the prosecution of the '891 patent, Examiner Allyson Trail cited U.S. Patent No. 5,903,878 (the "Talati reference") in an Ex Parte Quayle action on April 21, 2005.

116.    Smith became aware of the Talati reference at least as early as April 21, 2005 through the citation by Examiner Trail.

117.    The Talati reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

118.    The Talati reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

119.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant." ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

120.    The Talati reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

a.    The Talati reference discloses an originator that processes a transaction that "may comprise a purchase, payment or request for an information document from recipient 55." (Talati reference at 4:47-52.) The Talati reference further contemplates utilizing an Originator Identity (ID) "to identify the originator 50 to a transaction administrator." (*Id*. at 9:39-57.)

b.    The Talati reference discloses a merchant identification being sent to a Credit Authority (CA) as part of a Unique Transaction Identifier (UTID). (*Id*. at 6:1-5.)

A client processor receives information from the CA to determine whether the transaction is valid.  (*Id*. at 6:5-18.)

121.    The Talati reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

122.    As a participant in the '084 application, Smith was aware of the materiality of the Talati reference to the prosecution of the '439 patent as a result of the citation by Examiner Trail.

123.    Smith was under a duty to bring to the attention of the Examiner "information known to that individual to be material to patentability as defined in the section."  *See* MPEP Section 2001.04.

124.    Smith was under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

125.    As Smith was aware of information, was aware of the materiality of that information to patentability of the '439 patent, and was aware of his obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Smith intended to deceive the USPTO by failing to disclose the Talati reference.

**The Karns Reference**

126.    The '439 patent is unenforceable due to inequitable conduct committed by inventor Merrill B. Smith during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

127.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the

prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

128.    On November 13, 2003, prosecuting attorney David E. Baker filed U.S. Patent Application Serial No. 10/712,182 (the "'182 application") with the USPTO.  The '182 application listed Merrill B. Smith as its inventor and David E. Baker as the prosecuting attorney. Murphy took over as the prosecuting attorney on April 28, 2006.  On January 30, 2007, the '182 application issued as U.S. Patent No. 7,168,615 (the "'615 patent").

129.    The '615 patent issued prior to the filing of the '766 application and the '439 patent did not claim priority to the '615 patent.

130.    During the prosecution of the '615 patent, Examiner Allyson Trail cited US 2004/0267663 (the "Karns reference") on February 9, 2006 and used it as a secondary reference in a rejection of the '182 application.

131.    Smith became aware of the Karns reference at least as early as February 9, 2006 through the rejection by Examiner Trail.

132.    The Karns reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

133.    The Karns reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

134.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card

records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."  ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

135.    The Karns reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

      a.    The Karns reference discloses an electronic top-up (ETU) terminal application that process input information and transmit a transaction request to a host over a network.  (Karns reference at Paragraph [0062].)

      b.    The Karns reference further discloses that the transaction receives a Unique Transaction Identifier (UTI) that contains "an ETU identifier, a solution provider ID code, a distributor ID code, and a unique serial number."  (*Id*. at Paragraph [0063].)

136.    The Karns reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

137.    As a participant in the '182 application, Smith was aware of the materiality of the Karns reference to the prosecution of the '439 patent as a result of the citation and rejection by Examiner Trail.

138.    Smith was under a duty to bring to the attention of the Examiner "information known to that individual to be material to patentability as defined in the section."  *See* MPEP Section 2001.04.

139.    Smith was under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

140.    As Smith was aware of information, was aware of the materiality of that information to patentability of the '439 patent, and was aware of his obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Smith intended to deceive the USPTO by failing to disclose the Karns reference.

**The Flitcroft Reference**

141.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

142.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

143.    On April 26, 2004, prosecuting attorney David E. Baker filed U.S. Patent Application Serial No. 10/831,922 (the "'922 application") with the USPTO.  The '922 application listed Phillip C. Graves and Merrill B. Smith as its inventors and David E. Baker as the prosecuting attorney.  On July 19, 2005, the '922 application issued as U.S. Patent No. 6,918,537 (the "'537 patent").

144.    The '537 patent issued prior to the filing of the '766 application and the '439 patent did not claim priority to the '537 patent.

145.    During the prosecution of the '537 patent, Examiner Allyson Trail cited US 2003/0028481 (the "Flitcroft reference") on August 11, 2004 and used it as a secondary reference in a rejection of the '922 application.

146.    Graves and Smith became aware of the Flitcroft reference at least as early as August 11, 2004 through the rejection by Examiner Trail.

147.    The Flitcroft reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

148.    The Flitcroft reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

149.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant." ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

150.    The Flitcroft reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

   a.    The Flitcroft reference discloses a merchant identification number that "can either be the actual credit card systems merchant-ID or another unique code.  In either case, the credit card merchant-ID that will be transmitted to the processing system

during the transaction is entered into the processing system's database. This

ensures that only the intended merchant can initiate a transaction with the

validated credit card number." (Flitcroft reference at Paragraph [0205].)

151.    The Flitcroft reference is not cumulative to the prior art of record because none of

the prior art of record contained the alleged distinguishing feature of the invention, as identified

by the Examiner.

152.    As participants in the '922 application, Graves and Smith were aware of the

materiality of the Flitcroft reference to the prosecution of the '439 patent as a result of the

citation and rejection by Examiner Trail.

153.    Graves and Smith were under a duty to bring to the attention of the Examiner

"information known to that individual to be material to patentability as defined in the section."

*See* MPEP Section 2001.04.

154.    Graves and Smith were under a duty to disclose all information material during

the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

155.    As Graves and Smith were aware of information, were aware of the materiality of

that information to patentability of the '439 patent, and were aware of their obligation to disclose

such information, yet failed to disclose the information, it is reasonable to infer that Graves and

Smith intended to deceive the USPTO by failing to disclose the Flitcroft reference.

**The Lorsch Reference**

156.    The '439 patent is unenforceable due to inequitable conduct committed by

inventors Phillip C. Graves and Merrill B. Smith during the prosecution of the '439 patent before

the USPTO at least for the reasons as described herein.

157.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

158.    On April 26, 2004, prosecuting attorney David E. Baker filed U.S. Patent Application Serial No. 10/831,922 (the "'922 application") with the USPTO.  The '922 application listed Phillip C. Graves and Merrill B. Smith as its inventors and David E. Baker as the prosecuting attorney.  On July 19, 2005, the '922 application issued as U.S. Patent No. 6,918,537 (the "'537 patent").

159.    The '537 patent issued prior to the filing of the '766 application and the '439 patent did not claim priority to the '537 patent.

