# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

E2INTERACTIVE, INC., and
INTERACTIVE COMMUNICATIONS
INTERNATIONAL, INC.,

                  Plaintiffs,

                                  Case No. 3:09-CV-629-slc

      v.

BLACKHAWK NETWORK, INC.,

                  Defendant.

---

## DEFENDANT BLACKHAWK NETWORK, INC.'S
## MOTION REQUESTING CONSTRUCTION

---

James D. Peterson, State Bar No. 1022819
Brian J. Cahill, State Bar No. 1055439
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI 53701-2719
Phone: (608) 257-3911
Fax: (608) 257-0609
Email: jpeterson@gklaw.com
Email: bcahill@gklaw.com

Alan M. Fisch, DC Bar No. 453068
Coke Morgan Stewart, DC Bar No. 461665
Jason F. Hoffman, DC Bar No. 467927
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Phone: (202) 682-3500
Fax: (202) 682-3580
Email: alan.fisch@kayescholer.com
Email: coke.stewart@kayescholer.com
Email: jason.hoffman@kayescholer.com

Attorneys for
BLACKHAWK NETWORK, INC.

Dated: March 24, 2011

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..........................................................................................................3

I.      LEGAL STANDARD GOVERNING CLAIM CONSTRUCTION ...................................3

II.     THE '439 PATENT .................................................................................4

        A.      The Invention of the '439 Patent ...................................................4

        B.      The Prosecution History of the '439 Patent..................................6

        C.      The Reexamination of the '439 Patent...........................................7

III.    THE '926 PATENT ...............................................................................10

        A.      The Invention of the '926 Patent .................................................10

        B.      The Prosecution History of the '926 Patent................................12

IV.     CONSTRUCTION OF DISPUTED TERMS AND PHRASES OF THE
        '439 PATENT ......................................................................................14

        A.      "Unique terminal identifier" .........................................................14

        B.      "Requesting terminal identifier" and "Terminal identifier of the
                point-of-sale terminal".................................................................17

        C.      "Card identifier"............................................................................19

        D.      "Determining if the requesting terminal is authorized to request the
                requested transaction type for the stored value card" and
                "Determining, based on information in the transaction request and
                the database, whether the requesting terminal is authorized to
                request the requested transaction type"........................................20

        E.      "Initiating the requested transaction" and "Processing the
                requested transaction".................................................................26

        F.      "Associating in the database" .....................................................29

V.      CONSTRUCTION OF DISPUTED TERMS AND PHRASES OF THE
        '926 PATENT ......................................................................................31

A.   "Account identification data" and "Account identification data associated with the pre-existing customer account" .................................................31

B.   "Determining, by the central processor, the specific provider based on the account identification data" and "Determining the specific provider and the specific customer account number based on the account identification data" .....................................................33

C.   "Identifier that identifies the specific provider of the pre-existing customer account" ..........................................................35

VI.   PREAMBLES OF BOTH THE '439 AND THE '926 PATENTS ARE LIMITING ...............................................................................36

A.   The '439 Patent ..................................................................37

1.   The preambles of the '439 Patent provide antecedent basis for the terms within the bodies of the claim. ...........................37

2.   The preambles of the '439 Patent provide "essential structure or steps" and are necessary to "give life, meaning, and vitality" to the claims. .............................................38

3.   The preambles of the '439 Patent are used with the bodies of the claims to define the invention. .................................40

B.   The '926 Patent ..................................................................41

1.   The preambles of the '926 Patent provide antecedent basis for the terms within the bodies of the claim. ...........................41

2.   The preambles of the '926 Patent provide "essential structure or steps" and are necessary to "give life, meaning, and vitality" to the claims. .............................................42

3.   The preambles of the '926 Patent are used with the bodies of the claims to define the invention. .................................45

VII.   THE PHRASE "DETERMINING CRITERIA FOR AUTHORIZING TERMINALS TO REQUEST TRANSACTIONS FOR THE STORED VALUE CARD" IS INDEFINITE ...............................................45

A.   The Standard of Law for Indefiniteness .................................46

B.   The claims do not provide a definition for "determining criteria for authorizing terminals to request transactions for the stored value card." ...............................................................47

C.      The specification fails to provide any support for "determining criteria for authorizing terminals to request transactions for the stored value card." .................................................................................49

D.      The prosecution history fails to provide any support for "determining criteria for authorizing terminals to request transactions for the stored value card." ...............................................................51

CONCLUSION ...........................................................................................................51

# TABLE OF AUTHORITIES

## CASES

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
    55 F.3d 615 (Fed. Cir. 1995)............................................................................ 37

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)...................................................................... 37, 44

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005).................................................................... 47, 51

*Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*,
    347 F.3d 1314 (Fed. Cir. 2003)........................................................................ 47

*Electro Sci. Indus. v. Dynamic Details, Inc.*,
    307 F.3d 1343 (Fed. Cir. 2002)........................................................................ 37

*Envirotech Corp. v. Al George, Inc.*,
    730 F.2d 753 (Fed. Cir. 1984).......................................................................... 4

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001)........................................................................ 46

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)........................................................................ 46

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004).......................................................................... 3

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ............................ 3, 4

*Microstrategy Inc. v. Bus. Objects Ams.*,
    238 Fed. Appx. 605 (Fed. Cir. 2007)................................................................ 50

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    521 F.3d 1351 (Fed. Cir. 2008)........................................................................ 1

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)................................................................ 3, 4, 35

*Primos Inc. v. Hunter's Specialties Inc.*,
    451 F.3d 841 (Fed. Cir. 2006).......................................................................... 15

*Purechoice, Inc. v. Honeywell Int'l, Inc.*,
    333 Fed. Appx. 544 (Fed. Cir. 2009)........................................................... 46, 51

*Rapoport v. Dement*,
    254 F.3d 1053 (Fed. Cir. 2001) ..................................................................... 37

*Seattle Box Co. v. Industrial Crate & Packing, Inc.*,
    731 F.2d 818 (Fed. Cir. 1984) ...................................................................... 51

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ...................................................................... 3

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    *103 F.3d 1554 (Fed. Cir. 1997)* ..................................................................... 1

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) .................................................................... 15

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
    392 F.3d 1325 (Fed. Cir. 2004) .................................................................... 36

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................. 3, 15

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006) .................................................................... 36

**STATUTES**

35 U.S.C. § 112, ¶ 2 ....................................................................................... 46

Pursuant to Paragraph 3 of the Second Amended Scheduling Order (Dkt. No. 130) entered December 9, 2010, Defendant Blackhawk Network, Inc. ("Blackhawk") respectfully submits its Motion Requesting Construction setting forth proposed constructions for claim terms and limitations in U.S. Patent No. 7,578,439 ("the '439 Patent") and U.S. Patent No. 7,630,926 ("the '926 Patent").

## PRELIMINARY STATEMENT

The Federal Circuit has stated that claim construction is not merely an academic exercise, but instead "a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims."[1]  With this in mind, Blackhawk proposes that 6 terms from the 29 claims of the '439 Patent require construction to resolve disputed issues concerning infringement and invalidity:

- "unique terminal identifier,"
- "requesting terminal identifier" and "terminal identifier of the point-of-sale terminal"
- "card identifier,"
- "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type,"
- "initiating the requested transaction," and
- "associating in the database."

Blackhawk also proposes that 3 terms from the 18 claims of the '926 Patent require construction to resolve disputed issues concerning infringement and invalidity:

- "account identification data associated with the pre-existing customer account" and "account identification data,"

---

[1] *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

- "determining, by the central processor, the specific provider based on the account identification data" and "determining the specific provider and the specific customer account number based on the account identification data," and
- "identifier that identifies the specific provider of the pre-existing customer account."

Blackhawk also respectfully requests that the Court find each of the preambles of independent claims 1, 12, and 19 of the '439 Patent, and each of the preambles of independent claims 1 and 18 of the '926 Patent be construed as limiting.  Whether the preambles are limiting bears on the determination of infringement of these claims and those depending therefrom, which includes all asserted claims.

Finally, Blackhawk respectfully requests that the Court find the phrase "determining criteria for authorizing terminals to request transactions for the stored value card" from the '439 Patent to be indefinite due to the subjective nature of the claim limitation.  This determination bears on the validity of claims 5 and 23 of the '439 Patent and, accordingly, the infringement thereof.

Blackhawk turns to the Court to construe these terms in order to clarify the scope of the '439 Patent and the '926 Patent.  Consistent with controlling Federal Circuit authority, Blackhawk's proposed constructions find support in the claims, specification, and file history of the '439 Patent and the '926 Patent.  Furthermore, Blackhawk's proposed constructions will provide accessible meanings for a jury and assist in defining the true scope of the claims at issue pursuant to determining invalidity and noninfringement.

Blackhawk and Plaintiffs e2Interactive, Inc. and Interactive Communications Interntional, Inc. (collectively "InComm") have reached an agreement that the phrase "wherein the value is added to the pre-existing customer account by the specific provider based on the value identification data provided" in the '926 Patent should be construed to mean "wherein the

specific provider adds value to the pre-existing customer account based on the value identification data."

Blackhawk thus respectfully requests that the Court adopt Blackhawk's proposed constructions, which are detailed herein.  As also detailed herein, Blackhawk respectfully requests a hearing on all of the claim terms and phrases for the reasons articulated below.

## ARGUMENT

### I.      LEGAL STANDARD GOVERNING CLAIM CONSTRUCTION

Claim construction is a question of law.[2]  When construing the claims of a patent, a court considers the literal language of the claim, the patent specification, and the prosecution history.[3] Of these sources, the specification is "always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term."[4]  However, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'"[5]

A court may consider extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treatises, in order to assist it in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works.[6]

---

[2] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388-90 (1996).

[3] *Markman*, 52 F.3d at 979.

[4] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

[5] *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

[6] *Phillips*, 415 F.3d at 1318-19; *Markman*, 52 F.3d at 979-80 (citations omitted).