160.    During the prosecution of the '537 patent, Examiner Allyson Trail cited U.S. Patent No. 5,903,633  (the "Lorsch reference") on August 11, 2004 and used it as a base reference in a rejection of the '922 application.

161.    The rejection of the '922 application with the Lorsch reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority.

162.    The rejection of the '922 application with the Lorsch reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

163.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the

central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant." ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

164.    The rejection of the '922 application with the Lorsch reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because the Lorsch reference discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

a.    The Lorsch reference discloses a prepaid phone card system where "the client swipes a phone card through the point of sale terminal and initiates a communication with the centralized computer." (Lorsch reference at 7:10-13.) The terminal can be used to add minutes to a phone card. (*Id*. at 8:36-47.)

b.    The system disclosed in the Lorsch reference includes a requesting terminal identifier as it "preferably utilizes Automatic Number Identification (ANI) technology, which enables the centralized computer to read the telephone number of the point of sale terminal initiating the transaction." (*Id*. at 7:44-53.)

165.    The rejection of the '922 application with the Lorsch reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

166.    As participants in the '922 application, Graves and Smith were aware of the materiality of the Lorsch reference to the prosecution of the '439 patent as a result of the citation and two rejections by Examiner Trail.

167.    In addition, Graves and Smith were previously aware of the Lorsch reference in other contexts:

      a.    Examiner Narayanswamy Subramanian cited the Lorsch reference as a base reference in rejections dated April 15, 2008, October 15, 2008, April 14, 2009, and March 16, 2010 during prosecution of U.S. Patent Application Serial No. 10/655,828 (the "'828 application").  The '828 application was co-pending with the '439 patent for entire prosecution of the '439 patent from filing of the application leading to the '439 patent on March 27, 2007 to its issuance on August 25, 2009.

      b.    Examiner Sara Chandler cited the Lorsch reference as a secondary reference in rejections dated December 19, 2008 and April 27, 2009 during the prosecution of U.S. Patent No. 7,578,439.

168.    Graves and Smith were under a duty to bring to the attention of the Examiner "information known to that individual to be material to patentability as defined in the section." *See* MPEP Section 2001.04.

169.    Graves and Smith were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

170.    As Graves and Smith were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Graves and Smith intended to deceive the USPTO by failing to disclose the rejection of the '922 application with the Lorsch reference.

**The Dorf '608 Reference**

171.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

172.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

173.    On February 8, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/672,689 (the "'689 application") with the USPTO.  The '689 application listed Phillip C. Graves and Merrill B. Smith as its inventors and Gregory Murphy as the prosecuting attorney. On November 6, 2007, the '689 application issued as U.S. Patent No. 7,292,998 (the "'998 patent").

174.    The '998 patent was co-pending with the '439 patent and the '439 patent did not claim priority to the '998 patent.

175.    During the prosecution of the '998 patent, Examiner Narayanswamy Subramanian cited U.S. Patent No. 6,000,608 (the "Dorf '608 reference") on May 30, 2007 and used it as a secondary reference in a rejection of the '689 application.

176.    The rejection of '689 application with the Dorf '608 reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

177.    The rejection of the '689 application with the Dorf '608 reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

178.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant." ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

179.    The rejection of the '689 application with the Dorf '608 reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

    a.    The Dorf '608 reference discloses a point of sale terminal that connects to a processing hub in order to allow a retailer "to remotely activate or add value or loyalty data to a system card."  (Dorf '608 reference at 5:9-14.)

    b.    The Dorf '608 reference further discloses that "a security check is performed to verify that this transaction is originating from a retailer that is authorized to sell the prepaid phone cards.  If the transaction is originating from an authorized retailer, the transaction will proceed."  (*Id*. at 7:5-9.)  In fact, Examiner Subramanian cited the Dorf '608 reference as disclosing a "central processor in selective communication with the first merchant terminal, the customer, and the one or more providers" which "is used to process transactions including the steps

of activating and redeeming." ('998 patent, Non-Final Rejection, 5/30/2007, at 8-9.) Examiner Subramanian also found that Dorf '608 discloses "passing from the central processor an activation confirmation to the first merchant terminal," "determining at the central processor whether the first merchant terminal is a trusted source of activation requests," "activating the card at the central processor," "determining at the central processor whether to activate the card based on receiving the first activation request," and "associating the stored value with the identifier," and "passing from the central processor an activation confirmation to the first merchant terminal after a determination to activate the card." (*Id*. at 9.)

180.    The rejection of the '689 application with the Dorf '608 reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

181.    As participants in the '689 application, Graves, Smith, and Murphy were aware of the materiality of the Dorf '608 reference to the prosecution of the '439 patent as a result of the rejection by Examiner Subramanian.

182.    In addition, Graves, Smith, and Murphy were previously aware of the Dorf '608 reference in other contexts:

   a.    Examiner Sara Chandler had cited the Dorf '608 reference as a secondary reference in a rejection on 2/22/2007 during prosecution of U.S. Patent Application Serial No. 10/655,828 (the "'828 application"). The '828 application was co-pending with the '439 patent for entire prosecution of the '439 patent from

filing of the application leading to the '439 patent on 3/27/2007 to its issuance on 8/25/2009.

b. Moreover, the '608 Dorf reference was well known at InComm, and to at least the Graves and Smith, because the owners of the Dorf '608 reference sued InComm on or about September 26, 2003 and alleged that InComm infringed the '608 Dorf reference in *Alexsam, Inc. v. Datastream Card Services, Ltd.*, Case No. 2:03-cv-00337-TJW (E.D. Tex.).  In connection with settling the lawsuit, InComm licensed the Dorf '608 reference.

183.   Graves, Smith, and Murphy were under a duty to bring to the attention of the Examiner "information within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question."  *See* MPEP Section 2001.06(b).

184.   Graves, Smith, and Murphy were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

185.   Intent to deceive the United States Patent and Trademark Office ("USPTO") can be inferred from Graves, Smith, and Murphy's lack of disclosure of the rejection of the '689 application with the Dorf '608 reference as well as material misrepresentations regarding the Dorf '608 reference.

a. In describing Dorf '608 reference in the '828 application, Graves and Smith stated that although the Dorf '608 reference "purports to alleviate some of the drawbacks" of another close prior art reference to Stimson, U.S. Patent No. 5,577,109, "it is believed that Dorf fails to verify sources of card activation requests so as to enhance detection of security breaches..."  ('828 application,

Specification, at Page 2, Paragraph [0006].)  The Applicants' statement was misleading and inaccurate.  The Dorf '608 reference specifically discloses verifying sources of card activation for security purposes.  (*See* Dorf '608 reference at 7:5-14 ("a security check is performed to verify that this transaction is originating from a retailer that is authorized to sell the prepaid phone cards.  If the transaction is originating from an authorized retailer...").)

b.  Because the Dorf '608 reference was considered a particularly important and close prior art reference, the Dorf '608 reference appeared in the Background of the Invention in the previously filed '828 application from which the '439 patent purports to claim priority.  But when Graves, Smith, Chakiris, and Murphy filed the '766 application that led to the '439 patent, for which the '766 application was assigned to a new examiner (Examiner Allyson Trail), any reference to the Dorf '608 reference was dropped.

c.  Furthermore, Graves, Smith, Chakiris, and Murphy continued this misleading practice of dropping any discussion of the Dorf '608 reference from the specification when filing the applications leading to Patent No. 7,630,926 (the "'926 patent") and Patent No. 7,311,249 (the "'249 patent").  Graves, Smith, Chakiris, and Murphy failed to submit the Dorf '608 reference during prosecution of both the '926 patent  and the '249 patent.