Extrinsic evidence, however, is considered less reliable and less useful in claim construction than the patent and its prosecution history.[7]

In addition to these fundamental claim construction principles, a court should also interpret the language in a claim by applying the ordinary and accustomed meaning of the words in the claim.[8]  The ordinary and accustomed meaning of claim terms denotes the meaning that a person having ordinary skill in the pertinent art would ascribe to the terms in the context of the entire patent, including its specification.[9]  If the inventor clearly supplies a different meaning, however, then the claim should be interpreted according to the meaning supplied by the inventor.[10]

## II.        THE '439 PATENT

### A.        The Invention of the '439 Patent

The '439 Patent issued on August 25, 2009 from U.S. Patent Application Serial No. 11/691,766 (the "'766 Application"), and is titled "System and Method for Authorizing Stored Value Card Transactions."[11]  Of the 29 claims of the patent, InComm has asserted that Blackhawk infringes independent claims 1, 12, and 19, and dependent claims 3-7, 14, 16, 21-

---

[7] *Phillips*, 415 F.3d at 1318-19 (discussing "flaws" inherent in extrinsic evidence, and noting that extrinsic evidence "is unlikely to result in a reliable interpretation of a patent claim scope unless considered in the context of the intrinsic evidence").

[8] *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984).

[9] *Phillips*, 415 F.3d, at 1313.

[10] *Markman*, 52 F.3d at 980 (noting that patentee is free to be his own lexicographer, but emphasizing that any special definitions given to words must be clearly set forth in patent).

[11] Declaration of Alan M. Fisch in Support of Defendant Blackhawk Network's Motion Requesting Construction ("Fisch Decl."), Ex. A, '439 Patent at Title.

25.[12]

The specification of the '439 Patent discloses use of the claimed system and method in a card data management system having a central processor in communication with a plurality of point-of-sale terminals over a communications network.[13]  The card data management system includes a point-of-sale terminal with a unique terminal identifier and a central processor in communication with the terminal and a database storing a plurality of card records.[14]  The card data management system processes a transaction request that is either a request to activate a card as part of a customer purchase of the card, a request to deactivate a card, a request to add value to a card, or a request to redeem the value of the card as part of a service or merchandise purchase by a card user.[15]  The central processor receives the transaction request from the terminal and determines whether the *particular terminal* is authorized to request the *particular transaction type* for the *particular card* by determining "whether the terminal in the request matches an authorized terminal identifier associated with the stored-value card and, if so, whether the

---

[12] In the pending reexamination, the Patent Office has rejected all of the asserted claims save 7, 14, and 25 in light of the prior art.

[13] *See* Fisch Decl., Ex. A, '439 Patent at 2:45-49 ("An aspect of the invention provides a computer-implemented method for processing a stored-value card transaction request in a card data management system having a central processor in communication with a plurality of point-of-sale terminals over a communications network."); 4:33-36 ("In the illustrated embodiment, a stored value card system **100** comprises a single stored value card merchant **2** having a single terminal **112** assigned to a single location **4**.").

[14] *Id.* at Abstract ("Each terminal has a unique terminal identifier and is associated with a location and a prepaid card merchant. The central processor is in communication with a database having stored therein a plurality of card records.").

[15] *Id*. at 5:1-5 ("[A] transaction request may be a request to activate a card as part of a customer purchase of the card, a request to deactivate a card, a request to add value to (recharge) a card, and a request to redeem the value of the card as part of a service or merchandise purchase by a card user.").

associated terminal is authorized for the transaction type."[16]

### B.   The Prosecution History of the '439 Patent

The prosecution history of the '439 Patent provides valuable context as to the precise invention claimed in the '439 Patent.  The communications between the applicants and the Patent Office show that the patentable feature of the '439 Patent was a specific system and method for processing stored-value card transaction requests.

On March 20, 2009, the Patent Examiner rejected all of the proposed apparatus and method claims as anticipated under 35 U.S.C. § 102(b) or obvious under 35 U.S.C. § 103.[17]  The Patent Examiner rejected 25 out of 29 claims under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent Application Publication No. 2004/0195316 ("Graves").[18]  The Patent Examiner rejected the 4 remaining claims under 35 U.S.C. § 103 as being obvious over Graves in view of U.S. Patent No. 3,958,103 ("Oka").[19]

On April 8, 2009, the Applicants submitted a response with only arguments against the application of Graves.[20]  The Applicants argued that Graves is not prior art because Graves claims priority to the same provisional application.[21]  On July 9, 2009, the Examiner allowed the

---

[16] *Id*. at 9:66-10:3.

[17] *See generally* Fisch Decl., Ex. B, March 20, 2009 Office Action at INCOMM00009535 - INCOMM00009545.

[18] *Id*. at INCOMM00009537 - INCOMM00009542.

[19] *Id*. at INCOMM00009542 - INCOMM00009543.

[20] Fisch Decl., Ex. C, April 8, 2009 Amendment and Response at INCOMM00009528 - INCOMM00009530.

[21] *Id*. at INCOMM00009528.

claims, and the '439 Patent issued with the originally filed 29 claims.[22]  The reasons for allowance include: (1) "each of the terminals has a unique terminal identifier"; (2) each of the terminals "is associated with a location and a prepaid card merchant"; (3) a central processor "is in communication with a database having stored therein a plurality of card records, wherein each card record contains data associated with a stored-value card distributed to a prepaid card merchant for further distribution to purchasers at a location controlled by the prepaid card merchant"; and (4) "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card."[23]

### C.    The Reexamination of the '439 Patent

A request for *Ex Parte* Reexamination of the '439 Patent was filed on June 28, 2010 as U.S. Reexamination Control No. 90/011,070 (the "'070 Reexamination") and granted on August 26, 2010.[24]  An office action rejecting claims 1, 3-6, 12, 16, 19, and 21-24 was issued by the USPTO on January 7, 2011.[25]  During an interview with the Examiner on February 22, 2011, the Applicants, in attempting to distinguish the prior art, stated that the "'439 [Patent] Describes Determination Based on Three Attributes."[26]  To illustrate their point, the Applicants provided

---

[22] Fisch Decl., Ex. D, July 9, 2009 Notice of Allowance at INCOMM00009497 - INCOMM00009499.

[23] *Id*. at INCOMM00009498 - INCOMM00009499.

[24] *See generally* Fisch Decl., Ex. E, August 26, 2010 Reexamination Control No. 90/011,070 Order Granting Request for *Ex Parte* Reexamination.

[25] *See generally* Fisch Decl., Ex. F, January 7, 2011 Office Action in *Ex Parte* Reexamination.

[26] Fisch Decl., Ex. G, February 22, 2011 Interview Summary - Interview Presentation at 3 and 5-6.

the figure showing the "'Sweet Spot that '439 [Patent] Claims'" with respect to the

"determining" step of independent claims 1, 12, and 19.[27]



The "Sweet Spot" is the determination based upon whether a requesting terminal is

authorized based on three attributes: the "terminal authorized," the "card identification," and the

"transaction type."[28]  The Applicants further explained that "[t]he data management system of

the '439 Patent enables determination of whether the *requesting terminal* is authorized for the

*particular transaction type* indicated in the request, for the *specific card* identified in the

request."[29]

The Applicants then filed a formal response to the Office Action on March 7, 2011.

Applicants attempted to retract part of the previous statements regarding the "Sweet Spot" of the

_____

[27] *See id.* at 3 and 5-7.

[28] *Id.*

[29] *Id.* at 6 (emphasis added).

'439 Patent, by attempting to remove the requirement of the card identifier.[30]  The Applicants stated that it was "unreasonable to interpret 'determining that a requesting terminal is authorized to request the requested transaction type' as being achieved without at least determining authorization for a terminal to perform a transaction type, on the level of transaction type, *independent of consideration of a card implicated by a particular transaction request*."[31]  The Applicants also stated that the determination of whether a terminal is authorized for the particular transaction type was more than merely determining whether the terminal was authorized to perform all transactions.[32]  According to the Applicants, the terminal must be specifically authorized for the particular type of transaction requested.[33]

With the March 7, 2011 response, Applicants also filed a declaration from Scott Loftesness, an expert retained by InComm.[34]  Mr. Loftesness supported the Applicant's statement that the determination step is not merely determining whether the terminal was authorized to perform all transactions.[35]  In addition, Mr. Loftesness stated that the "'439 Patent

---

[30] Fisch Decl., Ex. H, March 7, 2011 Amendment in Reply to Action of January 7, 2011 at 41.

[31] *Id.* at 35 (emphasis added). Notably, in the Response, the Applicants submitted 93 new claims to the claim set of the '439 Patent.

[32] *Id.* ("Indeed, one of ordinary skill would recognize that *this determination reasonably requires a determination that transcends terminal availability for a particular transaction and implicates general authorization to conduct transactions of a particular type, which is not satisfied by simply determining whether a terminal is authorized for all transactions, regardless of type*, and which also is *not satisfied by determining whether a terminal is authorized by a single transaction of a particular type without also determining that the terminal is otherwise available for transactions of the type implicated by the single transaction*.") (emphasis added).

[33] *Id.*

[34]*See generally* Fisch Decl., Ex. I, March 7, 2011 Declaration under 37 C.F.R. § 1.132 of Scott Loftesness.

[35] *Id.* at ¶ 18 ("Indeed, this determination reasonably requires a determination that transcends terminal availability for a particular transaction and requires general authorization to conduct

teaches 'determining if the requesting terminal is authorized to request the requested transaction type for the stored value card' by . . . 'determining [1] whether the requesting terminal identifier matches a terminal identifier associated with the card identifier assigned to the stored value card and [2] by determining whether the associated terminal identifier is authorized for the transaction type indicated in the request.'"[36]

### III.       THE '926 PATENT

#### A.       The Invention of the '926 Patent

The '926 Patent issued on December 8, 2009 from U.S. Patent Application Serial No. 11/290,606 (the "'606 Application"), and is titled "Inserting Value into Customer Account at Point of Sale Using a Customer Account Identifier."[37]  Generally speaking, and as the title indicates, the '926 Patent discloses a method and system for adding value into a customer account at a point of sale using an identifier of a customer account.[38]  Of the 18 claims of the patent, InComm has asserted that Blackhawk infringes independent claims 1 and 18, and dependent claims 3, 4, 6-10, and 13-17.

The specification of the '926 Patent discloses use of the claimed system and method to add value, redeemable to one or more providers, to a customer account provided by a specific provider, where a central processor determines the provider based on account identification

---

transactions of a particular type, which is not satisfied by simply determining whether a terminal is authorized for all transactions, regardless of type.").

[36] *Id*. at ¶ 20 ("Thus, the '439 patent teaches . . . 'determining if the requesting terminal is authorized to request the requested transaction type for the stored value card' by determining whether the requesting terminal identifier matches a terminal identifier associated with the card identifier assigned to the stored value card and by determining whether the associated terminal identifier is authorized for the transaction type indicated in the request.").