186.  As Graves, Smith, and Murphy were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their obligation to disclose such information, yet failed to disclose the information, it is reasonable to

infer that Graves, Smith, and Murphy intended to deceive the USPTO by failing to disclose the Dorf '608 reference.

### The Walker Reference

187.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

188.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

189.    On February 8, 2007, Gregory Murphy filed U.S. Patent Application Serial No.11/672,689 (the "'689 application") with the USPTO.  The '689 application listed Phillip C. Graves and Merrill B. Smith as its inventors and Gregory Murphy as the prosecuting attorney. On November 6, 2007, the '689 application issued as U.S. Patent No. 7,292,998 (the "'998 patent").

190.    The '439 patent was co-pending with the '998 patent.  The '439 patent did not claim priority to the '998 patent, nor did the '998 patent claim priority to the '439 patent.

191.    During the prosecution of the '998 patent, Graves, Smith, and Murphy cited U.S. Patent No. 5,945,653 (the "Walker reference") in an Information Disclosure Statement ("IDS") to the USPTO filed on February 8, 2007.

192.    Graves, Smith, and Murphy were aware of the Walker reference at least as early as February 8, 2007 as evidenced by the IDS.

193.    The Walker reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

194.    The Walker reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

195.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."  ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

196.    The Walker reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

      a.    The Walker reference discloses a credit card transaction processing system "configured to allow credit card customers and merchants to use and take advantage of function identifiers and corresponding functions during a particular point-of-sale transaction and which can be executed and processed by an account issuer such as a credit card issuer to affect an account or the transaction and,

possibly, the amount that is ultimately charged to or debited from a customer's

account."  (Walker reference at 8:36-43.)

b.    The Walker reference further discloses when a transaction takes place, a

"merchant enters transaction information such as a merchant ID, a transaction

amount and the credit card account number into a point-of-sale (POS) terminal."

(*Id*. at 18:19-22.)

197.    The Walker reference is not cumulative to the prior art of record because none of

the prior art of record contained the alleged distinguishing feature of the invention, as identified

by the Examiner.

198.    As participants in the '689 application, Graves, Smith, and Murphy were aware of

the materiality of the Walker reference to the prosecution of the '439 patent as evidenced by the

February 8, 2007 IDS.

199.    Graves, Smith, and Murphy were under a duty to bring to the attention of the

Examiner "information within their knowledge as to other copending United States applications

which are 'material to patentability' of the application in question."  *See* MPEP Section

2001.06(b).

200.    Graves, Smith, and Murphy were under a duty to disclose all information material

during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

201.    As Graves, Smith, and Murphy were aware of information, were aware of the

materiality of that information to patentability of the '439 patent, and were aware of their

obligation to disclose such information, yet failed to disclose the information, it is reasonable to

infer that Graves, Smith, and Murphy intended to deceive the USPTO by failing to disclose the

Walker reference.

### The McDonald Reference

202.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

203.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

204.    On February 8, 2007, Gregory Murphy filed U.S. Patent Application Serial No.11/672,689 (the "'689 application") with the USPTO.  The '689 application listed Phillip C. Graves and Merrill B. Smith as its inventors and Gregory Murphy as the prosecuting attorney.  On November 6, 2007, the '689 application issued as U.S. Patent No. 7,292,998 (the "'998 patent").

205.    The '439 patent was co-pending with the '998 patent.  The '439 patent did not claim priority to the '998 patent, nor did the '998 patent claim priority to the '439 patent.

206.    During the prosecution of the '998 patent, Graves, Smith, and Murphy cited U.S. Patent No. 6,648,222 (the "McDonald reference") in an Information Disclosure Statement ("IDS") to the USPTO filed on February 8, 2007.

207.    Graves, Smith, and Murphy were aware of the McDonald reference at least as early as  February 8, 2007 as evidenced by the IDS.

208.    The McDonald reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority before issuance of the '439 patent.

209.    The McDonald reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

210.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."  ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

211.    The McDonald reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

a.    The McDonald reference discloses a card processing system where the "merchant swipes the customer's REMOTE SMARTCARD[TM] through a conventional card reader which includes a keypad adaptable to indicating the amount of credit to be added to the customer's REMOTE SMARTCARD[TM] V-1 account."  (McDonald reference at 14:24-28.)

b.    The McDonald reference further discloses a requesting terminal identifier utilized when a card swipe operation takes place by an authorized merchant because "the system control center receives data specifying the customer's card or account

number as well as the merchant IP which indirectly specifies the identity of the

vendor affiliated with that merchant.  The card number/merchant IP address data

specifies a single customer account and a single vendor sub account within the

system's overall customer account database to either add or subtract a specified

transaction amount value."  (*Id*. at 15:5-14.)

212.    The McDonald reference is not cumulative to the prior art of record because none

of the prior art of record contained the alleged distinguishing feature of the invention, as

identified by the Examiner.

213.    As participants in the '689 application, Graves, Smith, and Murphy were aware of

the materiality of the McDonald reference to the prosecution of the '439 patent as evidenced by

the February 8, 2007 IDS.

214.    Graves, Smith, and Murphy were under a duty to bring to the attention of the

Examiner "information within their knowledge as to other copending United States applications

which are 'material to patentability' of the application in question."  *See* MPEP Section

2001.06(b).

215.    Graves, Smith, and Murphy were under a duty to disclose all information material

during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

216.    As Graves, Smith, and Murphy were aware of information, were aware of the

materiality of that information to patentability of the '439 patent, and were aware of their

obligation to disclose such information, yet failed to disclose the information, it is reasonable to

infer that Graves, Smith, and Murphy intended to deceive the USPTO by failing to disclose the

McDonald reference.