[37] Fisch Decl., Ex. J, '926 Patent at Title.

[38] *See id*.

data.[39]  The '926 Patent claims in part a process "that allows the customer to add value, i.e.,

money or usage credits, to an existing customer account from a point-of-sale (POS) device."[40]

The point-of-sale terminal receives value purchase data and customer account identification data,

which is then sent from the point-of-sale terminal to a central processor.[41]  The central processor

then identifies the value, the service provider, and the customer account based on the received

value purchase data and customer account identification data.[42]  Afterwards, the central

processor sends a request to the service provider to add the value to the identified customer

account.[43]

---

[39] *See id*. at claims 1 and 18 ("adding a value redeemable with one or more providers including a specific provider"); 3:3-6, 14-17 ("The invention relates to any customer account, such as an account provided by a provider of one or more goods or services (such as telecommunications service). . . The invention, through a combination of technologies, provides a customer-friendly process that allows the customer to add value, i.e., money or usage credits, to an existing customer account from a point-of-sale (POS) device.").

[40] *Id.* at 3:14-17.

[41] *Id*. at 3:24-30 ("In either case, value purchase data and/or customer account identification data (such as phone number corresponding to a telecommunications account) may be provided, e.g., by entering it at the point of sale (e.g., a POS terminal). The value purchase data and customer account identification data may be passed from the POS terminal to a central processor.").

[42] *Id*. at 3:30-36 ("The central processor may identify the value and/or the customer account based on the received value purchase data and the customer account identification data. For instance, the central processor may identify the value based on a database that links the value identification data (e.g., a value identifier or card number) to a specific value."); 21:40-45 ("The central processor may then determine whether an account number and provider have been previously identified for the card associated with the received card information.  For instance, the processor may access the card's record in the database and determine whether the entry includes an identified provider and account number.").

[43] *Id*. at 3:38-41 ("For instance, the central processor may send an automated and/or electronic request (e.g., via an API) to an account provider system to add the value to the identified customer account.").

### B.    The Prosecution History of the '926 Patent

The prosecution history of the '926 Patent provides valuable context as to the precise invention claimed in the '926 Patent.  The communications between the applicants and the Patent Office show that the patentable feature of the '926 Patent was "purchasing value at the point-of-sale, providing account identification data at the point-of-sale, a central processor determining the specific provider based on the received account identification data, and providing value to the provider."[44]

On December 19, 2008, the Patent Examiner rejected all of the proposed method and system claims as non-statutory subject matter under 35 U.S.C. § 101, indefinite under 35 U.S.C. § 112, 2nd paragraph, anticipated under 35 U.S.C. § 102(e), or obvious under 35 U.S.C. § 103.[45] The Patent Examiner rejected 12 out of 21 claims of the '606 Application under 35 U.S.C. § 102(e) as being anticipated by U.S. Patent No. 6,473,500 ("Risafi").[46]  The Patent Examiner rejected the remaining claims under 35 U.S.C. § 103 as being obvious over Risafi in view of U.S. Patent No. 5,903,633 ("Lorsch"), U.S. Patent Application Publication No. 2001/0044293 ("Morgan"), U.S. Patent No. 6,000,608 ("Dorf"), or U.S. Patent No. 6,332,135 ("Conklin").[47]

---

[44] Fisch Decl., Ex. K, July 17, 2009 Response to April 27, 2009 Office Action at INCOMM00038252 (emphasis in original); Fisch Decl., Ex. L, October 19, 2009 Notice of Allowance at INCOMM00038235 ("Reasons For Allowance . . . In particular, the applicant's remarks on pages 7-11 filed 07/17/09 which distinguishes the instant claimed invention from the closest prior art references listed below.  The examiner incorporates the applicant's remarks by reference as reasons for allowance . . . ").

[45] *See generally* Fisch Decl., Ex. M, December 19, 2008 Office Action at INCOMM00038308 - INCOMM00038335.

[46] *Id*. at INCOMM00038316 - INCOMM00038320.

[47] *Id*. at INCOMM00038320 - INCOMM00038329.

On March 19, 2009, the Applicants submitted a response with amendments to the claims and arguments against the prior art rejections.[48]  The Applicants amended the claims, in part, to tie parts of claim 1 and issued claim 18 to a "central processor."[49]

On April 27, 2009, the Patent Examiner rejected all of the proposed method and system claims as indefinite under 35 U.S.C. § 112, 2nd paragraph, anticipated under 35 U.S.C. § 102(e), or obvious under 35 U.S.C. § 103.[50]  The Patent Examiner rejected 13 out of 19 claims of the '606 Application under 35 U.S.C. § 102(e) as being anticipated by Risafi.[51]  The Patent Examiner rejected the remaining claims under 35 U.S.C. § 103 as being obvious over Risafi in view of one of U.S. Patent No. 6,502,745 ("Stimson"), Lorsch, Morgan, Dorf, or Conklin.[52]

On July 17, 2009, the Applicants submitted a response with amendments to the claims and arguments against the prior art rejections.[53]  In part, the Applicants argued that Risafi did not "add value" to the customer account because "Risafi is directed to a pre-paid MasterCard product that can be used a point of sale to purchase goods and services in a traditional sense."[54]  Notably, with this statement, Applicants have disclaimed "stored value cards" such as those disclosed in the '439 Patent.

---

[48] *See generally* Fisch Decl., Ex. N, March 19, 2009 Response to December 19, 2008 Office Action at INCOMM00038291 - INCOMM00038303.

[49] *Id*. at INCOMM00038293 - INCOMM00038297.

[50] *See generally* Fisch Decl., Ex. O, April 27, 2009 Office Action at INCOMM00038259 - INCOMM00038284.

[51] *Id*. at INCOMM00038264 - INCOMM00038273.

[52] *Id*. at INCOMM00038273 - INCOMM00038278.

[53] *See generally* Fisch Decl., Ex. K, July 17, 2009 Response to April 27, 2009 Office Action at INCOMM00038245 - INCOMM00038257.

[54] *Id*. at INCOMM00038252.

Following this response, the Examiner allowed the claims, and the '926 Patent issued with the 18 claims.  The reasons for allowance incorporated the arguments made by Applicants in the July 17, 2009 Response.[55]

### IV.      CONSTRUCTION OF DISPUTED TERMS AND PHRASES OF THE '439 PATENT

Blackhawk respectfully requests that the Court construe six claim terms that appear in the claims of the '439 Patent.  For the Court's convenience, enclosed as Exhibit P to the Declaration of Alan M. Fisch in Support of Defendant Blackhawk's Motion Requesting Construction, is a chart containing claims 1, 3-4, 7, 12, 19, 21-22, and 25 (*i.e.,* those claims reciting the claim terms requiring construction), in which each claim term requiring construction is highlighted in the context of the claims.

### A.      "Unique terminal identifier"

Independent claims 1, 12, and 19 of the '439 Patent recite a "unique terminal identifier," for each terminal.[56]  Based on the intrinsic evidence, the claim term "unique terminal identifier" should be construed as follows:

> *"an electronic signature or identification code sufficient to uniquely distinguish a particular terminal from other terminals"*

The claims and specification fully supports Blackhawk's proposed construction of "unique terminal identifier."  Based on controlling Federal Circuit authority, the claim term

---

[55] Fisch Decl., Ex. L, October 19, 2009 Notice of Allowance at INCOMM00038231 - INCOMM00038238.

[56] Fisch Decl., Ex. A, '439 Patent at claims 1, 12, and 19.

"unique terminal identifier" should be construed broadly enough to encompass all of the embodiments disclosed in the specification.[57]

Claims 1 and 19 both recite "each of the one or more terminals having a unique terminal identifier and being associated with a location and a prepaid card merchant" and "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card."[58]  Similarly, claim 12 recites "each terminal having a unique terminal identifier and being associated with one of a plurality of merchants" and "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type."[59]  All three independent claims support a construction that the requesting terminal has a "unique terminal identifier" and the "determining" step is done on a terminal-by-terminal basis by the information electronically sent to the central processor in the transaction request from the requesting terminal.

The "Summary of the Invention" states that each terminal has a unique terminal identifier.[60]  The "Detailed Description" section of the specification states that each terminal has terminal identification information "that can be used to distinguish it from other terminals that

---

[57] The Federal Circuit has repeatedly cautioned that a claim should be construed in a manner to include the embodiments disclosed in the specification.  *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way that excludes disclosed examples in the specification."); *Primos Inc. v. Hunter's Specialties Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("We . . . should not normally interpret a claim term to exclude a preferred embodiment."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (a construction that excludes a preferred embodiment "is rarely, if ever correct").

[58] Fisch Decl., Ex. A, '439 Patent at claims 1 and 19.

[59] *Id*. at claim 12.

[60] *Id*. at 2:49-51 ("Each of the one or more terminals has a unique terminal identifier and is associated with a location and a stored-value card merchant.").

may communicate with the data management system."[61]   The specification further explicitly

defines "terminal identifier" to mean "information <u>sufficient to distinguish a particular terminal</u>

<u>from other terminals</u> capable of communicating with a central processor."[62]   The specification

also clarifies that a "terminal identifier" can be "an <u>electronic signature</u> or a unique <u>identification</u>

<u>code</u>."[63]   Axiomatically, the terminal identifier must be an electronic identifier for it to be sent to

a central processor "in communication with a plurality of point-of-sale terminals over a

communications network."[64]

      In addition, the specification supports that "unique" refers to the ability to "distinguish a

particular terminal" from another on a terminal by terminal basis: "a terminal may have assigned

to it an identification code that is unique only for a particular location or retailer, but when

provided in combination with a location or retailer code, <u>uniquely</u> identifies the terminal."[65]

      Given the clear disclosures in the intrinsic record, "unique terminal identifier" should be

construed as "an electronic signature or identification code sufficient to uniquely distinguish a

particular terminal from other terminals."[66]

      Construction of the term "unique terminal identifier" is necessary because, if the Court

adopts Blackhawk's proposed construction of "unique terminal identifier," Blackhawk does not

infringe the '439 Patent.   Blackhawk's processes do not employ "an electronic signature or

identification code sufficient to uniquely distinguish a particular terminal from other terminals"

---

[61] *Id*. at 5:9-12.

[62] *Id*. at 5:14-17 (emphasis added).

[63] *Id*. at 5:17-19 (emphasis added).

[64] *Id*. at claims 1 and 12.