**The James Reference**

217.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

218.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

219.    On February 7, 2007, Gregory Murphy filed U.S. Patent Application Serial No.11/672,204 (the "'204 application") with the USPTO.  The '204 application listed Phillip C. Graves and Merrill B. Smith as its inventors and Gregory Murphy as the prosecuting attorney. On October 14, 2008 the '204 application issued as U.S. Patent No. 7,437,328 (the "'328 patent").

220.    The '439 patent was co-pending with the '328 patent.  The '439 patent did not claim priority to the '328 patent, nor did the '328 patent claim priority to the '439 patent.

221.    During the prosecution of the '328 patent, Graves, Smith, and Murphy cited U.S. Patent 7,054,842 (the "James reference") in an Information Disclosure Statement ("IDS") to the USPTO filed on February 7, 2007.

222.    Graves, Smith, and Murphy were aware of the James reference at least as early as February 7, 2007 as evidenced by the IDS.

223.    The James reference was not submitted or cited by any examiner in any application or patent to which the '439 patent claims priority.

224.    The James  reference was materially relevant to, at least, independent claims 1, 12, and 19 of the '439 patent.

225.    On July 9, 2009, the Examiner of the '439 patent issued a Notice of Allowance stating that the distinguishing feature of the invention of the '439 patent over the prior art, which is contained in claims 1, 12, and 19, was that "each of the one or more terminals has a unique terminal identifier and is associated with a location and a prepaid card merchant, and further, the central processor is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."  ('439 patent, Notice of Allowance, 7/9/2009, at 2.)

226.    The James reference is material to the patentability of claims 1, 12, and 19 of the '439 patent because it discloses each element of what the Examiner considered to be the distinguishing feature of the invention of the '439 patent:

        a.    The James reference discloses a terminal for processing transactions involving a
              virtual card linked to a physical card.  (James reference at 2:1-15.)  The James
              reference further discloses checking a terminal request identifier as the system
              checks "as to whether there is a valid merchant, a valid merchant location, or
              against other merchant criteria."  (*Id*. at 5:20-23.)

227.    The James reference is not cumulative to the prior art of record because none of the prior art of record contained the alleged distinguishing feature of the invention, as identified by the Examiner.

228.    As participants in the '204 application, Graves, Smith, and Murphy were aware of the materiality of the James reference to the prosecution of the '439 patent as evidenced by the February 7, 2007 IDS.

229.    Graves, Smith, and Murphy were under a duty to bring to the attention of the Examiner "information within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question."  *See* MPEP Section 2001.06(b).

230.    Graves, Smith, and Murphy were under a duty to disclose all information material during the prosecution of the '439 patent pursuant to 37 C.F.R. 1.56.

231.    As Graves, Smith, and Murphy were aware of information, were aware of the materiality of that information to patentability of the '439 patent, and were aware of their obligation to disclose such information, yet failed to disclose the information, it is reasonable to infer that Graves, Smith, and Murphy intended to deceive the USPTO by failing to disclose the James reference.

**The Priority Date**

232.    The '439 patent is unenforceable due to inequitable conduct committed by inventors Phillip C. Graves and Merrill B. Smith and prosecuting attorney Gregory Murphy during the prosecution of the '439 patent before the USPTO at least for the reasons as described herein.

233.    On March 27, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/691,766 (the "'766 application") with the USPTO.  The '766 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the

prosecuting attorney. On August 25, 2009, the '766 application issued as U.S. Patent No. 7,578,439 (the "'439 patent").

234.    On March 20, 2009, the Examiner issued a rejection finding that claims 1-9 and 12-27 were anticipated by Graves et al (2004/0195316) ("Graves").

235.    In response to the rejection, Graves, Smith, and Murphy represented to the Examiner in an April 8, 2009 Amendment and Response to Office Action that the "[t]he subject matter claimed in the present invention [the '439 patent] reaches back to the original provisional filing [U.S. Provisional App. 60/149,740, filed August 19, 1999], and its conversion [U.S. Non-Provisional App. 10/655,828, filed September 5, 2003; U.S. Non-Provisional App. 10/411,971 (now U.S. Patent No. 7,083,084), filed April 11, 2003; and U.S. Non-Provisional App. 09/641,363 (now U.S. Patent No. 6,575,361), filed August 18, 2000]. The subject matter in the cited reference [U.S. Patent Application Publication No. 2004/0195316 to Graves, *et al.*] similarly reaches back. Accordingly, both the current application and the cited reference share the same priority date."

236.    Graves, Smith, and Murphy argued that they were entitled to an alleged priority date of August 19, 1999 for all claims in the '439 Patent.

237.    As a result of this statement, Graves was no longer considered to be prior art to the '439 Patent.

238.    However, Graves, Smith, and Murphy's statement that the alleged inventions claimed in the '439 Patent were fully disclosed in the August 19, 1999 provisional application was a misrepresentation.

239.    The provisional application consisted of information from InComm brochures from 1999 or before, which do not disclose information pertaining to the redemption of stored

value cards. The provisional application, therefore, does not disclose the subject matter of at least claims 2, 9, 17, 20, and 27 of the '439 patent, each of which is directed, either wholly or partly, to the redemption of stored value cards.

240.    This misrepresentation was material because Graves, Smith, and Murphy would not have been able to overcome the Examiner's rejections of at least claims 2, 9, 17, 20, and 27.

241.    Based upon the above allegations, a court may reasonably infer that Graves, Smith, and Murphy knew the falsity of the material misrepresentation.

242.    Based upon the above allegations, a court may reasonably infer that Graves, Smith, and Murphy misrepresented the priority date with a specific intent to deceive the USPTO.

243.    As Graves, Smith, and Murphy were aware that the instant application was not a continuation, but a continuation in part, that the claims could not reach back as far as the original provisional filing, U.S. Provisional App. 60/149,740, filed August 19, 1999, were aware of their duty of candor, and yet clearly misrepresented the priority date, it is reasonable to infer that these individuals intended to deceive the USPTO by making a material misrepresentation as to priority date.

244.    The information described in the foregoing paragraphs that was withheld, omitted, or misrepresented was and is material to one or more claims of the patent-in-suit. There is a substantial likelihood that a reasonable examiner would consider the information important in deciding whether to allow the application that led to the '439 patent to issue as a patent. Moreover, the fact that Graves, Smith, and Murphy knew of all or some of the material information yet withheld and misrepresented the information reveals an intent to deceive the Examiner in an effort to obtain issuance of the '439 patent. As a result, the '439 patent is unenforceable.

245.    Graves, Smith, and Murphy's false and misleading claim of priority is another example of inequitable conduct which individually and taken together with other conduct reveals an intent to deceive the Examiner in an effort to obtain issuance of the '439 patent.

## ELEVENTH AFFIRMATIVE DEFENSE

246.    The '926 patent is unenforceable due to inequitable conduct committed during the prosecution of the '926 patent before the USPTO at least for the reasons as described herein.