[65] *Id*. at 5:21-25 (emphasis added).

[66] *See id*. at 5:14-19.

used by a central processor to determine if the requesting terminal, which has a "unique terminal identifier," is authorized to request the requested transaction type.  In addition, adoption of Blackhawk's proposed construction would render the '439 Patent invalid as anticipated by or obvious over prior art.  For these reasons, Blackhawk respectfully requests construction and a hearing on the term "unique terminal identifier."

### B.    "Requesting terminal identifier" and "Terminal identifier of the point-of-sale terminal"

Independent claims 1 and 19 and dependent claims 4 and 22 of the '439 Patent recite a "requesting terminal identifier," while independent claim 12 recites "terminal identifier of the point-of-sale terminal."[67]  Based on the intrinsic evidence, the claim terms "requesting terminal identifier" and "terminal identifier of the point-of-sale terminal" both should be construed as follows:

> *"a unique terminal identifier of the terminal from which the request is received by the central processor"*

The claims and specification fully supports Blackhawk's proposed construction of "requesting terminal identifier" and "terminal identifier of the point-of-sale terminal."  Indeed, Blackhawk's proposed construction of this claim term dovetails with its proposed construction of "unique terminal identifier" — "an electronic signature or identification code sufficient to uniquely distinguish a particular terminal from other terminals."  As detailed *supra*, the claims and specification establish that the "requesting terminal identifier" or "terminal identifier of the point-of-sale terminal" is a "terminal identifier" of the requesting terminal itself.

The claim language supports that the requesting terminal has a "requesting terminal identifier" or a "terminal identifier of the point-of-sale terminal."  Claims 1 and 19 recite in part

---

[67] *Id*. at claims 1, 4, 12, 19, and 22.

"receiving the stored-value card transaction request from a *requesting terminal*, the *requesting terminal* being one of the plurality of point-of-sale terminals, the transaction request comprising a *requesting terminal identifier*."[68]  Similarly, the preamble of claim 12 recites in part "the transaction request being submitted by a retailer using a *point-of-sale terminal* that is one of a plurality of terminals capable of communicating over a network, each terminal having a unique terminal identifier and being associated with one of a plurality of merchants, the stored-value card transaction request comprising a unique card identifier for the particular stored value card, the *terminal identifier of the point-of-sale terminal*."

With the requesting terminal having its own identifier, the "requesting terminal identifier" is also a "unique terminal identifier."  Thus, the "requesting terminal identifier" or "terminal identifier of the point-of-sale terminal" should be construed as "a unique terminal identifier of the terminal from which the request is received by the central processor."[69]

Construction of the term "requesting terminal identifier" is necessary because, if the Court adopts Blackhawk's proposed construction of "requesting terminal identifier," Blackhawk does not infringe the '439 Patent.  Blackhawk's processes do not have "a unique terminal identifier of the terminal from which the request is received by the central processor" used by the central processor to determine if the requesting terminal, identified by "requesting terminal identifier," is authorized to request the requested transaction type.  In addition, adoption of Blackhawk's proposed construction would render the '439 Patent invalid as anticipated by or obvious over prior art.  For these reasons, Blackhawk respectfully requests construction and a hearing on the term "requesting terminal identifier."

---

[68] *Id*. at claims 1 and 19.

[69] *See id*. at 5:14-19, 21-25.

C.      "Card identifier"

Independent claims 1, 12, and 19 of the '439 Patent recite a "card identifier."[70]  Based on the intrinsic evidence, the claim term "card identifier" should be construed as follows:

*"information printed or encoded on the card identifying the particular card"*

The language of the claims themselves and the specification fully support Blackhawk's proposed construction of "card identifier."  The claim language of claims 1 and 19, in context, states "card identifier assigned to a <u>stored value card</u>."[71]

The specification states that each card has "<u>information printed and/or encoded</u> (e.g., on a magnetic stripe) <u>on the card</u>."[72]  The card information includes "an identifier unique to <u>the particular card</u>."[73]  The purpose of the card identifier that is "assigned to the stored value card" is "to associate prepaid value and other data with the card in a card record."[74]

In sum, the claim language itself and the disclosures in the specification show that "card identifier" should be construed as "information printed or encoded on the card identifying the particular card."[75]

Construction of "card identifier" is necessary, because, if the Court adopts Blackhawk's proposed construction of "card identifier," Blackhawk does not infringe the '439 Patent. Blackhawk's processes do not have "information printed or encoded on the card identifying the particular card" for determining whether the requesting terminal can perform the requested

---

[70] *Id.* at claims 1, 10, 21, 32.

[71] *Id.* at claims 1, 12, and 19.

[72] *Id.* at 4:51-53.

[73] *Id.* at 4:53-54.

[74] *Id.* at 4:54-56.

[75] *See id.* at 4:51-56.

transaction type for the particular stored value card having the "card identifier."  In addition, adoption of Blackhawk's proposed construction would render the '439 Patent invalid as anticipated by or obvious over prior art.  For these reasons, Blackhawk respectfully requests construction and a hearing on the term "card identifier."

> **D.** **"Determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and "Determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type"**

Independent claims 1 and 19 recite the step of "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and independent claim 12 recites the step of "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type."[76]  Both phrases should be construed because statements in the *Ex Parte* Reexamination of the '439 Patent limit the scope of the phrases.  In addition, both phrases should be construed similarly as the support for both terms are the same.  Based on the intrinsic evidence, the phrases "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type" should be construed as follows:

> *"the central processor determines: (1) whether the terminal identifier in the request matches a terminal identifier associated with the card identifier assigned to the stored value card; and (2) whether the associated terminal identifier is authorized for the specific transaction type in the request"*

---

[76] *Id.* at claims 1, 12, and 19.

The language of the claims themselves, the specification, and the prosecution history of the *Ex Parte* Reexamination fully support Blackhawk's proposed construction of "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type."

With respect to claims 1 and 19, three elements are recited in the step of "determining if the *requesting terminal* is authorized to request the *requested transaction type* for the *stored value card*."[77]  The three elements of "requesting terminal," "requested transaction type," and "stored value card" are consistent with the "Sweet Spot" described by the Applicants in the '070 Reexamination.[78]

With respect to claim 12, two of the three elements recited above are explicitly disclosed in the step of "determining, based on information in the transaction request and the database, whether the *requesting terminal* is authorized to request the *requested transaction type*."[79] While the "stored value card" element is not explicitly disclosed within this step, the "stored value card" is embodied within the step as "information in the transaction request and the database."[80]  As stated in the preamble of claim 12, the "stored value card transaction request compris[es] a unique card identifier for the particular *stored value card*."[81]  Furthermore, the

---

[77] *Id*. at claims 1 and 19 (emphasis added).

[78] *See* Fisch Decl., Ex. G, February 22, 2011 Interview Summary - Interview Presentation at 3 and 5-7.

[79] Fisch Decl., Ex. A, '439 Patent at claim 12 (emphasis added).

[80] *Id*.

[81] *Id*. (emphasis added).

"database" stores "a plurality of stored-value card records, each comprising a unique card identifier associated with a *stored-value card* distributed to one of a plurality of merchants."[82]

The specification states that the central processor has a transaction authorization module for "determining whether the terminal submitting a particular transaction request is authorized to do so."[83]  The determination is accomplished in a two-step process "by determining whether the terminal identifier in the request matches an authorized terminal identifier associated with the stored-value card and, if so, whether the associated terminal is authorized for the transaction type."[84]  The association of authorized terminal identifiers with the stored value cards is recorded by adding the terminal identifier to the card record of the stored value card, which is stored within the database.[85]

Figure 8 of the '439 Patent buttresses the proposed construction.  Specifically, Figure 8 shows step S140, "IS CARD ASSOCIATED WITH REQUESTING TERMINAL?" and step S160, "IS TERMINAL AUTHORIZED FOR THIS TRANSACTION FOR THIS CARD?"[86]

---

[82] *Id.* (emphasis added).

[83] *Id.* at 9:63-66; *see also* Fig. 7.

[84] *Id.* at 9:20-27 and 9:66-10:3 (emphasis added).

[85] *Id.* at 10:4-8 ("The association between authorized terminal identifiers and a stored value card may be established in a variety of forms including by storing the authorized terminal identifiers in the card record itself or by storing a link to a separate record for the authorized terminal identifiers.").

[86] *Id.* at Fig. 8.



FIG. 8

In addition, statements made by Applicants in the '070 Reexamination support

Blackhawk's proposed construction.  During the February 22, 2011 Interview, Applicants stated

that the "determining" step was based on three elements, whose intersection forms a "Sweet

Spot": (1) the *terminal authorized*; (2) the *transaction type*; and (3) the *card identification*.[87]

This step determines "whether the *requesting terminal is authorized* for the *particular*

*transaction type* indicated in the request, for the *specific card identified* in the request."[88]  In the

response that followed the interview, Applicants attempted to marginalize the card identification

as part of the determination,[89] but their retained expert, Mr. Loftesness, stated that the

---

[87] *See* Fisch Decl., Ex. G, February 22, 2011 Interview Summary - Interview Presentation at 3
and 5-7.

[88] *Id*. at 6 (emphasis added).

[89] *See* Fisch Decl., Ex. H, March 7, 2011 Amendment in Reply to Action of January 7, 2011 at
30 ("[C]laim 1 contemplates a determination of whether the terminal is authorized for transaction
type, irrespective of transaction details such as the card identifier") and 35 ("Mr. Loftesness

"determining" step involves "a first determination of whether the <u>terminal identifier in the</u> <u>request matches an authorized terminal identifier associated with the stored-value card</u> identified in the request, and a second determination of whether the <u>associated terminal is authorized for</u> <u>the transaction type</u> indicated in the request."[90]  Furthermore, Mr. Loftesness defines "'determining if the requesting terminal is authorized to request the requested transaction type for the stored value card' by determining whether the <u>requesting terminal identifier matches a</u> <u>terminal identifier associated with the card identifier assigned to the stored value card</u> and by determining whether the <u>associated terminal identifier is authorized for the transaction type</u> indicated in the request."[91]

Furthermore, the claims and statements made during the '070 Reexamination to attempt to overcome prior art also dictate that that the "determining" step in all three independent claims be construed in the same manner.  As explained above, all three independent claims cover a determination based on the three attributes of a "requesting terminal," a "requested transaction type," and a "stored value card."  In addition, Mr. Loftesness, in his declaration made to the United States Patent & Trademark Office, did not distinguish between the different claims in his

---

concludes in his declaration that it would be unreasonable to interpret 'determining that a requesting terminal is authorized to request the requested transaction type' as being achieved without determining authorization for a terminal to perform a transaction type, on the level of transaction type, independent of consideration of a card implicated by a particular transaction request").