### The Bahar Reference

247.    On December 1, 2005, Gregory Murphy filed U.S. Patent Application Serial No. 11/290,606 (the "'606 application") with the USPTO. The '606 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney. On December 8, 2009, the '606 application issued as U.S. Patent No. 7,630,926 (the "'926 patent").

248.    On February 7, 2007, Gregory Murphy filed U.S. Patent Application Serial No. 11/672,204 (the "'204 application") with the USPTO. The '204 application listed Phillip C. Graves and  Merrill B. Smith as its inventors and Gregory Murphy as the prosecuting attorney. On October 14, 2008, the '204 application issued as U.S. Patent No. 7,437,328 (the "'328 patent").

249.    The '328 patent was co-pending with the '926 patent throughout the entirety of '328 patent prosecution, from February 7, 2007 through October 14, 2008. The '328 patent did not claim priority to the '926 patent, nor did the '926 patent claim priority to the '328 patent.

250.    During the prosecution of the '328 patent, Examiner Susanna Diaz cited US 2005/0001027 (the "Bahar reference") on October 23, 2007 and used it as a base reference in a rejection of the '204 application. Examiner Diaz again cited the Bahar reference as a base reference in a rejection of the '204 application on April 22, 2008.

251.    Graves, Smith, and Murphy became aware of the Bahar reference at least as early as October 23, 2007 through the rejection by Examiner Diaz.

252.    The Bahar reference was not submitted or cited by any examiner in any application or patent to which the '926 patent claims priority.

253.    The Bahar reference was materially relevant to, at least, independent claims 1 and 18 of the '926 patent.

254.    On July 17, 2009, Graves, Smith, and Murphy filed an Amendment where they argued that the distinguishing feature of the invention of the '926 patent over the prior art, which is contained in claims 1 and 18,  was the "<u>purchasing value</u> at the point-of-sale, <u>providing account identification data</u> at the point-of-sale, a central processor <u>determining the specific provider based on the received account identification data</u>, and <u>providing value</u> to the provider." ('926 patent, Amendment, 7/17/2009, at 8.)

255.    The Bahar reference is material to the patentability of claims 1 and 18 of the '926 patent because it discloses each element of what Graves, Smith, and Murphy considered to be the distinguishing feature of the invention of the '926 patent:

   a.    The Bahar reference discloses account identification data as "stored on the smart card can include account number information and information that allows a user to electronically pay bills to third parties not owned or controlled by the company at which the bill paying service is offered." (Bahar reference at Paragraph [0022].)

   b.    The Bahar reference discloses that a customer "can add value to the smart card and use the value added to directly, electronically pay bills... In either case, the value information stored on the smart card can be updated to indicate a debit against the value of the smart card prior to the transaction."  (*Id*. at Paragraph

[0031].)   In fact, Examiner Diaz in the '328 patent cited the Bahar reference as

disclosing "a method of utilizing a merchant's point of sale (POS) location to

insert value into a pre-existing customer with a provider of goods and services

other than the merchant."  ('328 patent, Final Rejection, 10/23/2007, at 3.)

256.    The Bahar reference is not cumulative to the prior art of record because none of

the prior art of record contained the alleged distinguishing feature of the invention, as identified

by Graves, Smith, and Murphy.

257.    As participants in the '204 application, Graves, Smith, and Murphy were aware of

the materiality of the Bahar reference to the prosecution of the '926 patent as a result of the

citation and two rejections by Examiner Diaz.

258.    Graves, Smith, and Murphy were under a duty to bring to the attention of the

Examiner "information within their knowledge as to other copending United States applications

which are 'material to patentability' of the application in question."  *See* MPEP Section

2001.06(b).

259.    Graves, Smith, and Murphy were under a duty to disclose all information material

during the prosecution of the '926 patent pursuant to 37 C.F.R. 1.56.

260.    As Graves, Smith, and Murphy were aware of information, were aware of the

materiality of that information to patentability of the '439 patent, and were aware of their

obligation to disclose such information, yet failed to disclose the information, it is reasonable to

infer that Graves, Smith, and Murphy intended to deceive the USPTO by failing to disclose the

Bahar reference.

**The Risafi Reference**

261.    The '926 patent is unenforceable due to inequitable conduct committed by prosecuting attorney Gregory Murphy during the prosecution of the '926 patent before the USPTO at least for the reasons as described herein.

262.    On December 1, 2005, Gregory Murphy filed U.S. Patent Application Serial No. 11/290,606 (the "'606 application") with the USPTO.  The '606 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On December 8, 2009, the '606 application issued as U.S. Patent No. 7,630,926 (the "'926 patent").

263.    On December 19, 2008, Examiner Jagdish Patel issued an office action rejecting claims 1, 3, 4, 5, 7, 10, 11, 13,14, 16, 20 and 21 as being anticipated by U.S. Patent No. 6,743,500 ("Risafi.").

264.    On April 17, 2009, Examiner Patel issued a final rejection and again rejected claims 1, 3, 4, 5, 7, 10, 11, 13,14, 16, 20, and 21 as being anticipated by Risafi.

265.    On July 17, 2009, in response to the second anticipatory rejection of claims 1, 3, 4, 5, 7, 10, 11, 13, 14, 16, 20, and 21 in view of Risafi, Murphy represented to the Examiner that "Risafi is directed to a pre-paid MasterCard product that can be used a [sic] point of sale to purchase goods and services in a traditional sense.  Risafi is not used to add value to 'provider' or the customer account."  ('926 patent, Response to April 27, 2009 Office Action, 7/17/2009, at 8.)

266.    Murphy's statement is a misrepresentation because Risafi clearly teaches that value is added to a provider or a customer account:

a.  "If the balance in the card account drops to zero or below some level at which card user 10 wants to add value, step 270 allows card user 10 to add value to the card at any terminal 106, including the terminal at which card user 10 bought the card." (Risafi, at 10:58-62.)

b.  "In step 418, PDC 404 adds the card number to the Card File, along with the PIN and the value placed in the card account, and adds the card value to the Account file." (*Id*. at 12:2-5.)

c.  "As with terminal activation, in step 534, PDC 404 adds the card number to the Card File, along with the PIN and the value placed in the card account, and adds the card value to the Account file."  (*Id*. at 12:61-64.)

d.  "After using card 100 to make purchases or withdrawals, a card user may want to add value to the card account. Reloading may be done on either a single-card or a batch basis, and is similar to the activation of a card illustrated in FIGS. 4 and 5b. FIGS. 7a and 7b illustrate individual and batch reloading, respectively."  (*Id*. at 14:31-36.)