[90] Fisch Decl., Ex. I, March 7, 2011 Declaration under 37 C.F.R. § 1.132 of Scott Loftesness at ¶ 20 (emphasis added).

[91] *Id.* (emphasis added).

discussion of the "determining" step.[92]  Also, in the '070 Reexamination, Applicants confirmed their belief that the "determining" step of the independent claims are not distinguishable as:

> "[A]ll three of the independent claims feature 'a determination that the requesting terminal is authorized to request the requested transaction type.'  This interpretation is also consistent with and informed by the description provided in the '439 patent's specification, which details an evaluation of terminal identifier and transaction type that is independent of card identifier, yielding a conclusion of whether or not the terminal is itself authorized for the transaction type, as claimed."[93]

Consequently, the claim language, the disclosures in the specification, and the prosecution history show that "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type" should be construed as "the central processor determines: (1) whether the terminal identifier in the request matches a terminal identifier associated with the card identifier assigned to the stored value card; and (2) whether the associated terminal identifier is authorized for the specific transaction type in the request."[94]

Construction of "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type" is necessary because, if the Court adopts Blackhawk's construction, Blackhawk does not infringe the '439 Patent.  Blackhawk's processes do not have "the central processor [that] determines: (1) whether the terminal identifier in the request

---

[92] *See* Fisch Decl., Ex. I, March 7, 2011 Declaration under 37 C.F.R. § 1.132 of Scott Loftesness at ¶¶ 18 and 20.

[93] Fisch Decl., Ex. H, March 7, 2011 Amendment in Reply to Action of January 7, 2011 at 31.

[94] *See* Fisch Decl., Ex. A, '439 Patent at 9:66-10:3; Fisch Decl., Ex. I, March 7, 2011 Declaration under 37 C.F.R. § 1.132 of Scott Loftesness at ¶ 20.

matches a terminal identifier associated with the card identifier assigned to the stored value card; and (2) whether the associated terminal identifier is authorized for the specific transaction type in the request."  Further, adoption of Blackhawk's proposed construction would render the '439 Patent invalid as anticipated by or obvious over prior art.  For these reasons, Blackhawk respectfully requests construction and a hearing on the phrases "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" and "determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type."

### E.   "Initiating the requested transaction" and "Processing the requested transaction"

Independent claims 1 and 19 of the '439 Patent recite the step of "initiating the requested transaction."[95]  Independent claim 12 of the '439 Patent recites the step of "processing the requested transaction.  Based on the intrinsic evidence, both phrases should be construed as follows:

*"the central processor performs the requested transaction"*

The preambles of claims 1 and 19 all state that it is the central processor that performs the requested transaction.  The preamble of claim 1 recites in part "[a] computer-implemented method for processing a stored-value card transaction request in a card data management system having a <u>central processor</u> in communication with a plurality of point-of-sale terminals over a communications network . . . , the <u>central processor</u> being in communication with a database having stored therein a plurality of card records."[96]  Similarly, the preamble of claim 19 recites

---

[95] Fisch Decl., Ex. A, '439 Patent at claims 1 and 19.

[96] *Id*. at claim 1 (emphasis added).

in part "[a] computer program embodied in a computer-readable medium for processing a stored-value card transaction request in a card data management system having a <u>central processor</u> in communication with a plurality of point-of-sale terminals over a communications network . . . , the <u>central processor</u> being in communication with a database having stored therein a plurality of card records."[97]

With respect to claim 12, the claimed system similarly includes "a <u>central processor</u> in communication with the network, the <u>central processor</u> being adapted to receive the transaction request from the point-of-sale terminal" and a "database in communication with the central processor, the database having stored therein a plurality of stored-value card records, each comprising a unique card identifier associated with a stored-value card distributed to one of the plurality of merchants."[98]

In both claims 1 and 19, the claims require that central processor "initiat[es] the requested transaction" "responsive to a determination that the requesting terminal is authorized to request the requested transaction type."[99] Claim 12 requires "at least one transaction processing module in the <u>central processor</u> configured for <u>processing</u> the requested transaction responsive to a determination by the transaction authorization module that the requesting terminal is authorized to request the requested transaction type."[100]

For all the independent claims, the specification explains that once it has been determined that a transaction request is authorized, "the transaction may be processed by one of a series of

---

[97] *Id.* at claim 19 (emphasis added).

[98] *Id.* at claim 12 (emphasis added).

[99] *Id.* at claims 1 and 19.

[100] *Id.* at claim 12 (emphasis added).

transaction modules."[101]  In Figure 7, the central processor includes an activation module, an incrementation module, a deactivation module, and a redemption module for processing the transaction.[102]  The specification defines processing as "performed by various components and various memories.  It will be understood, however, that the processing performed by two distinct components as described above may, in accordance with a further embodiment of the invention, be performed by a single component."[103]  The specification supports a construction that the central processor "performs the transaction," but does not disclose that the central processor simply initiates or actuates a transaction.

The intrinsic evidence thus establishes that "initiating the transaction" and "processing the requested transaction" should both be construed as "the central processor performs the requested transaction."

Construction of "initiating the transaction" and "processing the requested transaction" is necessary because, if the Court adopts Blackhawk's proposed construction, Blackhawk does not infringe the '439 Patent.  Blackhawk's processes do not have the element of "the central processor performs the requested transaction."  In addition, adoption of Blackhawk's proposed construction would render the '439 Patent invalid as anticipated by or obvious over prior art.  For these reasons, Blackhawk respectfully requests construction and a hearing on the phrases "initiating the transaction" and "processing the requested transaction."

---

[101] *Id*. at 10:11-13.

[102] *Id*. at Fig. 7; *see also* 10:13-15 ("These may include, but are not limited to, an activation module **760**, an incrementation module **762**, a deactivation module **764**, and a redemption module **766**.").

[103] *Id*. at 12:46-51 (emphasis added).

F.    **"Associating in the database"**

Dependent claims 3, 7, 21, and 25 of the '439 Patent recite the step of "associating in the database."[104]  Based on the intrinsic evidence, the claim term "initiating the requested transaction" should be construed as follows:

> *"the central processor, prior to receiving the stored-value card transaction request from the requesting terminal, receives, stores, and links in the database"*

In claims 3, 7, 21, and 25, the claim term "associating in the database" is used to store in a database an association between two of the following: (1) authorized terminal identifiers; (2) the stored value card; and (3) the authorized transaction types.[105]  For example, claims 3 and 21 recite in part "associating in the database a set of <u>authorized terminal identifiers</u> with the <u>stored-value card</u>."[106]  And claims 7 and 25 recite in part "associating in the database a set of one or more <u>authorized transaction types</u> with each <u>authorized terminal identifier</u>."[107]

The specification discloses an associating module in the central processor for associating in a database stored-value cards with terminal identifiers of terminals authorized to request transactions for that card.[108]  The associations linking stored-value cards or transaction types with terminal identifiers must be in place prior to the generation of the transaction request because, without those associations in place, there is no way to determine whether the requesting terminal is authorized to request the requested transaction type for the stored value card.  The specification provides three examples of such pre-loading of these associations in the database:

---

[104] *Id.* at claims 3, 7, 21, and 25.

[105] *Id.*

[106] *Id.* at claims 3 and 21.

[107] *Id.* at claims 7 and 25.

[108] *Id.* at 8:48-50 ("An associating module **754** is adapted for associating each stored-value card with the terminal identifiers of terminals authorized to request transactions for that card.").

(1) use of a "set-up card" that "associate[s] terminals and locations with a particular set of stored-value cards;"[109] (2) "separately transmitting [the terminal identifiers] to the central processor **716** in a data file;"[110] and (3) "manually entering [terminal identifiers] into the data processor **716**."[111]

Then, the "association module **754** <u>receives</u> the transmission [of association information] and creates the association between the terminal and the stored value cards."[112]  In addition, the "authorizations are also <u>stored</u> so that the cards of that location may only be activated, incremented or deactivated using that particular terminal," such that any redemption requests would be rejected.[113]  The central processor also links the associations by "storing a <u>link</u> to a separate record for the authorized terminal identifiers" or "includ[ing] a <u>link</u> through a merchant or location identifier."[114]  Prior to the central processor <u>receiving</u>, <u>storing</u>, and <u>linking</u> the associations, no rules for authorizing based on transaction type are set.

The intrinsic evidence thus establishes that "associating in the database" should be construed as "the central processor, prior to receiving the stored-value card transaction request from the requesting terminal, receives, stores, and links in the database."

---

[109] *Id*. at 8:52-55.

[110] *Id*. at 9:8-10.

[111] *Id*. at 9:16-19.

[112] *Id*. at 9:1-3 ("The associating module **754** <u>receives</u> the transmission and creates the association between the terminal and the stored-value cards distributed to the location.") (emphasis added).

[113] *Id*. at 9:3-7 (emphasis added).

[114] *Id*. at 10:4-10 (emphasis added); *see also id*. at 9:10-14 ("The file may be set up to include only the identifiers for terminals associated with a particular location and authorization set or may include information <u>linking</u> different groups of terminals to location identifiers and authorization combinations.") (emphasis added).

Construction of "associating in the database" is necessary because, if the Court adopts Blackhawk's proposed construction, Blackhawk does not infringe the '439 Patent. Blackhawk's processes do not have the limitation of "the central processor, prior to receiving the stored-value card transaction request from the requesting terminal, receives, stores, and links in the database." In addition, adoption of Blackhawk's proposed construction would render the '439 Patent invalid as anticipated by or obvious over prior art. For these reasons, Blackhawk respectfully requests construction and a hearing on the phrase "associating in the database."

## V.       CONSTRUCTION OF DISPUTED TERMS AND PHRASES OF THE '926 PATENT

Blackhawk respectfully requests that the Court construe seven claim terms that appear in the claims of the '926 Patent. For the Court's convenience, enclosed as Exhibit R to the Declaration of Alan M. Fisch in Support of Defendant Blackhawk's Motion Requesting Construction, is a chart containing claims 1, 4, 6-7, and 17-18 (*i.e.,* those claims reciting the claim terms requiring construction), in which each claim term requiring construction is highlighted in the context of the claims.