e.  "In step 714, card user 10 inputs his or her PIN to agent terminal 402, and, in step 716, agent terminal 402 transmits to PDC 404 the card number, PIN, value to be placed in the account for card 100, and the transaction code, in this case "reload." In step 718, PDC 404 checks the Card File to verify that the PIN matches and that all other issuer- or PDC-specified criteria have been met and adds the reloaded value to the card account and to the Account file. In step 720, PDC 404 transmits to agent terminal 402 whether the transaction has been completed or denied and, if completed, that the card account has been reloaded. In step 722, agent 104 gives

back card 100 to card user 10, and card 100 is again ready for use." (*Id.* at 14:42-55.)

    f.   "Batch reloading is similar to batch activation and includes the same elements as FIG. 5b. In step 732, program sponsor 522 transmits (either directly or through its issuer) to PDC 404 a batch file that includes the card number, the amount to be added to the card account, and the transaction code (i.e., "reload"). In step 734, PDC 404 adds the reloaded value to the card account and to the Account file. A PIN is not used nor needed in batch loading mode. Step 734 is repeated for each card included in the batch file. When the processing is complete, in step 736, PDC 404 transmits to program sponsor 522 or its issuer that the card accounts have been reloaded. In step 738, program sponsor 522 or its issuer notifies each cardholder that card 100 has been reloaded. Either at the same time or at a regular interval, in step 740, program sponsor 522 transfers money to issuer 410, covering the aggregate amount added to the Card File. In step 742, PDC 404 accounts to issuer 410 the added value loaded in card & account file 406." (*Id.* at 14:63-67; 15:1-13.)

267.    Murphy's statement regarding Risafi is a material misrepresentation because after twice rejecting the claims as anticipated by Risafi, the Examiner explicitly relied on the misrepresentation made by Murphy as the reason for then allowing the claims. Specifically, the Examiner identified in his October 10, 2009 Notice of Allowance that the reasons for allowance was Murphy's statement: "In particular, the applicant's remarks on pages 7-11 filed 07/17/09 which distinguishes the instant claimed invention from the closest prior art references listed below. The Examiner incorporates the applicant's remarks by reference as reasons for allowance

of claims 1-8, 11, 13-16, 18-21, and 15.  Risafi, US Pat No. 6,473, 500 . . . ."  ('926 patent,

Notice of Allowance, 10/10/2009, at 4.)

268.    If Murphy had not made his misrepresentation about Risafi, it is clear that the

Examiner would have maintained his rejection with respect to Risafi.

269.    Based upon the above allegations, a court may reasonably infer that Murphy knew

the falsity of the material misrepresentation with respect to Risafi.

270.    Based upon the above allegations, a court may reasonably infer that Murphy

misrepresented the contents of Risafi with a specific intent to deceive the USPTO.

271.    As Murphy was aware of the Risafi after the Examiner twice issued anticipatory

rejections based upon Risafi, and was aware of his duty of candor, and yet clearly misrepresented

the contents of Risafi, it is reasonable to infer that Murphy intended to deceive the USPTO by

making a material misrepresentation as to the contents of Risafi.

**The Lorsch Reference**

272.    The '926 patent is unenforceable due to inequitable conduct committed by

prosecuting attorney Gregory Murphy during the prosecution of the '926 patent before the

USPTO at least for the reasons as described herein.

273.    On December 1, 2005, Gregory Murphy filed U.S. Patent Application Serial No.

11/290,606 (the "'606 application") with the USPTO.  The '606 application listed Phillip C.

Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the

prosecuting attorney.  On December 8, 2009, the '606 application issued as U.S. Patent No.

7,630,926 (the "'926 patent").

274.    On December 19, 2008, Examiner Jagdish Patel issued an office action rejecting claims 2, 8, and 19 as being obvious in view of U.S. Patent No. 6,743,500 ("Risafi.") and U.S. Patent No. 5,903,633 ("Lorsch").

275.    On April 17, 2009, Examiner Patel issued a final rejection and again rejected claims 2, 8, and 19 as obvious in view of Risafi and Lorsch.

276.    On July 17, 2009, in response to the second obvious rejection of claims 2, 8, and 19 in view of Risafi and Lorsch, Murphy represented to the Examiner that "[s]pecifically, Lorsch fails to disclose, teach or suggest the requirement of a request to add value to a customer account 'resulting from a purchase of the value,' wherein the request to add value comprises both 'value identification data' and 'account identification data' each received by the point of sale, and the receipt of this information and determination of 'the specific provider based on the account identification data.'" ('926 patent, Response to April 27, 2009 Office Action, 7/17/2009, at 9.)

277.    Murphy's statement is a misrepresentation because Lorsch clearly teaches that value is added as a result of a purchase of the value which has both value identification data and account identification data and determination of the specific provider based on the account identification data:

        a.    "The method and apparatus described above can further be used for a number of applications in addition to simple activation of a phone card. For example, the system 10 disclosed above can be used to add minutes to a phone card or to debit funds from a client's checking or other bank account to provide payment for retail sale of phone cards. For instance, a retailer could swipe the card through the phone card terminal 20 and use the keypad on the terminal 20 to add additional minutes to the phone card. Preferably, the point of sale terminal could be

programmed with a series of prompts to the client, inquiring as to whether the client desires to add minutes to the card, and if so to enter the desired number of minutes on the keypad. Appropriate safeguards could be followed in adding minutes in much the same fashion described above for the activation of new cards. In this scenario, an end user could pay the retailer for the added minutes, and the retailer could be billed in the manner described above for new cards. Further, because the information encoded on the back of the phone card has a control code that identifies the client, the system 10 can automatically debit the client's checking or other bank account for the wholesale price of a card, less any nominal fees that may have been prepaid. Once a card has been activated, as described above, the centralized computer 30 and the invoicing computer could initiate a further dialout from the centralized database into appropriate banking networks to instantly debit the client's bank account."  (Lorsch, at 8:34-62.)

b.  "The transmission from the point of sale terminal when an end user purchases a phone card also serves a second purpose. It is this transmission that alerts the phone card company, through its centralized computer, that the individual card is passing from the client to the end user. Because the client may have only paid a nominal fee upon shipment of the cards to the client, the remaining portion, or in some cases all, of the wholesale price of the card needs to be invoiced, billed and paid. This billing system is different than the one disclosed in the parent to this application, Ser. No. 08/410,857. In the system described in that application, the event that triggers the invoicing for the card is actual use by the end user, independent of the transaction between the retailer and the end user. Using the

method described herein, it is the transfer from the client to the end user and the card's activation that signals to the phone company that the card has changed hands. This activation of the card is evidence that the client has sold or otherwise intends to transfer the card." (*Id*. at 3:66-67; 4:1-16.)