### A.       "Account identification data" and "Account identification data associated with the pre-existing customer account"

Claims 1, 4, 6, 17, and 18 of the '926 Patent recite "account identification data" and independent claims 1 and 18 of the '926 Patent recite "account identification data associated with the pre-existing customer account."[115]  Based on the intrinsic evidence, the claim term "account identification data" and "account identification data associated with the pre-existing customer account" should be construed as follows:

---

[115] Fisch Decl., Ex. J, '926 Patent at claims 1, 4, 6, and 17-18.

*"data corresponding to a pre-existing customer account number of the specific provider"*

The claim terms "account identification data" and "account identification data associated with the pre-existing customer account" are part of a request to add value that is received from a point of sale terminal.[116]  The specification teaches that the "account identification information" is received by a central processor so that the central processor "identif[ies] the target account to which the value will be added."[117]  For example, a customer enters at a point of sale terminal a telephone number "<u>corresponding</u> to a telecommunications service account."[118]  In another example, information read from a card serves as account identification data as the central processor can determine an account number that has been previously identified for and associated with the card.[119]

Given the clear disclosures in the specification, "account identification data" and "account identification data associated with the pre-existing customer account" should be construed as "data corresponding to a pre-existing customer account number of the specific provider."

Construction of "account identification data" and "account identification data associated with the pre-existing customer account" is necessary because, if the Court adopts Blackhawk's

---

[116] *Id.* at claims 1 and 18; *see also id.* at 2:6-11 ("A method of adding a value to a customer account is provided. A request to add a value to a customer account of a customer is received from a point of sale terminal. The request may comprise value identification data associated with the value and account identification data associated with the customer account.").

[117] *Id.* at 4:7-10.

[118] *Id.* at 4:10-13 (emphasis added).

[119] *Id.* at 21:40-48 ("The central processor may then determine whether an account number and provider have been previously identified for the card associated with the received card information.  For instance, the processor may access the card's record in the database and determine whether the entry includes an identified provider and account number.  Because this account has already registered/activated above, and because the account and card information have already been stored, the central processor recognizes that this is an active card.").

proposed construction, Blackhawk does not infringe the '926 Patent.  Blackhawk's processes do not have the limitation of "data corresponding to a pre-existing customer account number of the specific provider" that is used by the central processor to determine the specific provider.  In addition, adoption of Blackhawk's proposed construction would render the '926 Patent invalid as anticipated by or obvious over prior art.  For these reasons, Blackhawk respectfully requests construction and a hearing on the terms "account identification data" and "account identification data associated with the pre-existing customer account."

> **B.** **"Determining, by the central processor, the specific provider based on the account identification data" and "Determining the specific provider and the specific customer account number based on the account identification data"**

Independent claim 1 of the '926 Patent recites "determining, by the central processor, the specific provider based on the account identification data" and independent claim 18 of the '926 Patent recites "determining the specific provider and the specific customer account number based on the account identification data."[120]  Based on the intrinsic evidence, the claim terms "determining, by the central processor, the specific provider based on the account identification data" and "determining the specific provider and the specific customer account number based on the account identification data" should be construed as follows:

> *"the central processor accesses a record in the database corresponding to the account identification data and identifies the specific provider from the record"*

The language and structure of claims 1 and 18 require that the "account identification data" be "associated with the pre-existing account" prior to the central processor "determining" the specific provider.  Specifically, both claims 1 and 18 state that a "request to add a value to the pre-existing customer account" comprises "account identification data associated with the

---

[120] *Id*. at claims 1, 4, 6, and 17-18.

pre-existing customer account."[121]  In addition, claim 1 recites in part "account identification data associated with the pre-existing customer account" as part of the step of "receiving, at the central processor, from a point of sale terminal a request to add a value."[122]  Similarly, claim 18 recites that "account identification data associated with the pre-existing customer account" is received by "an input device in selective communication with at least one point of sale terminal for receiving, at the central processor, from a point of sale terminal a request to add a value."[123]

The support in the specification for "determining, by the central processor, the specific provider based on the account identification data" is consistent with the proper construction of "account identification data."  The specification states that the central processor "access[es] the card's record in the database and determine[s] whether the entry includes an identified provider and account number."[124]  In those cases where the card's record has been associated with the customer account of a service provider, the central processor has "already identified and stored such information during a prior transaction."[125]

Given the clear disclosures in the claims and specification, "determining, by the central processor, the specific provider based on the account identification data" and "determining the specific provider and the specific customer account number based on the account identification data" should be construed as "the central processor accesses a record in the database corresponding to the account identification data and identifies the specific provider from the record."

---

[121] *Id*. at claims 1 and 18.

[122] *Id*. at claim 1 (emphasis added).

[123] *Id*. at claim 18 (emphasis added).

[124] *Id*. at 21:42-45 (emphasis added).

[125] *Id*. at 21:53-56 (emphasis added).

Construction of "determining, by the central processor, the specific provider based on the account identification data" and "determining the specific provider and the specific customer account number based on the account identification data" is necessary because, if the Court adopts Blackhawk's proposed construction, Blackhawk does not infringe the '926 Patent. Blackhawk's processes do not have the limitation of "the central processor accesses a record in the database corresponding to the account identification data and identifies the specific provider from the record."  In addition, adoption of Blackhawk's proposed construction would render the '926 Patent invalid as anticipated by or obvious over prior art.  For these reasons, Blackhawk respectfully requests construction and a hearing on the term "specific provider."

### C.   "Identifier that identifies the specific provider of the pre-existing customer account"

Claim 7 of the '926 Patent recites an "identifier that identifies the specific provider of the pre-existing customer account."[126]  Based on the intrinsic evidence, the claim term "identifier that identifies the specific provider of the pre-existing customer account" should be construed as follows:

> *"identifier other than the account identification data that identifies the specific provider of the pre-existing customer account"*

Claim 7, which is dependent on independent claim 1, recites "further comprising" prior to reciting "identifier that identifies the specific provider of the pre-existing customer account." Claim 7 incorporates the limitations of independent claim 1 and recites an additional limitation, but independent claim 1 does not include the limitations of dependent claim 7.[127]  As claim 1

---

[126] *Id*. at claims 1, 4, 6, and 17-18.

[127] *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."); *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir.

does not include the "identifier that identifies the specific provider of the pre-existing customer account" element of claim 7, the identifier in claim 7 cannot be the same as the "account identification data" as recited in claim 1.

Given the clear disclosures in the claims and the specification, "identifier that identifies the specific provider of the pre-existing customer account" should be construed as an "identifier other than the account identification data that identifies the specific provider of the pre-existing customer account."

Construction of "identifier that identifies the specific provider of the pre-existing customer account" is necessary because, if the Court adopts Blackhawk's proposed construction, Blackhawk does not infringe the '926 Patent. Blackhawk's processes do not have the limitation of "identifier other than the account identification data that identifies the specific provider of the pre-existing customer account." In addition, adoption of Blackhawk's proposed construction would render the '926 Patent invalid as anticipated by or obvious over prior art. For these reasons, Blackhawk respectfully requests construction and a hearing on the phrase "identifier that identifies the specific provider of the pre-existing customer account."

## VI.      PREAMBLES OF BOTH THE '439 AND THE '926 PATENTS ARE LIMITING

Blackhawk respectfully requests that the Court construe the preambles of the independent claims in the '439 Patent and the '926 Patent as limiting. A preamble is a limitation of the claim when: (1) when limitations in the body of the claim rely upon and derive antecedent basis from

_____

2006) (independent claim ordinarily does not include explicit limitations of a dependent claim); *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) (independent claim should not be construed in a manner that renders dependent claim superfluous).

the preamble, the preamble may act as a necessary component of the claimed invention;[128] (2) the preamble recites "essential structure or steps" or if it is necessary to "give life, meaning, and vitality" to the claim;[129] and (3) the claim uses text in both the preamble and the body to define the invention claimed.[130]

### A.    The '439 Patent

#### 1.    The preambles of the '439 Patent provide antecedent basis for the terms within the bodies of the claim.

The preambles of claims 1, 12, and 19 in the '439 Patent are limiting because they provide antecedent basis for numerous terms within the body of the independent claim.

The preambles of claims 1 and 19 recite "*a* stored-value card transaction request," while the preamble of claim 12 recites "*a* request for a stored-value card transaction."[131]  The bodies of claims 1 and 19 recite "*the* stored-value card transaction request," which obtains its antecedent basis from the recitation of "*a* stored-value card transaction request" in the preambles of claims 1 and 19.[132]  Similarly, the body of claim 12 recites "*the* transaction request," which obtains its antecedent basis from the recitation of "*a* request for a stored-value card transaction" in the preamble of claim 12.[133]

---

[128] *See, e.g.*, *Electro Sci. Indus. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1348 (Fed. Cir. 2002); *Rapoport v. Dement*, 254 F.3d 1053, 1059 (Fed. Cir. 2001).

[129] *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

[130] *See Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995).

[131] Fisch Decl., Ex. A, '439 Patent at claims 1, 12, and 19 (emphasis added).

[132] *Id.* at claims 1 and 19 (emphasis added).

[133] *Id.* at claim 12 (emphasis added).

The body of claims 1 and 19 also recite "*the* plurality of point of sale terminals," which obtains its antecedent basis from the recitation of "*a* plurality of point-of-sale terminals" in the preambles of claims 1 and 19.[134]  Further, the body of claim 12 recites "*the* requested transaction type," which obtains its antecedent basis from the recitation of "information indicative of *a* requested transaction type" in the preamble of claim 12.[135]

The preambles of claims 1, 12, and 19 also provide antecedent basis for dependent claims.  For example, the preambles of independent claims 1 and 19 both recite "*a* database having stored therein a plurality of card records."[136]  The term "*the* database" is not recited within the bodies of claims 1 and 19.  Yet, the bodies of dependent claims 3, 7, 21, and 25 all recite "associating in *the* database."[137]  The term "*the* database" in dependent claims 3, 7, 21, and 25 does not have antecedent basis without the recitation of "*a* database" in the preambles of independent claims 1 and 19.

For these reasons, the limitations in the bodies of the claims rely upon and derive antecedent basis from the preambles of claims 1, 12, and 19.  As a result, the preambles of the claims in the '439 Patent should be construed as limiting.

> **2.   The preambles of the '439 Patent provide "essential structure or steps" and are necessary to "give life, meaning, and vitality" to the claims.**

The preambles of independent claims 1, 12, and 19 are limiting because they recite essential elements and act as a necessary component of the claimed invention.