278.    Murphy's statement regarding Lorsch is a material misrepresentation because after twice rejecting the claims as obvious in view of Risafi and Lorsch, the Examiner explicitly relied on the misrepresentation made by Murphy as the reason for then allowing the claims. Specifically, the Examiner identified in his October 10, 2009 Notice of Allowance that the reasons for allowance was Murphy's statement:  "In particular, the applicant's remarks on pages 7-11 filed 07/17/09 which distinguishes the instant claimed invention from the closest prior art references listed below.  The Examiner incorporates the applicant's remarks by reference as reasons for allowance of claims 1-8, 11, 13-16, 18-21 and 15.  Risafi, US Pat No. 6,473, 500; . . . Lorsch, US Pat No. 5,903,633 . . . ." ('926 patent, Notice of Allowance, 10/10/2009, at 4.)

279.    If Murphy had not made his misrepresentation about Lorsch, it is clear that the Examiner would have maintained his rejection with respect to Lorsch.

280.    Based upon the above allegations, a court may reasonably infer that Murphy knew the falsity of the material misrepresentation with respect to Lorsch.

281.    Based upon the above allegations, a court may reasonably infer that Murphy misrepresented the contents of Lorsch with a specific intent to deceive the USPTO.

282.    As Murphy was aware of Lorsch after the Examiner twice issued rejections based upon Risafi in view of Lorsch, and was aware of his duty of candor, and yet clearly misrepresented the contents of Lorsch, it is reasonable to infer that Murphy intended to deceive the USPTO by making a material misrepresentation as to the contents of Lorsch.

**The Dorf '608 Reference**

283.    The '926 patent is unenforceable due to inequitable conduct committed by prosecuting attorney Gregory Murphy during the prosecution of the '926 patent before the USPTO at least for the reasons as described herein.

284.    On December 1, 2005, Gregory Murphy filed U.S. Patent Application Serial No. 11/290,606 (the "'606 application") with the USPTO.  The '606 application listed Phillip C. Graves, Merrill B. Smith, and Phillip M. Chakiris as its inventors and Gregory Murphy as the prosecuting attorney.  On December 8, 2009, the '606 application issued as U.S. Patent No. 7,630,926 (the "'926 patent").

285.    On December 19, 2008, Examiner Jagdish Patel issued an office action rejecting claims 9, 12, 15, and 17 as being obvious in view of U.S. Patent No. 6,743,500 ("Risafi.") and U.S. Patent No. 6,000,608 ("Dorf '608").

286.    On April 17, 2009, Examiner Patel issued a final rejection and again rejected claims 9, 12, 15, and 17 as obvious in view of Risafi and Dorf '608.

287.    On July 17, 2009, in response to the second obvious rejection of claims 9, 12, 15, and 17 in view of Risafi and Dorf '608, Murphy represented to the Examiner that "[s]pecifically, Dorf fails to disclose, teach or suggest the requirement of a request to add value to a customer account 'resulting from a purchase of the value,' wherein the request to add value comprises both 'value identification data' and 'account identification data' each received by the point of sale, and the receipt of this information and determination of 'the specific provider based on the account identification data.'"  ('926 patent, Response to April 27, 2009 Office Action, 7/17/2009, at 10-11.)

288.     Murphy's statement is a misrepresentation because Dorf '608 clearly teaches that value is added as a result of a purchase of the value which has both value identification data and account identification data and determination of the specific provider based on the account identification data:  "The multifunction card system 108 of the present invention is also capable of providing an Electronic Gift Certificate.TM. (EGC) card 101 for a retail issuer. Such a card 101 could be sold by the retail issuer for making purchases only in the retail issuer's stores or for use in a plurality of stores. As in the phone card context, the customer would ask the sales clerk for an Electronic Gift Certificate.TM. card of the desired amount. If the customer already has an Electronic Gift Certificate.TM. card, he or she might ask the clerk to add the desired amount to the already existing balance. The clerk swipes the card 101 and enters the transaction amount, either directly or using a nominal amount and/or the PIN pad, depending upon whether the debit network 107 is to be used. Using one of the methods discussed above, the data then makes its way to the processing hub 103.   Alternatively, the activation could occur by processing the card 101 as a typical debit card using the debit network 107. In such a case, the retail issuer would maintain accounts with the sponsor bank. When an activation transaction takes place, the bank would transfer the activation amount from a general account to an account corresponding to the card. If the card is to be accepted at a number of retail locations, the account corresponding to the card could be opened in the name of the card holder if appropriate paperwork is submitted to the bank. In this manner, the card could be used at any retail location capable of processing debit transactions. This would allow the card to serve as a prepaid card substitute for travelers checks and money orders. Regardless of the way in which the card is processed, the transaction data eventually makes its way to the processing hub 103. Upon receipt of the transaction data, the hub 103 recognizes the card 101 as being an Electronic Gift Certificate.TM. card of the retail issuer

and activates or recharges the card 101 in the appropriate amount in an EGC database 205 maintained at the processing hub 103."  (Dorf '608, at 7:35-64.)

289.    Murphy's statement regarding Dorf '608 is a material misrepresentation because after twice rejecting the claims as obvious in view of Risafi and Dorf '608, the Examiner explicitly relied on the misrepresentation made by Murphy as the reason for then allowing the claims.  Specifically, the Examiner identified in his October 10, 2009 Notice of Allowance that the reasons for allowance was Murphy's statement:  "In particular, the applicant's remarks on pages 7-11 filed 07/17/09 which distinguishes the instant claimed invention from the closest prior art references listed below.  The Examiner incorporates the applicant's remarks by reference as reasons for allowance of claims 1-8, 11, 13-16, 18-21 and 15.  Risafi, US Pat No. 6,473, 500; . . . Dorf, US Pat No. 6,000,608 . . . ."  ('926 patent, Notice of Allowance, 10/10/2009, at 4.)

290.    If Murphy had not made his misrepresentation about Dorf '608, it is clear that the Examiner would have maintained his rejection with respect to Dorf '608.

291.    Based upon the above allegations, a court may reasonably infer that Murphy knew the falsity of the material misrepresentation with respect to Dorf '608.

292.    Based upon the above allegations, a court may reasonably infer that Murphy misrepresented the contents of Dorf '608 with a specific intent to deceive the USPTO.

293.    As Murphy was aware of the Dorf '608 after the Examiner twice issued rejections based upon Risafi in view of Dorf '608, and was aware of his duty of candor, and yet clearly misrepresented the contents of Dorf '608, it is reasonable to infer that Murphy intended to deceive the USPTO by making a material misrepresentation as to the contents of Dorf '608.