---

[134] *Id*. at claims 1 and 19 (emphasis added).

[135] *Id*. at claim 12 (emphasis added).

[136] *Id*. at claims 1 and 19 (emphasis added).

[137] *Id*. at claims 3, 7, 21, and 25 (emphasis added).

With respect to independent claims 1 and 19, the preambles of both claims recite "a card data management system having a central processor in communication with a plurality of point-of-sale terminals over a communications network," "the central processor being in communication with a database having stored therein a plurality of card records," and "each card record containing data associated with a stored-value card distributed to a prepaid merchant for further distribution to purchasers at a location controlled by the prepaid card merchant."[138]  The recitations in both of these claims provide the "essential structure" necessary to carry out the steps recited in the bodies of each claim.  For example, the body of each claim recites the steps of "receiving the stored-value transaction request from a requesting terminal " and "determining the requesting terminal is authorized to request the requested transaction type for the stored value card."  Both preambles recite a "card data management system having a central processor" which is the "essential structure" for performing the claimed step of "receiving the stored-value transaction request."  Similarly, the preamble's recitation of "central processor being in communication with a database" provides the "essential structure" for the central processor to consult with a "database" filled with "card records containing data associated with a stored-value card" in order to perform the "determining step."  Without the limitations recited in the preambles, it would not be possible to perform the claimed steps.

With respect to independent claim 12, the preamble recites "a point-of-sale terminal that is one of a plurality of terminals capable of communicating over a network, each terminal having a unique terminal identifier and being associated with one of a plurality of merchants."[139]  The recitation in this claim provides the "essential structure" necessary for the body of the claim.  For

---

[138] *Id*. at claims 1 and 19.

[139] *Id*. at claim 12.

example, the body of claim 12 recites "a central processor in communication with the network, the central processor being adapted to receive the stored-value transaction request from the point of sale terminal."[140]  The preamble of claim 12 recites "a point of sale terminal," which is the "essential structure" for transmitting the "stored-value transaction request" that the "central processor" receives.[141]  In addition, the body of claim 12 recites "a transaction authorization module in the central processor configured for determining . . . whether the requesting terminal is authorized to request the requested transaction type."[142]   The preamble of claim 12 recites "a point of sale terminal," which is the "essential structure" for the "transaction authorization module" to determine "whether the requesting terminal is authorized to request the requested transaction type."[143]  Thus, without the limitations recited in the preamble, it would not be possible for the claimed elements to function properly.

For the reasons stated above, the preambles of the independent claims in the '439 Patent provide "essential structure or steps" and are necessary to "give life, meaning, and vitality" to the claims.

### 3. The preambles of the '439 Patent are used with the bodies of the claims to define the invention.

The preambles of the '439 Patent are limiting because independent claims 1, 12, and 19 use text in both the preamble and the body to define the claimed invention.

---

[140] *Id.*

[141] *Id.*

[142] *Id.*

[143] *Id.*

The preambles of claims 1 and 19 recite "each of the one or more terminals having a unique terminal identifier and being associated with a location and a prepaid card merchant," while the preamble of claim 12 recites "each terminal having a unique terminal identifier and being associated with one of a plurality of merchants."[144]  These preambles recite a "unique terminal identifier" that each terminal in the system has to uniquely identify itself from all other terminals.

The body of the independent claims recite a "requesting terminal" or a "point-of-sale terminal," which has its own "unique terminal identifier" as defined in the preamble.[145]  The fact that the "requesting terminal" or a "point-of-sale terminal" has its own "unique terminal identifier" is critical to the "determination" that the "requesting terminal is authorized to request the requested transaction type" as recited in the body of the claims.[146]

For these reasons, the preambles of the independent claims in the '439 Patent collaborate with the bodies of those same claims to define the claimed invention.  Thus, Blackhawk respectfully requests construction and a hearing on the preambles of independent claims 1, 12, and 19 in the '439 Patent.

### B.    The '926 Patent

#### 1.    The preambles of the '926 Patent provide antecedent basis for the terms within the bodies of the claim.

The preambles of claims 1 and 18 in the '926 Patent are limiting because they provide antecedent basis for numerous terms within the body of the independent claim.

---

[144] *Id.* at claims 1, 12, and 19.

[145] *Id.*

[146] *Id.*

The preambles of claims 1 and 18 recite "*a* specific provider."[147]  The bodies of claims 1 and 18 recite in multiple places "*the* specific provider," which obtains its antecedent basis from the recitation of "*a* specific provider" in the preambles of claims 1 and 18.[148]

The body of claims 1 and 18 also recite "*the* pre-existing customer account," which obtains its antecedent basis from the recitation of "*a* pre-existing customer account" in the preambles of claims 1 and 18.[149]  In addition, the body of claim 1 recites "the central processor," which obtains its antecedent basis from the recitation of "*a* central processor in selective communication with a point of sale terminal and the one or more providers" in the preamble.[150]  Further, the recitation of "*the* specific customer account number" in the body of claim 18 obtains its antecedent basis from the recitation of "*a* specific customer account number" in the preamble of claim 18.[151]

For these reasons, the limitations in the bodies of the claims rely upon and derive antecedent basis from the preambles of claims 1 and 18.  As a result, the preambles of the claims in the '926 Patent should be construed as limiting.

2. **The preambles of the '926 Patent provide "essential structure or steps" and are necessary to "give life, meaning, and vitality" to the claims.**

The preambles of independent claims 1 and 18 are limiting because they recite essential elements and act as a necessary component of the claimed invention.

---

[147] Fisch Decl., Ex. J at claims 1 and 18. (emphasis added).

[148] *Id*. (emphasis added).

[149] *Id.* (emphasis added).

[150] *Id*. at claim 1 (emphasis added).

[151] *Id*. at claim 18 (emphasis added).

With respect to independent claims 1 and 18, the preambles of both claims recite "specific provider having a pre-existing customer account identified by a specific customer account number."[152]  The recitations in both of these claims provide the "essential structure" necessary to carry out the steps recited in the body of the claim.  Without the recitation of a "specific provider" in the preamble, the step of "determining, by the central processor, the specific provider" in the body of claim 1 and the element of "a processor for determining the specific provider and the specific customer account number" in the body of claim 18 would have no meaning.[153]

In addition, the preamble of claim 1 recites a "central processor in selective communication with a point of sale terminal and the one or more providers."[154]  The "central processor" in the preamble provides the "essential structure" for the body of the claim in performing all of the recited steps of the method as all of the steps are performed either "at the central processor" or "by the central processor."[155]  The phrases "at the central processor" and "by the central processor" were added during the prosecution history of the '926 Patent in order to overcome a non-statutory subject matter rejection under 35 U.S.C. § 101.[156]  The Applicants stated that the method steps of claim 1 "have been thoroughly tied to a 'central processor' -- a recitation which prevents the interpretation of a person performing the steps."[157]  Without the

---

[152] Fisch Decl., Ex. J, '926 Patent at claims 1 and 18.

[153] *Id.*

[154] *Id.* at claim 1.

[155] *Id.* (emphasis added).

[156] Fisch Decl., Ex. N, March 19, 2009 Response to December 19, 2008 Office Action at INCOMM00038293 and INCOMM00038298.

[157] *Id.* at INCOMM00038298.

"central processor" recited in the preamble, it would not be possible to perform the method steps of claim 1.

The preambles of both claims 1 and 18 recite "adding a value redeemable with one or more providers."[158]  These recitations in the preambles "give life, meaning, and vitality" to the claim because the preambles were relied upon to distinguish from the prior art.[159]  On multiple occasions, the Applicants argued against the rejection of the claims as anticipated by Risafi.  In particular, the Applicants stated "Risafi is directed to a pre-paid MasterCard product that can be used [at] a point of sale to purchase goods and services in a traditional sense.  *Risafi is not used to add value to a 'pre-existing customer account.'*"[160]  While making that argument, the Applicants amended the claims to read "adding a value <u>redeemable with one or more providers</u>."[161]  These statements and amendments clarify the Applicant's position that the claimed invention did not include pre-paid gift cards "used [at] a point of sale to purchase goods and services," but in fact dealt with a "specific provider having a pre-existing customer account."[162]

For the reasons stated above, the preambles of the independent claims in the '926 Patent provide "essential structure or steps" and are necessary to "give life, meaning, and vitality" to the claims.

---

[158] Fisch Decl., Ex. J, '926 Patent at claims 1 and 18.

[159] *Catalina Mktg. Int'l, Inc.*, 289 F.3d at 809 ("Absent clear reliance on the preamble in the prosecution history, or in situations where it is necessary to provide antecedent basis for  the body of the claim, the preamble 'generally is not limiting.'").

[160] Fisch Decl., Ex. N, March 19, 2009 Response to December 19, 2008 Office Action at INCOMM00038299 - INCOMM00038300 (emphasis added).

[161] *Id*. at INCOMM00038293 and INCOMM00038296 (emphasis in original).

[162] *Id*. at INCOMM00038299 - INCOMM00038300; Fisch Decl., Ex. J, '926 Patent at claims 1 and 18.

### 3. The preambles of the '926 Patent are used with the bodies of the claims to define the invention.

The preambles of the '926 Patent are limiting because independent claims 1 and 18 use text in both the preamble and the body to define the invention claimed.

The preambles of claims 1 and 18 recite "specific provider having a pre-existing customer account identified by a specific customer account number."[163]  In particular, the preambles recite a "specific provider" and a "pre-existing customer account."

The body of the independent claims 1 and 18 recite "account identification data associated with the pre-existing customer account" and "wherein the value is added to the pre-existing customer account by the specific provider."[164]  The preambles of claims 1 and 18 collaborate with the bodies of the claims 1 and 18 to define that it is the specific provider that maintains the pre-existing customer account, with each pre-existing customer account being "identified by a specific customer account number."[165]

For these reasons, the preambles of the independent claims in the '926 Patent collaborate with the bodies of those same claims to define the invention.  For these reasons, Blackhawk respectfully requests construction and a hearing on the preambles of independent claims 1 and 18 in the '926 Patent.

### VII. THE PHRASE "DETERMINING CRITERIA FOR AUTHORIZING TERMINALS TO REQUEST TRANSACTIONS FOR THE STORED VALUE CARD" IS INDEFINITE

Blackhawk respectfully requests that the Court hold that the phrase "determining criteria for authorizing terminals to request transactions for the stored value card" in claims 5 and 23 is

---

[163] Fisch Decl., Ex. J, '926 Patent at claims 1 and 18.