## PRAYER FOR RELIEF ON E2INTERACTIVE AND INCOMM'S AMENDED COMPLAINT

WHEREFORE, Blackhawk prays for judgment against e2Interactive and InComm on e2Interactive and InComm's Amended Complaint, as follows:

A.     That e2Interactive and InComm take nothing by its Amended Complaint;

B.     That e2Interactive and InComm's Amended Complaint be dismissed with prejudice;

C.     That the Court enter judgment against e2Interactive and InComm and in favor of Blackhawk in all respects;

D.     That the Court determine that this is an exceptional case under 35 U.S.C. § 285, and award attorneys' fees and costs to Blackhawk in this action; and

E.     For such other and further relief as the Court deems just and equitable.

## BLACKHAWK'S COUNTERCLAIMS

Blackhawk brings these Counterclaims against e2Interactive and InComm pursuant to Rule 13 of the Federal Rules of Civil Procedure, and alleges as follows.  All preceding paragraphs of this Answer are incorporated in full.

294.    Counterclaimant Blackhawk Network, Inc. ("Blackhawk") is an Arizona corporation with a principal place of business located at 6220 Stoneridge Mall Road, Pleasanton, California 94588.

295.    Upon information and belief, Counterdefendant e2Interactive, Inc. ("e2Interactive") is a corporation of the State of Georgia, having a principal place of business at 250 Williams Street, Suite M-100, Atlanta, Georgia 30303.

296.     Upon information and belief, Counterdefendant Interactive Communications International, Inc. ("InComm") is a corporation of the State of Florida, having a principal place of business at 250 Williams Street, Suite M-100, Atlanta, Georgia 30303.

297.     These are claims for a declaratory judgment of non-infringement with respect to the '439 patent and '926 patent, invalidity with respect to the '439 patent and '926 patent, and unenforceability with respect to the '439 patent and the '926 patent.

298.     The Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202 because an actual, justiciable controversy exists between Blackhawk and InComm.  In particular, InComm has filed an Amended Complaint alleging that Blackhawk is infringing the '439 patent and '926 patent, and Blackhawk denies InComm's material allegations.  Although this venue is an inconvenient venue for the parties in this particular matter, in the event that this action remains in this District, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c) because, among other things, InComm has filed an Amended Complaint against Blackhawk in this judicial district.

## FIRST COUNTERCLAIM

## DECLARATORY JUDGMENT (NON-INFRINGEMENT)

299.     Blackhawk incorporates by reference all preceding paragraphs of its Answer and Counterclaims as if set forth fully herein.

300.     In the Amended Complaint filed in the present action, e2Interactive and InComm allege that e2Interactive is the assignee of the '439 patent and '926 patent and that InComm is the exclusive licensee of the '439 patent and '926 patent.

301.     In the Amended Complaint filed in the present action, e2Interactive and InComm have accused Blackhawk of infringing at least claims 1, 3-7, 12, 14, 16, 19, and 21-25 of the

'439 patent. On information and belief, e2Interactive and InComm allege that at least these claims of the '439 patent are valid and enforceable.

302.    In the Amended Complaint filed in the present action, e2Interactive and InComm have accused Blackhawk of infringing at least claims 1, 3-4, 6, 8-9, and 16-18 of the '926 patent. On information and belief, e2Interactive and InComm allege that at least these claims of the '926 patent are valid and enforceable

303.    Blackhawk has not infringed and does not infringe, either directly or indirectly, any of the claims of the '439 patent or '926 patent, either literally, under the doctrine of equivalents, willfully, or otherwise.

## SECOND COUNTERCLAIM

## DECLARATORY JUDGMENT (INVALIDITY)

304.    Blackhawk incorporates by reference all preceding paragraphs of its Answer and Counterclaims as if set forth fully herein.

305.    The '439 patent and '926 patent are invalid for failing to comply with one or more provisions of Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and/or 282.

## THIRD COUNTERCLAIM

## DECLARATORY JUDGMENT (UNENFORCEABILITY)

306.    Blackhawk incorporates by reference all preceding paragraphs of its Answer and Counterclaims as if set forth fully herein.

307.    Each of the claims of the '439 patent are unenforceable at least due to inequitable conduct during the prosecution of the application that led to the '439 patent, during which the inventors and/or others substantively involved in the prosecution improperly, fraudulently and

with intent to deceive, failed to disclose material information and made other material omissions or misrepresentations, at least as described in paragraphs 36 through 245 above.

308.    Each of the claims of the '926 patent are unenforceable at least due to inequitable conduct during the prosecution of the application that led to the '926 patent, during which the inventors and/or others substantively involved in the prosecution improperly, fraudulently and with intent to deceive, failed to disclose material information and made other material omissions or misrepresentations, at least as described in paragraphs 246 through 293 above.

## JURY DEMAND

Defendant and Counterclaimant Blackhawk hereby demands trial by jury of all issues triable by a jury.

## PRAYER FOR RELIEF ON BLACKHAWK'S COUNTERCLAIMS

WHEREFORE, Blackhawk prays for judgment on Blackhawk's Counterclaims, as follows:

A.    For the dismissal of e2Interactive and InComm's Amended Complaint with prejudice;

B.    For a declaration that Blackhawk has not infringed and does not infringe, either directly or indirectly, any of the claims of the '439 patent or '926 patent, either literally, under the doctrine of equivalents, willfully, or otherwise;

C.    For a declaration that the '439 patent and '926 patent are invalid;

D.    For a declaration that the '439 patent and the '926 patent are unenforceable;

E.    For judgment against e2Interactive and InComm and in favor of Blackhawk in all respects;

F.    For a determination that this is an exceptional case under 35 U.S.C. § 285, and an award of attorneys' fees, costs, and prejudgment interest to Blackhawk in this action; and

G.      For such other and further relief as the Court deems just and equitable.


Respectfully submitted,

/s/ Alan M. Fisch                                    

James D. Peterson
State Bar No. 1022819
Brian J. Cahill
State Bar No. 1055439
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI  53701-2719
Phone:  (608) 257-3911
Fax:  (608) 257-0609
Email:  jpeterson@gklaw.com
          bcahill@gklaw.com


Alan M. Fisch
DC Bar No. 453068
Coke Morgan Stewart
DC Bar No. 461665
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Phone: (202) 682-3500
Fax: (202) 682-3580
Email: alan.fisch@kayescholer.com
          coke.stewart@kayescholer.com


Attorneys for
BLACKHAWK NETWORK, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2010, I caused this document to be electronically filed with the Clerk of Court using the ECF system, which will make these documents available to all counsel of record for viewing and downloading from the ECF system.  Also on November 1, 2010, a courtesy copy of this document was served by electronic mail to opposing counsel.


*/s/ Alan M. Fisch*
Alan M. Fisch