[164] *Id.*

[165] *Id.*

indefinite.  In an initial exchange of proposed terms for construction, Blackhawk proposed the phrase "determining criteria for authorizing terminals to request transactions for the stored value card" as being indefinite.  InComm responded, without proposing a construction, by stating that the phrase was "fully supported in the specification as comprising the step of determining which terminals are authorized to request transactions for a stored value card" in exemplary embodiments "for determining how a terminal can be authorized for stored value card transactions" as described in column 5, line 47 to column 6, line 20 of the '439 Patent.[166] InComm's citation to the record fails to correct the essential problem here, namely that there is no objective standard by which the public can understand the bounds of this claim limitation.

### A.    The Standard of Law for Indefiniteness

A patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."[167] Because patent claims define the scope of the patentee's right to exclude, "the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent."[168]  A claim is indefinite "only if it is 'insolubly ambiguous, and no narrowing construction can be adopted.'"[169]  Even if the definition of a claim term "can be reduced to

---

[166] Fisch Decl., Ex. R, March 10, 2011 Letter from R. McGrath to C. Stewart regarding Claim Construction at 4.

[167] 35 U.S.C. § 112, ¶ 2.

[168] *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

[169] *Purechoice, Inc. v. Honeywell Int'l, Inc.*, 333 Fed. Appx. 544, 548 (Fed. Cir. 2009) (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).

words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope."[170]

In determining the scope of the claims, "[t]he scope of the claim language cannot depend solely on unrestrained, subjective opinion of a particular individual purportedly practicing the invention."[171]  Some objective standard "must be provided in order to allow the public to determine the scope of the claimed invention."[172]

When evaluating an allegation of indefiniteness, "general principles of claim construction apply."[173]  The courts consult the written description for guidance in determining the scope of the claim "'[w]hen the claim language itself lacks sufficient clarity to ascertain the scope of the' claims."[174]  In looking at the written description, the court "must determine whether the patent's specification supplies some standard for measuring the scope of the phrase."[175]

> **B.    The claims do not provide a definition for "determining criteria for authorizing terminals to request transactions for the stored value card."**

Claim 5 reads as follows: "A computer-implemented method according to claim 3 further comprising the actions of: *determining criteria* for authorizing terminals to request transactions for the stored value card; and assembling the set of authorized terminal identifiers based on the

---

[170] *Halliburton*, 514 F.3d at 1251.

[171] *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

[172] *Id*.

[173] *Id*. at 1348.

[174] *Id*. at 1351 (quoting *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003)).

[175] *Datamize*, 417 F.3d at 1351 (emphasis added).

criteria for authorizing."[176]  Similarly, claim 23 reads as follows: "A computer program according to claim 21 wherein the set of actions further comprises: *determining criteria* for authorizing terminals to request transactions for the stored value card; and assembling the set of authorized terminal identifiers based on the criteria for authorizing."[177]  Dependent claims 5 and 23 include the first mention of "determining criteria for authorizing terminals to request transactions for the stored value card," as no parent claims recite such a step.  For this reason, the claims do not assist in defining "determining criteria for authorizing terminals to request transactions for the stored value card."

However, independent claims 1 and 19, to which claims 5 and 23 depend, do recite the step of "*determining* if the requesting terminal is authorized to request the requested transaction type for the stored value card."[178]  In claims 1 and 19, the central processor makes a binary determination between: (1) yes, the terminal is authorized to request the requested transaction type for the stored value card; or (2) no, the terminal is not authorized to request the requested transaction type for the stored value card.  However, with respect to claims 5 and 23, "*determining* criteria for authorizing terminals to request transactions for the stored value card" appears to require the central processor to do more than make a binary or yes-or-no determination.  For claims 5 and 23, the central processor is required to perform an evaluation to generate the specific "criteria for authorizing terminals to request transactions for the stored

---

[176] Fisch Decl., Ex. A, '439 Patent at claim 5 (emphasis added).

[177] *Id*. at claim 23 (emphasis added).

[178] *Id*. at claims 1 and 19 (emphasis added).

value card."[179]  However, the claims provide no instruction or guidance regarding that evaluation.

      **C.**      **The specification fails to provide any support for "determining criteria for authorizing terminals to request transactions for the stored value card."**

There are no explicit recitations of the "determining criteria" step in the specification of the '439 Patent.  In addition, nothing in the specification discloses the central processor performing an evaluation to generate the "criteria for authorizing terminals to request transactions for the stored value card."  The specification does not disclose the central processor taking into account and evaluating different factors such as merchant, location, and other properties in order to generate the "criteria for authorizing terminals to request transactions for the stored value card."

Even the portions of the specification cited by InComm (column 5, line 47 to column 6, line 20) fail to provide any support for a plain meaning construction of "determining criteria for authorizing terminals to request transactions for the stored value card."  The '439 Patent, in column 5, lines 47-65, describes a first exemplary scenario where "the card merchant **2** may be authorized for activation, deactivation and recharge of stored-value cards provided to the card merchant **2** by a distributor."[180]  This scenario discloses a central processor that maintains the authorization levels and authorizes transactions from those properly authorized and associated terminals,[181] but this takes place after the "determining criteria" step recited in claims 5 and 23 has occurred.

---

[179] *Id*. at claims 5 and 23.

[180] *Id*. at 5:48-50.

[181] *Id*. at 5:51-60.

The second exemplary scenario identified by InComm explained in column 5, line 66 to column 6, line 3 merely states that a merchant is "authorized for redemption only" and that any redemption requests received would be denied.[182]  Nowhere in this description is there any "determining criteria for authorizing terminals," because, again, the second exemplary scenario takes place after the "determining criteria" step has occurred.

A third exemplary scenario identified by InComm in column 6, lines 4-20 of the '439 Patent describes a data management system with multiple terminals associated with a particular merchant, such that "terminal **112***b* of the second merchant **103** may be substantially identical to terminal **112***a* of the first merchant **102** with the exception of its unique identifier."[183]  Nothing within this section discloses a "determining criteria" step.

The specification, including those sections cited by InComm, does not provide support for "determining criteria for authorizing terminals to request transactions for the stored value card."  Further, without information in the patent and prosecution history regarding how to accomplish the "determining criteria" step, it is not possible to discern the meaning of "determining criteria."[184]  As a result, the specification fails to provide a "standard for measuring the scope" of the claims.[185]

---

[182] *Id*. at 5:66-6:3.

[183] *Id*. at 6:4-20.

[184] *See Microstrategy Inc. v. Bus. Objects Ams.*, 238 Fed. Appx. 605, 609 (Fed. Cir. 2007) ("[W]ithout some information in the patent or its prosecution history about the way in which the retrieved information is being used, or for what purpose it is being used, we are unable to discern what that meaning is.").

[185] *Datamize*, 417 F.3d at 1351 ("'When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree.' . . .  Similarly, when faced with a purely subjective phrase like 'aesthetically pleasing,' a court must determine whether the patent's specification supplies some standard for measuring the

**D.     The prosecution history fails to provide any support for "determining criteria for authorizing terminals to request transactions for the stored value card."**

The prosecution history fails to provide any support for the recited step of "determining criteria for authorizing terminals to request transactions for the stored value card" because claims 5 and 23 in the originally filed application issued without any amendments and any specific discussion on the merits of claims 5 and 23.

For the reasons stated above, the intrinsic record of the claims, the specification, and the prosecution history do not provide any support for "determining criteria for authorizing terminals to request transactions for the stored value card," rendering claims 5 and 23 "insolubly ambiguous" as there exists no way to inform the public of the bounds of the patent.[186]  As a result, Blackhawk respectfully request that the Court find the phrase "determining criteria for authorizing terminals to request transactions for the stored value card" indefinite.  Thus, Blackhawk respectfully requests construction and a hearing on the phrase "determining criteria for authorizing terminals to request transactions for the stored value card."

## CONCLUSION

Blackhawk's proposed constructions find full support in the intrinsic evidence.  In fact, Blackhawk relies upon no extrinsic evidence to support its proposed constructions.  Moreover, Blackhawk's proposed constructions provide meanings that will be accessible to a jury, and

---

scope of the phrase.") (quoting *Seattle Box Co. v. Industrial Crate & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984)).

[186] *Purechoice*, 333 Fed. Appx. at 548 ("A claim will be found indefinite only if it is 'insolubly ambiguous, and no narrowing construction can properly be adopted."); *Datamize*, 417 F.3d at 1347 ("[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude.").

properly define the scope of the '439 Patent and the '926 Patent.  Blackhawk thus respectfully requests that the Court adopt its proposed constructions.

Blackhawk respectfully requests a claim construction hearing for the terms and phrases listed above for the '439 Patent and the '926 Patent.  Issues surrounding the "determining" steps and what elements are required for each "determining" step as well as prosecution history statements in the '439 Patent and the '926 Patent are complex and warrant oral argument.

DATED:          March 24, 2011

                                        /s/ Alan M. Fisch
                                        Alan M. Fisch

                                        James D. Peterson
                                        State Bar No. 1022819
                                        Brian J. Cahill
                                        State Bar No. 1055439
                                        GODFREY & KAHN, S.C.
                                        One East Main Street, Suite 500
                                        Post Office Box 2719
                                        Madison, WI 53701-2719
                                        Phone: (608) 257-3911
                                        Fax: (608) 257-0609
                                        Email: jpeterson@gklaw.com
                                                bcahill@gklaw.com


                                        Alan M. Fisch
                                        DC Bar No. 453068
                                        Coke Morgan Stewart
                                        DC Bar No. 461665
                                        Jason F. Hoffman
                                        DC Bar No. 467927
                                        KAYE SCHOLER LLP
                                        The McPherson Building
                                        901 Fifteenth Street, NW
                                        Washington, DC 20005-2327
                                        Phone: (202) 682-3500
                                        Fax: (202) 682-3580
                                        Email:  alan.fisch@kayescholer.com
                                                coke.stewart@kayescholer.com
                                                jason.hoffman@kayescholer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2011, I caused this document to be electronically filed with the Clerk of Court using the ECF system, which will make these documents available to all counsel of record for viewing and downloading from the ECF system.  Also on March 24, 2011, a courtesy copy of this document was served by electronic mail to opposing counsel.


*/s/ Alan M. Fisch*

Alan M. Fisch