IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

E2INTERACTIVE, INC., *et al.*                                      ORDER

                              Plaintiffs,                          09-cv-629-slc

          v.

BLACKHAWK NETWORK, INC.,

                              Defendant.

          In response to a telephonic inquiry regarding trial preparation, I am issuing this order to

clarify for the parties that:

   (1)  This court will show the usual patent video to the jury at the beginning of the trial;

   (2)  This court will use the Seventh Circuit's pattern patent trial jury instructions, copies
        of which are attached;

   (3)  These new procedures (from the court's recently-revised pretrial conference order in
        patent lawsuits) shall apply in this case:

                (a) Each party must accompany its proposed jury instructions and
                verdict questions with a memorandum explaining the reasons for its
                requests and citing its authority for them.  A party objecting to its
                opponent's proposed jury instructions, verdict form or verdict
                questions must submit a memorandum explaining the basis and
                authority for its opposition.  *The parties no longer need to submit copies of
                these submissions to chambers.*

                (b) A party that wishes to obtain daily copy of the trial transcript
                must make arrangements with the court reporters as soon as possible
                but not later than the day of the final pretrial conference or ten
                calendar days before the first day of trial, whichever is earlier.  Failure
                to do so constitutes waiver.

   (4)  Pursuant to this court's December 12, 2011 order on summary judgment, not later
        than January 12, 2012, the parties must jointly submit to the court a chart that lists
        which claims in both patents-in-suit and which products are at issue for trial.

          Entered this 27th day of December, 2011.

                                        BY THE COURT:

                                        /s/

                                        STEPHEN L. CROCKER
                                        Magistrate Judge

# 11. PATENTS

*Preliminary Instructions to Be Given at Outset of Trial*

## 11.1.1 THE PARTIES AND THE NATURE OF THE CASE

This is a patent case. It involves U.S. Patent No[s]. _____, _____, and _____. Patents are often referred to by their last three digits. I will call the patent[s] in this case the _____, _____, and _____ patent[s].

The ___ patent relates to [*briefly describe technology or subject matter involved; repeat as necessary for each patent*]. During the trial, the parties will offer testimony to familiarize you with this [technology; subject matter].

Plaintiff contends that Defendant [infringed; is infringing] the ___ patent by its [making / using / selling / offering for sale / importing] _____. Plaintiff contends that it is entitled to recover damages caused by that infringement. [Plaintiff also contends that Defendant's infringement was willful.]

Defendant [denies that it [infringed; is infringing] the ___ patent] [and] [contends that the ___ patent is invalid].

I will explain these contentions to you later. First, I will give you some background about the U.S. patent system, the parts of a patent, and how a person gets a patent.

### Committee Comment

1. The purpose of the proposed preliminary instructions is to give the jury an overview of the applicable law, rather than a detailed description of the law that the jury ultimately will apply during its deliberations. The trial judge may, if she wishes, use as preliminary instructions the more complete set of applicable instructions contained in Sections 2 through 4.

2. The bracketed section in the second paragraph is intended to include a short descriptive overview of the nature of the patented technology, without getting into the details of that technology.

3. The third paragraph should be tailored to the types of infringement being alleged in the case, e.g., making, using, selling, etc., and can include reference to contributory or inducement infringement if those issues are present.

(2008 ver.)

**11.1.2      THE PATENT SYSTEM**

Patents are issued by the United States Patent and Trademark Office, which is part of our government.

A patent is granted to the inventor for a set period of time, which, in this case, is [20 years from the time the application for the patent was filed] / [17 years from the date the patent issued].

During the term of the patent, if another person makes, uses, offers to sell, or sells in the United States or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent. The patent owner enforces a patent against persons believed to be infringers in a lawsuit in federal court, such as in this case.

The invention covered by a patent is described in the part of the patent that is called the "patent claim" or "patent claims." The patent claims are found in separately-numbered paragraphs at the end of the patent. When I use the word "claim" or "claims," I am referring to those numbered paragraphs.

[To be entitled to patent protection, an invention must be new, useful and non-obvious. A patent is not valid if it covers [a product; a process] that was already known or that was obvious at the time the invention was made. That which was already known at the time of the invention is called "prior art." I will give you more instructions about what constitutes prior art at the end of the case.]

**Committee Comment**

1. The Federal Judicial Center has published, in video format, a video entitled "An Introduction to the Patent System" (Fed. Jud. Center 2002), which the Court may wish to consider displaying to the jury at the outset of the case.

2. The Committee believes that a short introduction to the general nature of the patent system is appropriate because that system is not typically known to most jurors. This description is based primarily on the patent statute.

3. The reference to the length of the patent term found in the second paragraph should be modified depending on the term of the patent(s) at issue.

4. Where bracketed references to "product; process" are found, the court should use the appropriate term depending on the type(s) of patent claim(s) at issue.

190                                    (2008 ver.)

### 11.1.3    HOW A PATENT IS OBTAINED

When an applicant for a patent files a patent application with the Patent and Trademark Office, the application is assigned to a Patent Examiner. The Patent Examiner reviews the application to determine whether or not the invention described in the patent application and set out in the claims meets the requirements of the patent laws for patentable inventions.

The Patent Examiner advises the applicant of his findings in a paper called an "office action." The Examiner may "reject" the claims, that is, refuse to issue a patent containing those claims, if he or she believes the claims do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims, by making changes or amendments to the claims, or by submitting new claims. If the Examiner ultimately determines that the legal requirements for a patent have all been satisfied, he "allows" the claims, and the Patent and Trademark Office issues a patent.

This process, from the filing of the patent application to the issuance of the patent, is called "patent prosecution." The record of papers relating to the patent prosecution is called the prosecution history or file history. The prosecution history becomes available to the public when the patent is issued or the application is published by the PTO (normally 18 months after filing).

**Committee Comment**

This instruction is intended for cases in which the jury will be hearing evidence regarding the prosecution history of the patent and may be eliminated in cases in which there is no such issue.

Read in conjunction with Instructions 1.2 through 1.4, this instruction completes the description of the patent system. Use of these instructions, alone or together with the Federal Judicial Center video referenced in the Committee Comment to Instruction 1.2, could obviate the need for the parties to present "patent experts" to explain the patent system, the importance of claims, the parts of a patent, and the prosecution of patents. These instructions are not, however, intended to preclude, in an appropriate case, expert testimony focused on specific matters concerning, for example, the prosecution history of the patent at issue

(2008 ver.)

## 11.1.4 THE PARTS OF A PATENT

A patent includes two basic parts: a written description of the invention, and the patent claims. The written description, which may include drawings, is often called the "specification" of the patent.

You have been provided with a copy of the ___ patent. Please look at the patent as I identify its different sections. [Other patents are also involved in this case. I am using this particular patent as an example to describe the various parts of a patent.]

The first page of the ___ patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name, the filing date, [the assignee, which is the company or individual that currently owns the patent], and a list of the prior art publications considered in the Patent Office during the time the patent was being sought.

The specification of the patent begins with a brief statement about the subject matter of the invention, which is called an abstract. This is found on the first page.

[Next, are the drawings, which appear as Figures __ to __ on the next __ pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification.]

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the ___ patent begins at column 1, line 1, and continues to column ___, line ___. [It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.]

The written description is followed by one or more numbered paragraphs, which are called the claims. The claims may be divided into a number of [parts or steps], which are called "claim limitations" or "claim requirements." In the patent, the claims begin at column __, line __ and continue to the end of the patent, at column __, line ___.

### Committee Comment

The purpose of this instruction is to give the jurors a brief introduction to the anatomy of a patent document, which will assist them in understanding terminology likely to be used by counsel and witnesses during the course of the trial. This can be best accomplished if the jurors are provided with a copy of the patent or, if multiple patents are involved, one of the patents that is at

(2008 ver.)

issue. If multiple patents are involved, the bracketed sentence at the end of the second paragraph should be used.

(2008 ver.)

## 11.1.5 THE PATENT CLAIMS

The claims of a patent define the invention covered by the patent. [In other words, the claims describe what the patent does and does not cover, somewhat like the way a property deed describes the boundaries of a parcel of land.]

When a [product; process] is accused of infringing a patent, the patent claims must be compared to the accused [product; process] to determine whether infringement has been proven. [The claims are also at issue when the validity of a patent is challenged.] [In reaching your determinations with respect to infringement [and invalidity], you must consider each claim of the patent separately.]

In this case, we are concerned with claims _____ of the _____ patent. Plaintiff contends that Defendant infringed [this; these] claims. . Defendant denies this [and contends that claims _____ are invalid].

The language of patent claims may not be clear to you, or the meaning or the claims may be disputed by the parties. I will tell you what certain words in the patent claims mean. You must use the meanings I give you when you decide whether the patent is infringed [and whether it is invalid].

### Committee Comment

Because the patent claims are the central focus in any patent litigation, it is important for the jury to learn early on that the patent claims are important. This instruction is intended to alert the jury to the purpose of the patent claims and to identify those that are alleged to be infringed.

If the court has construed the claims or limitations in them prior to trial, consideration should be given to utilizing the bracketed sentences in the middle of the final paragraph. That paragraph may be further expanded to provide the court's construction at this point, although to do so would require the court to provide the complete claim language, followed by the construction, to place that construction in context. The Committee believes that the better course is to permit the court's construction to be used by counsel during opening statements, rather than providing the construction in preliminary instruction.

(2008 ver.)

**11.1.6        ISSUES TO BE DECIDED**

I will now give you some information about the law and the issues that will be presented to you at this trial. At the close of the trial, I will give you specific instructions about the law you are to follow as you deliberate to reach your verdict. You must follow the law as I describe it to you.

(2008 ver.)

## 11.1.7      INFRINGEMENT; BURDEN OF PROOF

Plaintiff contends that Defendant [infringes; has infringed; has induced someone else to infringe; has contributed to infringement of] the ___ patent[s]. Defendant denies [this; these] contention[s]. Plaintiff is required to prove infringement by a preponderance of the evidence. This means that Plaintiff must persuade you that its contentions are more probably true than not true. I will describe Plaintiff's contentions regarding the issue of infringement.

(2008 ver.)

**11.1.8      DIRECT INFRINGEMENT**

Plaintiff contends that Defendant infringes claims ___ of the patent by its [use, sale, or offer for sale of product/use of process]. [This is called "direct infringement."]

To establish direct infringement, Plaintiff must prove that every requirement in [the particular claim of Plaintiff's patent that you are considering; Plaintiff's patent] is found in Defendant's [product; process]. A requirement of a claim is found in Defendant's [product; process] if the requirement is in the [product; process] exactly as it is in the claim [or] [if the requirement is in the [product; process] in a manner that is equivalent to what is in the claim. A [part of Defendant's product; step in Defendant's process] is equivalent to a claim requirement if it performs substantially the same function, in substantially the same way, to reach substantially the same result. In my instructions at the end of the case, I will explain in more detail how you make this determination.]

[*Describe specific product/process accused of infringement and which claims are alleged to be infringed.*]

**Committee Comment**

This instruction, and those that follow, are adapted from the "final" instructions on infringement and validity that appear later in these Instructions. They are, for the most part, truncated versions of those instructions intended to provide an introduction to the issues to be presented during the trial.

(2008 ver.)

**11.1.9      INDIRECT INFRINGEMENT**

Plaintiff contends that Defendant induced [someone; *name of alleged direct infringer*] to infringe [claims __, __, __ of] Plaintiff's patent. Plaintiff contends that Defendant induced [someone; *name of alleged direct infringer*] to infringe [claims __, __, __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove that Defendant knew of Plaintiff's patent, [acted; encouraged; instructed] [*insert name or other description of direct infringer*] to [[use / make] a product; perform a process] in a manner that infringed Plaintiff's patent, and knew or should have known that its acts would cause [*insert name or other description of direct infringer*] to infringe Plaintiff's patent.

Plaintiff [also] contends that Defendant contributed to the infringement of [claims ____ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove that Defendant knew of Plaintiff's patent, [sold; supplied] a component that forms a significant part of the patented invention and that is not a commonly available item with other uses. Plaintiff must also prove that another person infringed Plaintiff's patent by using this component and that Defendant knew the component was especially made for a use that would infringe Plaintiff's patent.

**Committee Comment**

The first paragraph of this instruction describes the issues on a claim of inducement to infringe. The second paragraph describes the issues on a claim of contributory infringement.

### 11.1.10      WILLFUL INFRINGEMENT

Plaintiff contends that Defendant infringed Plaintiff's patent willfully. To prove willful infringement, Plaintiff must prove by clear and convincing evidence that Defendant knew it was highly likely that its actions constituted infringement of a valid patent, and defendant either knew of this high likelihood, or it was so apparent that Defendant should have known. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. This is more demanding than the "preponderance of the evidence" requirement that applies to infringement generally.

At the conclusion of the case, I will explain in more detail how you are to decide the issue of willful infringement.

**Committee Comment**

Because the burden of proof for willful infringement differs from that for infringement generally, a separate instruction directed to the higher "clear and convincing evidence" standard should be included in the preliminary instructions.

(2008 ver.)

## 11.1.11    DAMAGES

Plaintiff contends that it has suffered damages as a result of Defendant's infringement in the form of [lost profits that Plaintiff would have made if Defendant had not infringed] [and/or] [a reasonable royalty on each of Defendant's sales of an infringing [product; process]]. I will explain to you at the end of the case [how lost profits are calculated [and/or] how a reasonable royalty is determined].

Plaintiff must prove its damages by a preponderance of the evidence.

### Committee Comment

The court should tailor this preliminary instruction to the theory or theories of damages being advanced. Often a patent holder will seek lost profits damages on some infringing sales and a reasonable royalty on the remainder, thus making the damages proofs, and the related instructions, inherently complex.

This preliminary damages instruction does not address damages flowing from collateral or "convoyed" sales. The committee did not believe it necessary to include a preliminary instruction addressing this type of contention because it would unduly increase the complexity of the preliminary instructions. The matter of such sales can be addressed by counsel in opening statements.

(2008 ver.)

## 11.1.12      INVALIDITY

Defendant contends that claims _____ of the ___ patent(s) are invalid. Only a valid patent may be infringed. Plaintiff denies that these claims are invalid.

The law presumes each claim of the ___ patent(s) to be valid.  For this reason, Defendant has the burden of proving invalidity by clear and convincing evidence. "Clear and convincing" evidence [has the same definition that I just provided to you.] [means evidence that convinces you that it is highly probable that the particular proposition is true. This is a higher burden of proof than "preponderance of the evidence."]

If you find that any one of the requirements for a valid patent is not met for a patent claim, then that claim is invalid. You must consider the issue of validity separately for each claim that is at issue.

I will now explain to you briefly the legal requirements for each of the grounds on which Defendant relies to contend that the patent claims are invalid. I will provide more details for each ground in my final instructions.

### Committee Comment

The bracketing in the second paragraph takes account of the fact that the Court may have already defined "clear and convincing" evidence in a case involving a claim of willful infringement; there is no need to provide the definition twice.

## 11.1.13    INVALIDITY — ANTICIPATION

Defendant contends that the invention covered by claims ___ of the ___ patent is not new because it was "anticipated" by the prior art. "Prior art," in general, includes anything that was publicly known prior to Plaintiff's invention. I will provide you with a more specific definition following the conclusion of the evidence.

To prove that a claim is anticipated by the prior art, Defendant must prove by clear and convincing evidence that each and every requirement of the claim is present in a single item of prior art and that a person with an ordinary level of skill in the field of the invention who looked at the prior art would have been able to make and use the invention disclosed in the claim.

### Committee Comment

As reflected in the final instructions on anticipation, there are a number of grounds upon which a patent claim can be held invalid for anticipation. If the case involves a small number of particularized invalidity issues, the court may wish to consider giving, in lieu of this instruction, an instruction tailored to that particular issue or issues. The final instructions covering the particular issue or issues may be adapted for this purpose.

## 11.1.14      INVALIDITY — OBVIOUSNESS

Defendant contends that claims ___ of the ___ patent are invalid for obviousness. A patent claim is invalid for obviousness if a person with an ordinary level of skill in the field of the invention who knew about all the prior art existing at the time of the invention would have come up with the invention at that time. ["Prior art" in general, includes anything that was publicly known prior to Plaintiff's invention. I will provide you with a more specific definition following the conclusion of the evidence.] [Unlike anticipation, obviousness may be shown by considering more than one item of prior art.]

### Committee Comment

The bracketing of the definition of "prior art" takes account of the fact that the Court may have just defined this term in describing the defense of anticipation.

(2008 ver.)

## 11.1.15   INVALIDITY — WRITTEN DESCRIPTION/CLAIMING REQUIREMENTS

Defendant contends that claims __ of the ___ patent are invalid because the patent does not contain [a written description of the invention/an enabling description of the invention/a description of the best mode of the invention]. To succeed on this contention, Defendant must prove that:

[- The specification section of the patent does not contain an adequate written description of each and every requirement of the particular patent claim that is at issue.]

[- The specification section of the patent does not contain enough information to enable a person of ordinary skill in the field of the invention to make and use the invention without undue experimentation.]

[- The written description of the patent does not describe the "best mode," or best way, to [make; use; carry out] the [product; process] covered by the patent that was known to the inventor at the time he applied for the patent.]

I will explain in more detail at the end of the case how you decide [this; these] issue[s].

### Committee Comment

The Court should use only the instructions for the particular "claim requirement" defenses involved in the particular case.

(2008 ver.)

## 11.1.16      PERSON OF ORDINARY SKILL

In these instructions, I have used the concept of a "person of ordinary skill in the field of the invention." In this case, the field of the invention is [insert]. It will be up to you to decide the level of ordinary skill in that field. I will give you further instructions about this at the end of the case.

(2008 ver.)

*Final Instructions*

*Infringement*

## 11.2.1 THE PATENT SYSTEM

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about those aspects of patent law that specifically relate to this case.

(2008 ver.)

## 11.2.2 PERSON OF ORDINARY SKILL

Some issues in patent cases are determined by reference to a "person of ordinary skill in the field of the invention," a term that I will use later in these instructions. In this case, the field of the invention is [insert].

It is up to you to decide the level of ordinary skill. In making this decision, you should consider all the evidence, including:

- the levels of education and experience of persons working in the field;

- the types of problems encountered in the field; and

- the sophistication of the technology in the field.

### Committee Comment

The level of ordinary skill in the art/field is a prism or lens through which a judge or jury views the prior art and the claimed invention. *See Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Dystar Textilfarben GmbH v. C.H. Patrick Co.,* 464 F.3d 1356, 1360-3 (Fed. Cir. 2006); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000). The list of factors is adapted from N.D. Cal. Patent Jury Instr. 4.3.b.iii.

The level of ordinary skill in the pertinent art is one of the three basic factual inquiries in applying the nonobviousness condition of patentability. It is also the standard for determining the enabling quality of the disclosure in a patent specification or a publication. Generally, the skill is that of a person who would be expected to solve the type of problem in question rather than that of a person who ordinarily uses the product or process. The Committee chose to use the phrase "ordinary skill in the field" rather than the patent law term "ordinary skill in the art," believing that this would be more understandable to lay jurors.

The Committee placed this definition early in the instructions because, in some cases, it may be used several times, for example, in describing the doctrine of equivalents, the written description requirement, etc. In a case in which the term is used only at a later point in the instructions, the trial judge may wish to consider moving the definition so that it is closer to the particular place(s) where the term is used.

(2008 ver.)

### 11.2.3 THE PARTS OF A PATENT

A patent includes two basic parts: a written description of the invention, and the patent claims. The written description, which may include drawings, is often called the "specification" of the patent.

You have been provided with a copy of the ___ patent. Please look at the patent as I identify its different sections. [Other patents are also involved in this case. I am using this particular patent as an example to describe the various parts of a patent.]

The first page of the ___ patent provides identifying information, including the date the patent issued and patent number along the top; the name(s) of the inventor(s), the filing date; [the assignee, which is the company or individual that owned the patent on the date it was issued]; and a list of documents considered in the Patent Office during the time the patent was being sought.

The specification of the patent begins with a brief statement about the subject matter of the invention, which is called an abstract. This is found on the first page.

[Next, are the drawings, which appear as Figures __ to __ on the next __ pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification.]

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the ___ patent begins at column 1, line 1, and continues to column ___, line ___. [It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.]

The written description is followed by one or more numbered paragraphs, which are called the claims.

#### Committee Comment

*See* Preliminary Instruction 1.4.

(2008 ver.)

## 11.2.4 THE PATENT CLAIMS

The claims of a patent are the numbered sentences at the end of the patent. The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into [parts; steps], called "limitations" or "requirements." For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together. The tabletop, legs and glue are each a separate limitation or requirement of the claim.

We are concerned with claims _____ of the _____ patent. Plaintiff contends that Defendant infringed _____ claims. Defendant denies this [and contends that claims ____ are invalid].

To decide whether Defendant infringed the patent, you must compare the claims to [*the accused product; process*]. [Similarly, in deciding a challenge to the validity of a patent, you must compare the claims to the asserted prior art.] [In reaching your determinations with respect to infringement [and invalidity], you must consider each claim of the patent separately.]

### Committee Comment

*See* Preliminary Instruction 1.5.

**11.2.5       INFRINGEMENT: INTERPRETATION OF THE PATENT CLAIMS**

The owner of a patent has the right to prevent others from [making; using; offering for sale; selling; importing] the invention covered by the patent. A [product; process] infringes a patent if that [product; process] is covered by at least one claim of the patent.

I will tell you the meaning of any disputed terminology in the patent claims. You must use the meanings I give you when you decide whether the patent is infringed [and whether it is invalid].

**Committee Comment**

A patent confers the right to exclude others from making, using, selling, or offering for sale the invention within the United States or importing the invention into the United States. 35 U.S.C. §§ 154(a)(1) and 271(a); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-13 (Fed. Cir. 2005) (en banc). The second step is comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

A simple patent case includes two parts: construing the patent claims and determining whether infringement of the construed claims occurred. The first is a question of law, to be determined by the court. The second is a question of fact, to be submitted to a jury. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384 (1996).

(2008 ver.)

**11.2.6        INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, called independent claims and dependent claims. An independent claim stands on its own and does not refer to any other claim of the patent. A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the requirements of the other claim[s] to which it refers, as well as the requirements in the dependent claim itself.

Earlier I described a hypothetical patent claim for a table that described the tabletop, four legs, and glue to hold the legs and tabletop together. That is an example of an independent claim. In that same hypothetical patent, a dependent claim might be one that stated, "the same table in the initial claim, where the tabletop is square."

### Committee Comments

1. A patent claim may be in independent or dependent form. 35 U.S.C. § 112 ¶¶ 3-4 (1984).

2. A dependent claim is narrower in scope than the claim from which it depends. *Glaxo Group Ltd. v. Ranbaxy Pharms., Inc.,* 262 F. 3d 1333, 1336 (Fed. Cir. 2001). A dependent claim incorporates by reference a previous claim and adds a limitation to the invention claimed. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006); *Bloom Eng'g Co. v. North Am. Mfg. Co.,* 129 F.3d 1247, 1250 (Fed. Cir. 1997).

(2008 ver.)

## 11.2.7 MEANS-PLUS-FUNCTION CLAIMS

Some parts of a patent claim describe a "means" of doing something, rather than the physical "structure" that performs the function. These are called "means-plus-function" claims.

For example, let's say that a patent describes a table with legs glued to the tabletop. As I said before, one way to make a patent claim for the table is to describe the tabletop, four legs, and glue between the legs and the tabletop. Another way to make the claim is to describe the tabletop and the legs, but use the phrase a "means for securing the legs to the tabletop" rather than describing the glue. This would be a "means-plus-function" requirement. In other words, it describes a "means" for performing the "function" of securing the legs to the tabletop, rather than expressly describing the glue.

A means-plus-function requirement also covers structures that are equivalent to those described in the patent, such as using an equivalent to glue to secure the legs to the tabletop.

Claims ___ of the ___ patent include means-plus-function requirements. In instructing you about the meaning of a means-plus-function claim requirement, I will tell you, first, the function that each of the means-plus-function claim requirements performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus-function requirement.

### Committee Comments

1. A claim element may be expressed as a means for performing a function. 35 U.S.C. §112, ¶ 6. As long as the patent discloses a specific corresponding structure(s), the patentee may define a structure for performing a certain function generically by way of a means expression. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).

2. The question of whether there is infringement of a claim with a 112, ¶ 6 limitation is a question of fact. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328-29 (Fed. Cir. 2003) ("infringement of a 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification").

(2008 ver.)

**11.2.8 "COMPRISING" / "CONSISTING OF" / "CONSISTING ESSENTIALLY OF"**

[When a patent claim uses the term "comprising," it means that the invention includes the listed requirements, but is not limited to those requirements.]

[When a patent claim uses the term "consisting of," it means that the invention includes the listed requirements, and only those requirements.]

[When patent claim uses the words "consisting essentially of," it means that a [product; process] containing [structures; steps] beyond those described in the claim is covered only if those additional [structures; steps] do not have a significant effect on the basic and novel characteristics of the invention.]

### Committee Comments

1.   This instruction may be incorporated into the claim-definitional portion of the infringement instruction, where appropriate.

2.   "Comprising." *Vehicular Techs. Corp.* v. *Titan Wheel Int'l, Inc.,* 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005); *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004).

3.   "Consisting of." *Vehicular Techs. Corp.* v. *Titan Wheel Int'l,* 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331 (Fed. Cir. 2004); *Conoco, Inc. v. Energy & Envt'l. Int'l, L.C. ,* 460 F.3d 1349, 1359 (Fed. Cir. 2006).

4.   "Consisting essentially of." *PPG Indus. v. Guardian Indus. Corp.,* 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); *W.E. Hall Co. v. Atlanta Corrugating, LLC,* 370 F.3d 1343, 1353 (Fed. Cir. 2004).

(2008 ver.)

**11.2.9      INTERPRETATION OF THE PATENT CLAIMS**

I [have provided you; will provide you] with a copy of Plaintiff's patent. I have previously defined certain [words; phrases] in [some of] the claims. You must use these definitions in making your decision. The [words; phrases] I have defined are as follows:

(list claim terms and definition from claim construction by the Court or stipulations by the parties)

(2008 ver.)

## 11.2.10      DIRECT INFRINGEMENT — ELEMENTS

Plaintiff contends that Defendant has infringed [claims __, __, and __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove the following by a preponderance of the evidence:

    1. Every requirement in [the particular claim of Plaintiff's patent that you are considering; Plaintiff's patent] is found in Defendant's [product; process]; and

    2. Defendant [made, used, sold, offered for sale, or imported] that [product; process] [in; into] the United States.

### Committee Comments

1. *Usage.* A finding of infringement requires a showing that the accused infringer committed a prohibited act of the type described in element 2. No instruction need be given on these prohibited acts if there is no dispute that such an act has occurred directly or indirectly. 35 U.S.C. § 271.

2. *Authority.* First element: *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1308 (Fed. Cir. 2002); *Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 429 F.3d 1364, 1376 (Fed. Cir. 2005); *PSC Computer Prods., Inc. v. Foxconn Int'l,* 355 F.3d 1353, 1357 (Fed. Cir. 2004); *Cross Med. Prods. v. Medtronic,* 424 F.3d 1293, 1310 (Fed. Cir. 2005). Second element: 35 U.S.C. § 271(a).

(2008 ver.)

## 11.2.11.1   INFRINGEMENT — DEFINITION

As I stated in the previous instruction, infringement occurs if each requirement of a claim is found in Defendant's [product; process]. As I have explained, Plaintiff contends that Defendant infringed [claims __, __, and __] of Plaintiff's patent. To determine whether Defendant infringed Plaintiff's patent, you must compare Defendant's [product; process] against each one of these claims.

To determine whether a dependent claim has been infringed, you must compare Defendant's [product; process] to both the dependent claim and the claim[s] it/they refer[s] to. For example, if claim 2 is dependent from claim 1, it may say, "2. The [product; process] according to claim 1, wherein . . . ." In this situation, dependent claim 2 cannot be infringed unless claim 1 is also infringed. For this reason, in the example you would have to compare Defendant's [product; process] to all the requirements of both claims 1 and 2.

A requirement of a claim is found in Defendant's [product; process] if the requirement is in the [product; process] exactly as it is in the claim [or] [if the requirement is in the [product; process] in a manner that is equivalent to what is in the claim.

[If all of the requirements of the claim are in Defendant's [product; process] exactly as they are in the claim, that is called "literal infringement."]

[If all of the requirements of the claim are in Defendant's [product; process], but one or more of them is equivalent to what is in the claim, that is called "infringement by equivalence."]

[The following claim requirements must be met literally; infringement by equivalence does not apply to these requirements: (*list claim terms that must be met literally, and definition from claim construction by the Court or stipulations by the parties*)]

### Committee Comments

1. This instruction sets forth the basic test for direct infringement. It is adaptable to cases involving claims of literal infringement, infringement by way of the doctrine of equivalents, or both.

2. The Committee used the term "infringement by equivalence" rather than the term "doctrine of equivalents" believing that the former would be easier for lay jurors to understand.

3. The final bracketed paragraph of the instruction applies in cases in which the court has determined that the doctrine of equivalents does not apply to a particular claim element due to prosecution history estoppel. This is an issue to be decided by the court and should be done before

giving the jury its instructions. *See generally Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co., v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). In *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (*en banc*), the Federal Circuit held that the court, not the jury, will decide whether a presumed estoppel is rebutted ("We agree . . . that rebuttal of the presumption of surrender is a question of law to be determined by the court, not a jury.").

217                                    (2008 ver.)

**11.2.11.2   INFRINGEMENT — DOCTRINE OF EQUIVALENTS**

A [part of Defendant's product; step in Defendant's process] is equivalent to a claim requirement if a person of ordinary skill in the field of the invention would regard any differences between them as insubstantial.

[[A [part; step] is also equivalent to a claim requirement if it performs substantially the same function, in substantially the same way, to reach substantially the same result.] ] [One factor you may consider in making that determination is whether a person of ordinary skill in the field of the invention would have regarded Defendant's [part; step] to be interchangeable with the claim requirement.]]

In determining infringement by equivalence, you must still use the meanings for the claim requirements that I have provided.

### Committee Comments

1. *Insubstantial differences: Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997); *Honeywell Int'l. Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (*en banc*); *Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1312 (Fed. Cir. 2004); *Chiuminatta Concrete Concepts v. Cardinal Inds.*, 145 F.3d 1303 (Fed.Cir. 1988).

2. *Function / way / result test: Machine Co. v. Murphy*, 97 U.S. 120, 124 (1878); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*); *SRI Int'l v. Matsushita Electric Corp., of America*, 775 F.2d 1107, 1123 (Fed. Cir. 1985) (*en banc*).

3. *Interchangeability: Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *All-Site Corp. v. VSI Int.*, 174 F.3d 1308, 1316 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Inds.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998); *Overhead Door Corp. v. Chamberlain Group*, 52 U.S.P.Q. 1321, 1327 (Fed. Cir. 1999).

4. The Committee chose to use the phrase "a person of ordinary skill in the field" rather than the patent law term "a person of ordinary skill in the art," believing the former term would be more understandable to lay jurors.

5. *Prior art limitation on infringement by equivalents:* In a case that involves a prior art limitation on infringement by equivalents, the court may consider adding a paragraph based on the following language:

(2008 ver.)

You may not find that Defendant's [product; process] is equivalent to a claim requirement if the result would be that the equivalents become so broad that the claim would cover a [product; process] that was disclosed in the prior art.

*See Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co*, 204 F.3d 1360, 1364-65 (Fed. Cir. 2000) ("Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in scope to *literally* encompass the accused product or process. *** if that claim would not have been allowed, the prior art bars application of the doctrine and infringement by equivalence may not be found."); *Marquip, Inc. v. Fosber America, Inc.*, 198 F.3d 1363, 1367 (Fed Cir. 1999) (this court has consistently limited the doctrine of equivalents to prevent its application to ensnare prior art"); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) (doctrine of equivalents "cannot be used to protect subject matter in, or obvious in light of, the prior art."); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) ("there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art."); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 n.1 (Fed. Cir. 1987) (*en banc*) ("The doctrine of equivalents is limited in that the doctrine will not extend Y to cover an accused device in the prior art ..."); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985) ("First, the doctrine will not extend to an infringing device within the public domain, i.e., found in the prior art at the time the patent issued"); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984) (no infringement despite equivalence if "the equivalent device is within the public domain, i.e., found in the prior art.")

    6. *Limitation on infringement by equivalence.* The doctrine of equivalents cannot be used to extend patent coverage to structures or processes that are described in the patent specification but not mentioned in the patent claims, or to erase or ignore meaningful structural and functional limitations of a patent claim. *See Johnson & Johnston Associates v. R. E. Service Co.,* 285 F.3d 1046, 1054 (Fed. Cir. 2002) (*en banc*). In an appropriate case, it may be necessary to revise the pattern instruction to cover this point.

**11.2.11.3     INFRINGEMENT — MEANS-PLUS-FUNCTION CLAIM LANGUAGE**

Claim[s] _____ in Plaintiff's patent contain[s] [a] requirement[s] that [is; are] written in a particular form, called "means plus function" form.  Specifically, claim ___ contains the following "mans plus function" language: [*fill in*]

You must use the definition[s] I have previously given you regarding [this part; these parts] of the claim.

Plaintiff must prove that the entire claim is infringed.  The "means plus function" language is only part of the entire claim.  The paragraphs numbered 1 and 2 below concern only the "means plus function" part[s] of the claim.  You must use the other rules that I have already given you for the other parts of the claim.

As with the other claim requirements, Plaintiff must prove that the "means plus function" claim requirement[s] [is; are] met literally, or by equivalence.  The rules for determining whether [this; these] claim requirement[s] [is; are] met by equivalence are the same as the ones I have already given you.

In determining whether "means plus function" claim requirement[s] [is; are] met literally, different rules apply than the ones I gave you earlier.  Specifically, to prove that the "means plus function" claim requirement[s] [is; are] met literally, Plaintiff must prove the following [as to each "means plus function" claim requirement]:

    1.  Defendant's product includes structure that performs the identical function in this claim requirement, as I defined the function for you [on page ___ of these instructions] [earlier, namely (recite the function)]; and

    2.  That structure is the same as, or equivalent to, the structure in this claim requirement, as I identified it for you [on page __ of these instructions] [earlier, namely (recite the corresponding structure)].

For purposes of this instruction, two structures are "equivalent" if they are substantially the same. [One way structures may be substantially the same is if they achieve substantially the same result in substantially the same way. [Another way is if the differences between them are not substantially different.]] You should make this determination from the point of view of a person with ordinary skill in the field of the invention.

(2008 ver.)

## Committee Comments

1. Need for identical function plus same or equivalent structure for literal infringement: *Ishida Co., v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000) (identical function); *Chiuminatta Concrete Concepts v. Cardinal Inds., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1988), *citing Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*); *Caterpillar v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed. Cir. 2000); *Chiuminatta Concrete Concepts v. Cardinal Inds., Inc.,* 145 F.3d 1303, 1309 (Fed. Cir. 1988); *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267 (Fed. Cir. 1999).

2. If a structure that predates the invention itself is not equivalent under § 112, ¶ 6, it cannot be equivalent under the doctrine of equivalents. *See Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 n.2 (Fed. Cir. 1999), citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Inds., Inc.*, 145 F.3d 1303 (Fed. Cir. 1998).

3. A literal equivalent under § 112, ¶ 6 must have been available at time of patent issuance, and use of after-arising technology infringes, if at all, under the doctrine of equivalents. *Al-Site*, 174 F.3d at 1320-21, citing *Warner-Jenkinson Co. v. Hilton-Davis Chemical Co.,* 520 U.S. 17, 29, (1997); cf. *Ishida Co, Ltd. v. Taylor*, 221 F.3d 1310, 1317 (Fed. Cir. 2000).

(2008 ver.)

## 11.2.11.4   DETERMINING INFRINGEMENT

You must decide whether there is infringement separately for each claim. [There is one exception to this rule. If you decide that an independent claim is *not* infringed, then there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.]

### Committee Comments

1. *Comparing product / process with each claim. See Johnson & Johnston Assocs., Inc. v. R.E. Svc. Co.,* 285 F.3d 1046, 1052 (Fed. Cir. 2002) (*en banc*); *Caterpillar Inc v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed. Cir. 2000) (compare properly construed claim with accused device or method); *Cook Biotech Inc. v. Acell, Inc.,* 460 F.3d 1365, 1373 (Fed. Cir. 2006) (same); *Lava Trading v. Sonic Trading Management, LLC.,* 445 F.3d 1348, 1352 (Fed. Cir. 2006) (same).

2. *Exception to separate consideration for each claim:* 35 U.S.C. § 112, ¶ 4 (a dependent claim includes all of the limitations of the claim to which it refers); *Kim v. ConAgra Foods, Inc.,* 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed); *Oak Technology, Inc. v. ITC,* 248 F.3d 1316, 1323, n.4 (Fed. Cir. 2001) (same).

(2008 ver.)

**11.2.12     INDIRECT INFRINGEMENT — INDUCEMENT**

Plaintiff contends that Defendant induced [someone; *name of alleged direct infringer*] to infringe [claims __, __, __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove the following by a preponderance of the evidence:

      1. Defendant knew of Plaintiff's patent.

      2. Defendant [acted; encouraged; instructed] [*insert name or other description of direct infringer*] to [[use / make] a product; perform a process] in a manner that directly infringed Plaintiff's patent, as defined in other instructions that I have given you.

      3. Defendant knew or should have known that its acts would cause [*insert name or other description of direct infringer*] to infringe Plaintiff's patent.

<strong>Committee Comments</strong>

1. *Knowledge of plaintiff's patent: Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990). This instruction may require modification if the plaintiff claims that the defendant has constructive, as opposed to actual, knowledge of the patent. *See, e.g., Insituform Techs., Inc. v. CAT Contr. Inc.,* 161 F.3d 688, 695 (Fed. Cir. 1998) ("[T]he inducer must have actual or constructive knowledge of the patent."); *see DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1311 (Dec. 13, 2006) (Michel, C.J., concurring) (citing *Insituform* for "constructive knowledge" proposition).

2. *Encouragement / instruction: Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990).

3. *Intent to cause infringement:* In *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 n.4 (Fed. Cir. 2005), the Federal Circuit acknowledged a "lack of clarity" regarding whether a party claiming inducement to infringe must show intention to cause infringement or rather can prove its case by showing intent to induce the acts constituting infringement. The court resolved the issue *en banc* in *DSU Medical Corp v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006), holding that "the infringer must have an affirmative intent to cause direct infringement ... inducement requires 'that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements.'" *Id.* at 1306 (quoting *MEMC Elec.*, 420 F.3d at 1378).

4. *Direct infringement by someone is required: Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 n.7 (Fed. Cir. 1988).

(2008 ver.)

**11.2.13      INDIRECT INFRINGEMENT — CONTRIBUTORY INFRINGEMENT**

Plaintiff contends that Defendant contributed to the infringement of [claims __, __, __ of] Plaintiff's patent. To succeed on this contention, Plaintiff must prove the following by a preponderance of the evidence:

> 1.  Defendant knew of Plaintiff's patent.

> 2.  Defendant [sold; supplied] a component that forms a significant part of the invention described in a claim in Plaintiff's patent.

> 3.  [Another person; *insert name*] infringed Plaintiff's patent by using this component.

> 4.  Defendant knew the component was especially made or adapted for a use that would infringe Plaintiff's patent.

> 5.  The component was not a commonly available item or a product with substantial non-infringing uses.

**Committee Comments**

1.  *Knowledge of plaintiff's patent: Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

2.  *Supplied an important or material part*: 35 U.S.C. § 271 I; *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 483 (1964). The term "significant" is used in place of the statutory term "material," as "significant" effectively is the definition of materiality. By using the definition, one avoids the need to use the term "material" and then define it.

3.  *Direct infringement by another: Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42 (1961); *Nordberg Mfg. v. Jackson Vibrators, Inc.*, 153 U.S.P.Q. 777, 783 (N.D. Ill. 1967) (would infringe).

4.  *Knowledge that some other person would use this component to infringe: Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 483 (1964).

5.  *Not a commonly available item*: 35 U.S.C. § 271(c) ("not a staple article"); *Dawson Chem. Co. v. Rohm & Haas Co.* , 448 U.S. 176, 200 (1980) ("In essence, this provision places materials like the dry ice of the Carbice case outside of the scope of the contributing infringement doctrine."). *Or a product with substantial noninfringing uses:* 35 U.S.C. § 271(c); *Alloc, Inc. v. Int'l Trade Comm'n* 342 F.3d 1361, 1374 (Fed. Cir. 2003) (affirming determination of no contributory infringement: "The record showed that the accused flooring products could be installed by methods

not claimed in the '267 and '907 patents. . . . For instance, the installation instructions for Unilin's floor product are a noninfringing 'snap-snap' method. . . . Akzenta's published PCT application also discloses noninfringing methods of installing its floor products."). The Committee chose to use the words "not a commonly available item" in lieu of the statutory language for ease of jury understanding.

## 11.2.14     WILLFUL INFRINGEMENT

Plaintiff contends that Defendant infringed Plaintiff's patent willfully. You are required to decide this issue because it may be relevant to other issues that I may have to consider.

You are to consider the issue of willful infringement only if you have found that Defendant infringed Plaintiff's patent. Not all infringement is willful.

The standard of proof for willful infringement is higher than the standard for infringement generally. Specifically, Plaintiff must prove willful infringement by clear and convincing evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. [You also may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt," which is a higher burden of proof than "clear and convincing" evidence. You should not apply the criminal standard in this case.]

To succeed on its contention that Defendant infringed the patent willfully, Plaintiff must prove two things by clear and convincing evidence:

1.    There was a high likelihood that Defendant's actions constituted infringement of a valid patent. In making this determination, you may not consider Defendant's actual state of mind. [You may consider the normal standards of fair commerce.]

2. Defendant knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that Defendant should have known of it.

### Committee Comment

*See In re Seagate Technology, LLC.,* 497 F.3d 1360, 1370-72 (Fed. Cir.2007) (*en banc*) (standard for willfulness; reaffirming requirement of clear and convincing evidence). *See also, Read Corp. v. Portec, Inc.,* 970 F.2d 816, 829 (Fed. Cir. 1992) (clear and convincing evidence required); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990) (same). The Committee notes that because *Seagate* is new, its requirements have not yet been applied extensively, and that the Federal Circuit expressly left for further determination how the new standard for willfulness should be applied in practice.

The Committee has defined willful infringement solely in terms of what is commonly called recklessness, as discussed in *Seagate.* In some cases, there may be a legitimate argument that the defendant acted with actual knowledge, rather than in a reckless fashion. The Committee believes that the instruction is broad enough to encompass such cases but leaves it to the trial judge to

(2008 ver.)

determine whether, in a particular case, an "actual knowledge" instruction should be given in addition to the definition of recklessness.

Some other pattern jury instructions provide lists of non-exclusive factors for the jury to consider in determining willfulness. *See, e.g.,* Fed. Cir. Bar Ass'n Instruction 3.8. The Committee declined to include such a list, for several reasons: the factors are better left to attorney argument, leaving it to the jury to weigh them against the standard for willfulness; providing a non-exclusive list might mislead a jury to believe that other factors should not be considered; and the law of willful infringement post-*Seagate* remains somewhat in a state of flux. The Committee will revisit the point in future versions of these instructions.

(2008 ver.)

*Invalidity*

## 11.3.1 VALIDITY — GENERAL

Defendant has challenged the validity of the ___ patent(s) claim(s) on [state the grounds].

Each of the claims of the ___ patent(s) is presumed to be valid. For that reason, Defendant has the burden of proving invalidity by clear and convincing evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. [You also may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt," which is a higher burden of proof than "clear and convincing" evidence. You must not apply the criminal standard in this case.]

You must evaluate and determine separately the validity of each claim of the patent(s).

### Committee Comment

1.   The invalidity of the patent or any asserted claim, for failure to comply with any requirement of 35 U.S.C. §§ 101, 102, 103, 112, or 251, is a defense to alleged infringement. *See* 35 U.S.C. §§ 101, 102, 103, 112, 251, & 282; *Graham v. John Deere,* 383 U.S. 1 (1965) (patentability, and thus validity, is dependent upon three explicit conditions: novelty, utility, and nonobviousness).

2.   Patents are entitled to a presumption of validity. 35 U.S.C. § 282; *Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983). The presumption of validity is a procedural device. It "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." FED. R. EVID. 301; *DMI*, 802 F.2d at 427. As the Federal Circuit has recognized, "the presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence." *Avia Group*, 853 F.2d at 1562.

(2008 ver.)

## 11.3.2 INVALIDITY — SPECIFICATION REQUIREMENTS

The patent law contains certain requirements for a patent specification. Defendant contends that claim(s) ___ of the ___ patent [is/are] invalid because the specification fails to satisfy the law's [written description,] [enablement,] [and/or] [best mode] requirements.

If you find that Defendant has proved by clear and convincing evidence that any one of these requirements is not met for an asserted claim, then that claim is invalid. I will now explain to you in detail the specification requirement[s] that Defendant says makes the patent claims invalid.

### Committee Comment

"The specification of a patent must contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out the invention." 35 U.S.C. § 112, ¶ 1.

229                                    (2008 ver.)

## 11.3.2.1    SPECIFICATION REQUIREMENTS — WRITTEN DESCRIPTION

The law requires that the "specification" section of the patent contain an adequate written description of the invention(s) in the patent claim(s).

Defendant contends that claim(s) ___ of Plaintiff's patent [is/are] invalid because it does not contain an adequate written description. To succeed on this contention, Defendant must prove by clear and convincing evidence that a person of ordinary skill in the field of the invention would not recognize that the specification describes all the requirements of the claim. The specification does not have to use the exact words found in the claim.

If Defendant proves this as to a particular claim, then you should find that claim invalid.

### Committee Comment

1. A patent's specification must include an adequate written description; however, it need not include the exact words of the claims. *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.,* 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). *See also Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001); *Reiffin v. Microsoft Corp.,* 214 F.3d 1342, 1345-46 (Fed. Cir. 2000) (the description must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed).

2. Lack of adequate written description must be proven by clear and convincing evidence. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004).

3. If priority is at issue, the term "patent" may need to be changed to "patent application as originally filed." *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1330 (Fed. Cir. 2003) (one of the roles of the written description requirement is to ensure that patent claims are not amended to claim subject matter different from what was described in the patent application on the date of its filing).

(2008 ver.)

**11.3.2.2     SPECIFICATION REQUIREMENTS — ENABLEMENT**

The law requires that the "specification" section of the patent contain enough information to enable a person of ordinary skill in the field of the invention to make and use the invention, without an unreasonable amount of experimentation. A patent does not have to state information that persons of ordinary skill in the field would be likely to know or could obtain without undue effort.

Defendant contends that claim(s) ___ of Plaintiff's patent [is/are] invalid because it fails to meet this requirement. To succeed on this contention, [Defendant] must prove by clear and convincing evidence that the specification does not enable a person of ordinary skill in the field of the invention to make and use a [product; process] covered by claim ___, without an unreasonable amount of experimentation. Whether the amount of experimentation is unreasonable depends on the complexity of the field of the invention and the level of expertise and knowledge of persons of ordinary skill in that field.

If Defendant proves this as to a particular claim by clear and convincing evidence, you should find that claim invalid.

**Committee Comment**

1.  To be enabling, the specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. *See* 35 U.S.C. § 112; *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1384 (Fed. Cir. 1986) (a patent need not teach what is well known in the art).

2.  A court may consider a number of factors when determining if an unreasonable amount of experimentation is required to practice the claimed invention. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1369-78 (Fed. Cir. 1999); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir. 1999). Lack of enablement must be proven by clear and convincing evidence. *Ralston Purina Co. v. Far-Mar Co.*, 772 F.2d 1570, 1573-74 (Fed. Cir. 1985); *White Consolidated Indus., Inc. v. Vega Servo Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983).

3.  The following factors have been set forth as relevant to the issue of reasonable experimentation: how much experimentation is necessary; how much direction or guidance the patent provides; whether the patent contains working examples; the simplicity or complexity of the invention; what is disclosed by the prior art; the level of skill possessed by those in the field; the predictability of the art; and the breadth of the claims. *Enzo,* 188 F.3d at 1371; *see also, In re Wands,* 858 F.2d 731, 737 (Fed. Cir. 1988) (setting out factors to consider in determining if the patent's teachings require an unreasonable amount of experimentation). The Committee does not

(2008 ver.)

recommend including these factors in the instruction, though a judge may consider doing so in a particular case.

(2008 ver.)

### 11.3.2.3    SPECIFICATION REQUIREMENTS — BEST MODE

The law requires that if an inventor believed, at the time he applied for the patent, that there was a "best mode," or best way, to [make; use; carry out] the [product; process] covered by the patent, he had to disclose it in the patent. The inventor also may disclose other modes, and he need not state which of the modes he discloses in the patent is the best.

Defendant contends that claim(s) ___ of Plaintiff's patent [is/are] invalid for failure to satisfy the "best mode" requirement.  If you find by clear and convincing evidence that Defendant has proved this [as to a particular claim], you should find that claim invalid.

**Committee Comment**

A holding of invalidity for failure to disclose the best mode requires clear and convincing evidence that the inventor both knew of and concealed a better mode of carrying out the claimed invention than that set forth in the specification, although he need not state which of the modes is the best. *See* 35 U.S.C. § 112, ¶ 1; *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002); *Mentor H/S Inc., v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Amgen, Inc. v. Chugai Pharm. Co.,* 927 F.2d 1200, 1209-10 (Fed. Cir. 1991).

(2008 ver.)

**11.3.2.4**      **SPECIFICATION REQUIREMENTS — INDEFINITENESS**

### Committee Comment

      The Committee did not include a jury instruction regarding indefiniteness because the Federal Circuit recently made it clear that invalidity due to indefiniteness is a question of law to be determined by the court. *See Aero Prods. Int'l Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1015-16 (Fed. Cir. 2006).

(2008 ver.)

### 11.3.3 SECTION 102 AND 103 DEFENSES — DEFINITION OF "PRIOR ART"

In addressing some of Defendant's invalidity defenses, you will have to consider what is disclosed in the "prior art."

[The parties agree that the following [items; processes; references] are prior art: [*list uncontested prior art*].

[The parties dispute that other [items; processes; references] are prior art.]

Before you may consider any disputed [item; process; reference] to be prior art [for purposes of Defendant's defense of anticipation], Defendant must prove by clear and convincing evidence that the [item; process; reference] was [any one of the following]:

A disputed [item; process; reference] is not prior art unless Defendant proves by clear and convincing evidence that the [item; process; reference] was [any one of the following]: [*use only those that apply in the particular case*]

- [known] [or] [used] by someone else in the United States before the date of invention, unless the [knowledge] [or] [use] was private or secret.

- [in public use] [or] [on sale] in the United States more than one year before the patent application was filed;

- patented by someone else [before the date of the invention] [or] [more than one year before the patent application was filed];

- described in a publication [before the date of the invention] [or] [more than one year before the patent application was filed];

- described in a published patent application filed in [the United States; a foreign country] before the date of invention.

### Committee Comment

1. *General authority. See* 35 U.S.C §§ 102(a)-(g); *Woodlawn Trust* v. *Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood* v. *Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997); *Lamb-Weston, Inc.* v. *McCain Foods, Ltd.*, 78 F.3d 540, 544 (Fed. Cir. 1996). This instruction is intended to cover the most common types of "prior art" described in section 102; it is not intended to be an exhaustive list. *See, e.g.,* 35 U.S.C. § 102(g) (prior invention). In some cases, different "prior art" may be relied upon for section 102 and section 103 defenses. If that occurs, the instruction will need to be modified accordingly.

235                                                   (2008 ver.)

2. *Private / secret knowledge or use.* The Committee has not provided a definition of "private" or "secret" as used in the first bullet point, leaving that to be determined, if necessary, in the context of the particular case being tried. Private or secret knowledge or use by others, generally speaking, is not prior art. *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371 (Fed. Cir. 1998) ("when an asserted prior use is not that of the applicant, § 102(b) is not a bar when the prior use or knowledge is not available to the public."); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1550 (Fed. Cir. 1983) ("There is no reason or statutory basis, however, on which Budd's and Cropper's secret commercialization of a process, if established, could be held a bar to the grant of a patent to Gore on that process."). *But cf. SmithKline Beecham Corp. v. Apotex Corp.,* 365 F.3d 1306 (Fed. Cir. 2004); *Eolas Techs., Inc. v. Microsoft Corp.,* 399 F.3d 1325, 1334 (Fed. Cir. 2005).

(2008 ver.)

## 11.3.4 SECTION 102 DEFENSES — PRIOR ART — DEFINITIONS

### a) "date of invention"

The term "date of invention," as used in the previous instruction, means [*insert agreed upon date, if applicable*] [the date the patent application was filed [, insert effective filing date], unless Plaintiff proves by a preponderance of the evidence that the invention was conceived and actually reduced to practice at an earlier date. An invention is "conceived" when the inventor has formed the idea of how to make and use every aspect of the claimed invention. An invention is "actually reduced to practice" when it is made or when the inventor determines that it will work for its intended purpose.]

[To establish an earlier date, Plaintiff must prove by a preponderance of the evidence that [the invention was actually reduced to practice at an earlier date, in which case that date is the invention date] [, or] [the inventor conceived the invention before the date of the prior art and used reasonable diligence before the date of the prior art to reduce the invention to practice, in which case the date of the invention is the date when the invention was conceived.] Reasonable diligence means the inventor worked continuously to reduce the invention to practice, allowing for everyday interruptions].

### b) "on sale"

An [item; process] is "on sale," as that term is used in these instructions, if it was the subject of a commercial offer for sale in the United States more than one year before the patent application date[, and if, at that time, there was reason to believe that the [item; process] would work for its intended purpose]. A single offer to sell, primarily for profit rather than for experimental purposes, is sufficient, even if no actual sale was made.

### c) "publication"

To qualify as a "publication," as that term is used in these instructions, the [article; patent; other reference] must be disseminated or reasonably accessible to persons interested in the field of the invention.

### Committee Comment

1. *Conception and reduction to practice.* Conception occurs when the inventor has formed the idea as to how to make and use every aspect of the claimed invention. *Singh v. Blake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000) ("A conception must encompass all limitations of the claimed invention."); *Cooper v. Goldfarb*, 154 F.3d 1321, 1326-31 (Fed. Cir. 1998). Reduction to practice occurs when the invention is made and shown to work for its intended purpose. *Cooper*, 154 F.3d at 1326-31; *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997). ("[A] reduction

(2008 ver.)

to practice does not occur until the inventor . . . knows that the invention will work for its intended purpose."). Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-79 (Fed. Cir. 1996). Reasonable diligence allows for interruptions necessitated by the inventor or others working with him. *In re Jolley*, 308 F.3d 1317, 1327 (Fed. Cir. 2002); *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987).

2. *"On sale." See Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55 (1998). A single offer to sell, primarily for profit rather than for experimental purposes, is sufficient, even if no sale is made. *Scaltech v. Retec/Tetra, LLC,* 269 F.3d 1321, 1328 (Fed. Cir. 2001); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1046-47 (Fed. Cir. 2001). If someone other than the inventor secretly uses a process to make a product, the sale of the product does not constitute a sale of the process. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir. 1983).

3. *"Publication." See In re Cronyn*, 890 F.2d 1158, 1159-61 (Fed. Cir. 1989) ("reasonably accessible to the public"); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988).

4. Some claims may have different inventive dates due to, e.g., different effective filing dates where some subject matter was added in a continuation-in-part patent application, or where there are different dates of conception or reduction to practice for separate claims.

238                        (2008 ver.)

## 11.3.5 SECTION 102 DEFENSES — ELEMENTS

A patent claim is invalid if the invention it describes is not new. If there is "prior art" that already shows the same invention covered by a patent claim, then the claim is invalid because it is "anticipated" by the prior art.

Defendant contends that [Plaintiff's patent; claim[s] __, __, __ of Plaintiff's patent] [is; are] invalid because [it is; they are] anticipated by prior art.

To succeed on this contention, Defendant must prove two things by clear and convincing evidence:

1. All of the requirements of the [claim(s) you are considering] are expressly stated or inherent in a single item of prior art.

2. A person of ordinary skill in the field of the invention, looking at the single prior art item, would be able to make and use the invention disclosed in the claim [without an unreasonable amount of experimentation. Whether the amount of experimentation is unreasonable depends on the complexity of the field of the invention and the level of expertise and knowledge of persons of ordinary skill in that field.] If you find that Defendant has proved each of these by clear and convincing evidence as to a particular patent claim, then you must find for Defendant on that patent claim.

### Committee Comment

1. To be patented an invention must be new. 35 U.S.C. §§ 101, 102(a) & (e). If it is not new or known to others, it is said to be "anticipated." *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 66 F.3d 299, 302 (Fed. Cir. 1995) ("lack of novelty (often called 'anticipation') requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee"). The law of anticipation requires that every limitation in a claim be found in a single prior art reference, either explicitly or inherently. *See MEHL/Biophile Int'l Corp. v. Milgraum,* 192 F.3d 1362, 1365 (Fed. Cir. 1999); *see also SmithKline Beecham Corp. v. Apotex Corp.,* 403 F.3d 1331, 1345 (Fed. Cir. 2005); *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236 (Fed. Cir. 1989) ("anticipation" requires that the identical invention be described in a single prior art reference).

2. Enablement / undue experimentation requirement. *See In re Omeprazole Patent Litig.,* 483 F.3d 1364, 1379 (Fed. Cir. 2007); *Novo Nordisk Pharms., Inc. v. Bio-Technology Gen. Corp.,* 424 F.3d 1347 (Fed. Cir. 2005), citing *SmithKline Beecham,* 403 F.3d at 1337.

3. Anticipation must be proven by clear and convincing evidence. *See, e.g., Union Oil Co. of Cal. v. Atlantic Richfield Co.,* 208 F.3d 989, 995 (Fed. Cir. 2000).

239                                            (2008 ver.)

## 11.3.6      OBVIOUSNESS

Defendant contends that [Plaintiff's patent; claim[s] __, __, __ of Plaintiff's patent] [is; are] invalid because [it is; they are] obvious.

To succeed on this contention, Defendant must prove by clear and convincing evidence [as to the particular claim you are considering] that a person of ordinary skill in the field of the invention, who knew about all the prior art existing at the time the invention was made, would have come up with the invention at that time. [Unlike anticipation, obviousness may be shown by considering two or more items of prior art in combination.]

In deciding obviousness, you should put yourself in the position of a person with ordinary skill in the field at the time of the claimed invention. You must not use hindsight; in other words, you may not consider what is known now or what was learned from Plaintiff's patent. In addition, you may not use Plaintiff's patent as a roadmap for selecting and combining items of prior art.

[In deciding obviousness, you may also consider whether a person of ordinary skill in the field would have been discouraged from following the path the inventor took, keeping in mind that Plaintiff is not required to show such discouraging factors. As I have stated, Defendant has the burden of proving obviousness by clear and convincing evidence.]

In making your decision regarding obviousness, you should consider the following:

1) The scope and content of the prior art. You may consider prior art that was reasonably relevant to the problem the inventor faced, including prior art in the field of the invention and prior art from other fields that a person of ordinary skill would consider when attempting to solve the problem.

2) Any differences between the prior art and the invention in the patent claim.

3) The level of ordinary skill in the field of the invention at the time of the invention.

[4)    Any of the indications of non-obviousness described in the next instruction that are shown by the evidence.]

### Committee Comment

1. General authority. 35 U.S.C. § 103(a); *KSR Intern. Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1740-42 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 27-28 (1966). At least one set of post-*KSR*

pattern instructions adopts the view that obviousness – either the ultimate issue or the underlying facts or both – is a matter for determination by the court, not the jury. *See* N.D. Cal. Pattern Patent Instructions 4.3a, 4.3b (2007). This is premised upon the Supreme Court's statement in *KSR* that "[t]he ultimate judgment of obviousness is a legal determination," *KSR Intern.*, 127 S. Ct. at 1745, and a post-*KSR* decision in which the Federal Circuit stated that it reviews "a jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007). The Committee is not prepared to conclude that the Supreme Court intended, by its statement in *KSR* regarding the standard of review, to overturn the long-established practice of having juries determine obviousness – particularly because the question of who decides that point was not presented in *KSR*. In addition, the quoted language from *Dippin' Dots* appears to concern the standard of review, not the question of who decides obviousness (and it is also noteworthy that in *Dippin' Dots* itself, obviousness was decided by a jury and the Federal Circuit did not suggest this was inappropriate). *See also Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337 (Fed. Cir. 2008) (review of jury verdict; "due deference" is accorded to jury's factual determinations underlying obviousness determination, even if they are not explicit, but application of law to facts is reviewed *de novo*). The proposition that a jury's decision on a particular issue is reviewed *de novo* does not, in the Committee's view, mean that it is inappropriate for a jury to decide the point in the first place. Future developments in the law may, of course, require an alteration of these instructions' allocation of the obviousness determination to the jury.

2. The invention must have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-68 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999).

3. Obviousness may be shown by considering more than one item of prior art. *Brown & Williamson Tobacco Corp. v. Phillip Morris, Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *In re Rouffet*, 149 F.3d 1350, 1355-57 (Fed. Cir. 1998).

4. One may not consider what is known today, or what was learned from the teachings of the patent. *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).

5. "Teaching away." *United States v. Adams*, 383 U.S. 39, 40 (1966) (cited in *KSR*, 127 S.Ct. at 1740).

6. The fourth factor – concerning "secondary considerations" regarding obviousness – is bracketed because there may be cases in which no evidence regarding such considerations is offered.

241                                                    (2008 ver.)

### 11.3.6.1    OBVIOUSNESS — ADDITIONAL FACTORS INDICATING NON-OBVIOUSNESS

As I stated in the previous instruction, in deciding obviousness you should consider any of the following factors that, if present in the case, may indicate the invention was not obvious.

- the invention achieved commercial success, so long as the commercial success resulted from the claimed invention, rather than from something else, such as innovative marketing;

- the invention satisfied a long-felt need;

- others failed in attempting to make the invention;

- others copied the invention;

- the invention achieved unexpected results;

- [Defendant; others in the field] praised the invention;

- others sought or obtained rights to the patent from the patent holder;

- [experts; persons of ordinary skill in the field of the invention] expressed surprise at the making of the invention; or

- the inventor proceeded contrary to accepted wisdom.

Not all of these factors may be present. No single factor is more or less important than the others.

#### Committee Comment

1. General authority: *See Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *KSR Intern. Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739 (2007) (citing *Graham* for "secondary considerations" that may show nonobviousness.). *Ruiz* v. *A.B. Chance Co.*, 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc.* v. *Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co.* v. *Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

2. This instruction is to be used only if evidence of "secondary considerations" has been

introduced and should include only those factors that are supported by evidence introduced in the case.

3. The objective evidence, such as the commercial success, the licenses, and industry recognition of the import of the patent, must always be considered when deciding the issue of obviousness. *Richardson-Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1483 (Fed. Cir. 1997) ("[A]ll evidence touching the obvious-nonobvious issue must be considered before a conclusion is reached on the issue."); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538 (Fed. Cir. 1983). This is so because evidence of such secondary considerations "may often be the most probative and cogent evidence in the record," *Stratoflex,* 713 F.2d at 1538, and is "invariably relevant to a determination under Section 103." *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1579 (Fed. Cir. 1997).

4. Commercial success must be related to a patented feature, and not the result of something else, such as innovative marketing. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 719 (Fed. Cir. 1991).

5. The presence of any of these indications may suggest that the invention was not obvious. *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 662-63, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1129-31 (Fed. Cir. 2000).

**11.3.6.2     OBVIOUSNESS — COMBINING OF PRIOR ART REFERENCES**

[Because most inventions are built on prior knowledge,] The fact that each of the elements of the claim may be found in prior art is not enough, by itself, to prove obviousness. In determining whether Defendant has proved obviousness, you may combine multiple items of prior art only if there was an apparent reason for a person of ordinary skill in the field to combine them in the same way as in Plaintiff's claimed invention.  In deciding this, you may consider, among other things, any of the following factors:

> - what the prior art suggests about combining;

> - the knowledge possessed by persons who have ordinary skill in the field of the invention; and

> - the effects of market pressures and design needs that existed at the time, and the number of identified and predictable solutions for those demands.

### Committee Comment

1.  General authority. *See KSR Intern. Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1740-42 (2007).

## 11.3.7    INEQUITABLE CONDUCT

### Committee Comment

The Committee did not include a jury instruction regarding inequitable conduct because it is an issue for the court, not the jury. *See, e.g., Agfa Corp. v. Creo Prods., Inc.,* 451 F.3d 1366, 1371-72 (Fed. Cir. 2006).

(2008 ver.)

*Damages*

## 11.4.1     DAMAGES — GENERAL

If you find that Defendant infringed any valid claim of the ['____ Patent], you must then consider what amount of damages to award to Plaintiff. Plaintiff must prove damages by a preponderance of the evidence.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find infringement, you are to award Plaintiff damages adequate to compensate Plaintiff for that infringement. The damages you award are intended to compensate the patent holder, not to punish the infringer.

### Committee Comments

1. As a general matter, damages must be awarded if there has been a determination of both infringement and validity. 35 U.S.C. §284 (2006); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Del Mar Amonics, Inc. v. Quinton Instr. Co.*, 835 F.2d 1320, 1326-28 (Fed. Cir. 1987); *Lam Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

2. The damage award must be intended to compensate the patent holder, not to punish the infringer. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003).

**11.4.2      TWO TYPES OF DAMAGES — LOST PROFITS & REASONABLE ROYALTY**

There are two types of damages that Plaintiff may be entitled to recover: lost profits, or a reasonable royalty.

Lost profits consist of any actual reduction in business profits Plaintiff suffered as a result of the Defendant's infringement. A reasonable royalty is defined as the amount the patent owner and someone wanting to use the patented invention would agree upon as a fee for use of the invention. I will describe shortly what Plaintiff must prove to recover either type of damages.

Plaintiff is entitled to recover no less than a reasonable royalty for each infringing [sale; *fill in other infringing act*], even if Plaintiff cannot prove that it suffered lost profits in connection with that [sale; *fill in other infringing* act].

### Committee Comments

35 U.S.C. § 284 (2006); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (*en banc*).

(2008 ver.)

11.4.3      **LOST PROFITS**

To recover lost profits, Plaintiff must prove three things:

1. A reasonable probability that, if Defendant had not infringed, Plaintiff would have made additional sales of the patented [product; process] that Defendant made.

2. The amount of profit Plaintiff would have made on those sales. Plaintiff does not need to prove this amount with precision [, and if there are uncertainties regarding the specific amount of lost profits, you may resolve those uncertainties against Defendant].

[3. Defendant reasonably should have foreseen that Plaintiff would have lost profits.]

There are alternative ways for Plaintiff to establish an entitlement to recover lost profits. I will discuss these in the following instructions.

### Committee Comments

1. *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). To establish a right to lost profits, the plaintiff must "show a reasonable probability that, 'but for' the infringement it would have made the sales that were made by the infringer." *Rite-Hite*, 56 F.3d at 1545. A patentee is entitled to no less than a reasonable royalty on any infringing sales for which it cannot prove lost profits. In such cases, the court is obliged to award such reasonable royalties "as the award evidence will support." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003).

2. Once a patentee shows causation, "the trial court may resolve doubts underlying the precise measurement of damages against the infringer." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996).

3. As to the foreseeability element, see *Rite-Hite Corp.*, 56 F.3d at 1545-46. This element is bracketed because typically it will become an issue only if the defendant offers evidence of lack of foreseeability.

4. "A patentee may resort to any method showing, with reasonable probability, entitlement to lost profits 'but for' the infringement." *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003).

(2008 ver.)

### 11.4.3.1     LOST PROFITS — *PANDUIT* TEST

[One way that] Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented [or competing][product; process] [is] by proving three things:

    1.  There was a demand for the patented [or competing] product;

    2.  There was no acceptable, non-infringing substitute for the patented product; and

    3.  Plaintiff was capable of satisfying the demand.

An "acceptable, non-infringing substitute" is a product that has the advantages of the patented invention that were important to the purchasers of Defendant's product. If purchasers of the Defendant's product were motivated to purchase that product because of features that were available only from that product and the Plaintiff's patented product, then other products are not acceptable substitutes, even if they otherwise competed with Plaintiff's and Defendant's products.

### Committee Comments

1. One way in which a plaintiff can establish a right to lost profits is to satisfy the so-called *Panduit* test, which is generally said to require proof of (a) demand, (b) an absence of acceptable non-infringing substitutes, (c) plaintiff's possession of sufficient manufacturing and marketing capacity to satisfy the demand, and (d) the amount of profit the plaintiff would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*). The committee has dropped the fourth element from this instruction because that is a requirement for any lost profit award and is covered more generally in instruction no. 4.5, *infra*.

2. The bracketed references to "competing" products are included to cover situations in which it is appropriate for the plaintiff to recover lost profits on non-patented products that complete with those sold by the infringer. *See, e.g., Rite-Hite*, 56 F.3d at 1546; *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995).

3. The *Panduit* test is one way of proving causation for lost sales, but it is not the exclusive means of proving causation for lost sales. *Rite-Hite*, 56 F.3d at 1548; *BIC Leisure Products, Inc. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

4. Proof of "demand" for the product is generally satisfied by showing that there were significant sales of either the plaintiff's patented product or by significant sales of the defendant's

infringing product. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (1984). Since one or both of these facts is generally a basic component of most patent cases, the existence of "demand" is rarely a contested issue at trial.

5.   What constitutes an "acceptable, non-infringing substitute" is frequently a hotly contested issue. *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996) ; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*); *Standard Haven Prods. Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989). Whether a product needs to have actually been available on the market during the period of infringement is unclear. *Compare, Grain Processing*, 185 F.3d at 1341 (need not necessarily have been available) *with Zygo*, 79 F.3d at 1571 (must have been available).

6.   A plaintiff must be able to prove that it had the manufacturing and marketing capacity to make any lost sales. *Foran Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994).

7.   The burden of proof shifts to the defendant to disprove lost sales once the patent owner introduces sufficient evidence to satisfy the *Panduit* test. *Rite-Hite*, 56 F.3d at 1545.

**11.4.3.2      LOST PROFITS — TWO SUPPLIER MARKET**

[An alternative way that] Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented [product; process] [is] by proving two things:

> 1. Plaintiff and Defendant are the only suppliers for the product in the market; and
>
> 2. Plaintiff was capable of making all of the sales made by Defendant.

If Plaintiff proves these things, it is entitled to recover its lost profits on all of the sales made by Defendant.

**Committee Comments**

Where there are only two suppliers in the market for a product, it may be inferred that plaintiff would have made defendant's infringing sales, unless the defendant can demonstrate otherwise. *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

(2008 ver.)

### 11.4.3.3    LOST PROFITS — MARKET SHARE METHOD

[An alternative way that] Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented [product; process] [is] by proving two things:

> 1. Plaintiff would have made some portion of Defendant's infringing sales if Defendant's infringing product had not been available; and

> 2. Plaintiff was capable of making those additional sales.

If Plaintiff proves these things, it is entitled to recover its lost profits on the percentage of Defendant's sales that reflects what Plaintiff proves was its share of the market. [You may reach this conclusion even if acceptable, non-infringing substitute products were available from others.]

### Committee Comments

Under the "market share" test a patent owner may recover lost profits even though acceptable non-infringing substitutes are available from others. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989). In such cases, the plaintiff is entitled to recover lost profits on a percentage of defendant's sales equal to the defendant's (plus the plaintiff's) market share, and a reasonable royalty on the balance of the defendant's infringing sales. *State Indus.*, 883 F.2d at 1577-78; *Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l.*, 246 F.3d 1336, 1354-56 (Fed. Cir. 2001).

(2008 ver.)

#### 11.4.3.4     LOST PROFITS — COLLATERAL SALES

Plaintiff contends that the patented product is normally sold along with other collateral products, such as [*identify the collateral products*]. To recover lost profits for such collateral sales, Plaintiff must prove two things:

1.  It is reasonably probable that plaintiff would have sold the collateral products if the defendant had not infringed; and

2.  The collateral products function together with the patented product as a functional unit. Plaintiff may not recover lost profits on other products or services that might be sold along with the patented product for convenience or business advantage, but that are not functionally part of the patented product.

<b>Committee Comments</b>

1.  Permitting a patentee to recover lost profits on items not part of the patented product requires a careful balancing of the desire to fully compensate the patent holder for all actual damages on the "entire market value" of a product against the antitrust risk of permitting the patent holder to interfere with the sale of non-patented items. This legal test is intended to achieve such a balance. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (*en banc*).

2.  The instruction uses the phrase "collateral products" rather than the phrase "convoyed sales," in an effort to avoid some of the imprecision that exists in the case law as to exact scope of the phrase "convoyed products." "Convoyed products" is broad enough to include products or services typically sold with the patented product, whether or not any functional relationship exists between the patented product and the convoyed product. The existence of such convoyed sales may be taken into account in setting a reasonable royalty rate, whether or not any functional relationship exists between the two. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factor no. 6). However, lost profits may only be recovered on the subset of convoyed products for which a functional relationship exists, which this instruction denominates "collateral products." *Rite-Hite*, 56 F.3d at 1549-1550. *See further, Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371-1373 (Fed. Cir. 2004) (permitting recovery of lost sales of syrup collateral to sale of a patented juice dispenser).

(2008 ver.)

### 11.4.3.5      LOST PROFITS — PRICE EROSION / COST INCREASES

Plaintiff [also] contends that it lost profits [because it had to charge lower prices for its products because of Defendant's infringement] [[and;or] [because it incurred increased costs because of Defendant's infringement] [*insert alternative theory of price erosion, e.g., foregone price increases*]. To be recoverable, any such lost profits must have been reasonably foreseeable to Defendant.

If Plaintiff proves this, it is entitled to recover the profits it lost as a result of its [lowered prices; increased costs; *alternative theory, e.g., foregone price increases*], in addition to any profits it lost due to sales it did not make because of Defendant's infringement.

### Committee Comments

1.   This instruction should be utilized only in those cases where plaintiff's lost profits damage claim includes claims based upon price erosion and/or cost increases. If only one of those types of claims is being asserted, the instruction should be appropriately simplified by deleting references to the other type of claim.

2.   To prove price erosion for the sales it made (or would have made) during the infringement period, a patent owner must show that it would have been able to charge higher prices, but for the defendant's infringing acts. *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324-25 (Fed. Cir. 2000); *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996).

(2008 ver.)

**11.4.3.6      LOST PROFITS — AMOUNT**

If you conclude that Plaintiff has proved that it lost profits because of Defendant's infringement, the lost profits that you award should be the amount that Plaintiff would have made on any sales that Plaintiff lost because of the infringement, minus the additional costs that Plaintiff would have incurred in making those sales [, plus the amount by which Plaintiff's profits on its own sales were decreased as a result of reduced prices or increased costs caused by Defendant's infringement].

Plaintiff is required to prove the amount of its lost profits to a reasonable probability and may not recover amounts that are speculative. However, mathematical certainty is not required[, and if the reason Plaintiff has difficulty proving the amount of its lost profits is that Defendant did not maintain adequate records, then you should resolve any doubts as to the amount of lost profits in Plaintiff's favor.]

### Committee Comments

1.  The bracketed language in the first paragraph of this instruction should only be included in cases where the plaintiff's lost profit claim includes a claim based on price erosion and/or increased costs.

2.  The proper measure of recovery is any net profits lost by plaintiff as a result of defendant's infringing acts. Plaintiff's fixed costs are generally ignored in determining those incremental profits. *Paper Converting Mach. Co. v. Magna-Graphics Co.*, 745 F.2d 11, 22 (Fed. Cir. 1984).

3.  Plaintiff must prove the amount of its lost profits by a reasonable probability. *Grain Processing Corp. v. Am-Maize Products Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). Mathematical certainty is not required. *Del Mar Amonics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983). However, the amount of lost profits cannot be based on mere speculation. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030-31 (Fed. Cir. 1996).

4.  Doubts resulting from defendant's failure to retain appropriate records are to be resolved in the plaintiff's favor. *Lam*, 718 F.2d at 1066; *Ryco Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).

### 11.4.4       REASONABLE ROYALTY

Plaintiff seeks to recover a reasonable royalty.

[Plaintiff is entitled to recover a reasonable royalty for any of Defendant's infringing sales for which Plaintiff did not prove lost profits.]

A royalty is a payment made to the owner of a patent by someone else so that he can [make; use; sell; import] the patented invention. A "reasonable royalty" is the amount Plaintiff and Defendant would have agreed upon as a royalty at the time Defendant's infringement began.

In determining a reasonable royalty, you should assume that Plaintiff would have been willing to allow Defendant to [make; use; sell; import] the patented invention and that Defendant would have been willing to pay Plaintiff to do so. You should take into account what Plaintiff's and Defendants' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both Plaintiff and Defendant would have believed that Plaintiff's patent was valid and infringed. You should also assume that Defendant would have been willing to pay, and Plaintiff would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what Plaintiff and Defendant would have agreed upon if they had negotiated in this manner, not just what either Plaintiff or Defendant would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

- Royalties that others paid to Plaintiff for the patented invention;

- Royalties that Defendant paid to others for comparable patents;

- Whether Plaintiff had a policy of licensing or not licensing the patents;

- Whether Plaintiff and Defendant are competitors;

- Whether use of the patented invention helps to make sales of other products or services;

- Whether the product made using the patent is commercially successful, as well as its profitability;

- The advantages of using the patented invention over products not covered

256

(2008 ver.)

by the patent;

   - The extent of Defendant's use of the patented invention and the value of that use to Defendant;

   - Any royalty amounts that are customary for similar or comparable patented inventions;

   - The portion of the profit on sales that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by Defendant;

   - Expert opinions regarding what would be a reasonable royalty.

### Committee Comment

1.   This instruction is adapted from Northern District of California Model Patent Instructions 5.6 and 5.7. *See also* 35 U.S.C. 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*).

2.   The factors to be considered originated in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). If the *Georgia-Pacific* factors are provided to the jury, it is the Committee's view that all factors should be set out and not simply those for which the parties presented affirmative evidence. Typically, patent damages experts will review each of the *Georgia-Pacific* factors and testify as to whether each factor supports a higher royalty rate, a lower rate or is neutral. The Court should be sensitive not to highlight one or more of the factors in the instructions, to avoid any implication that the Court has endorsed certain of the evidence.

3.   There may be circumstances in which a test other than, or in addition to, the *Georgia-Pacific* test is appropriate. *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986). In a case in which damages are sought based on an alternative theory, modification of this instruction may be appropriate so that the trial court does not unduly credit a particular methodology.

(2008 ver.)

## 11.4.5        SINGLE / MULTIPLE RECOVERIES FOR INFRINGING ACT

### Committee Comment

The court and the parties must ensure that the jury does not duplicate lost-sales damages if several patents are infringed by the same accused product or process. 35 U.S.C. §287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l., Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1008-09 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987). On the other hand, if multiple products or processes are accused of infringing multiple patents, the patent holder may be entitled to recovery for multiple infringements.

In addition, when damages are based on lost reasonable royalties, infringement of multiple payments, even by a single infringing act, may warrant or require additive royalties for each patent that was infringed. *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n.8 (Fed. Cir. 1983); *see also, Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).

Because of the variety of situations that may arise, the Committee elected not to propose a pattern instruction on this topic, leaving the matter to be addressed in light of the particular scenario in a given case.

(2008 ver.)

**11.4.6        REQUIREMENT OF NOTICE (CLAIMS INVOLVING PRODUCTS)**

Plaintiff can recover damages only for infringement that occurred after Plaintiff gave notice of its patent rights. Plaintiff must prove by a preponderance of the evidence that it gave notice.

There are two ways a patent holder can give notice of its patent rights.

The first way is to give notice to the public in general, by placing the word "patent" or the abbreviation "PAT." with the number of the patent on substantially all the products it sold that included the patented invention. [Anyone that Plaintiff licensed to use the patented invention must also mark in the same manner substantially all of its products that include the patented invention.] This type of notice is effective from the date Plaintiff [and its licensees] began to mark in this manner substantially all of [its; their] products that included the patented invention.

The second way to give notice of patent rights is by directly informing Defendant that it is infringing a particular patent and identifying the infringing product. This type of notice is effective from the time it is given.

If Plaintiff did not give notice in either of these ways before filing this lawsuit, then Plaintiff can recover damages only for infringement that occurred after it filed the lawsuit, on [*date.*]

### Committee Comment

1. 35 U.S.C. §287(a), the patent marking statute, states:
    "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

2. This instruction (based on a Model ABA Instruction) should be used where patents containing product claims (as opposed to method or process claims) are being asserted and the

patent owner or its licensees are producing a tangible product that can be marked. *Am. Med. Systems, Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993). When a patent contains both product and process claims, and there is a tangible item that can be marked, a patent owner must comply with §287(a) if both the product and process claims are asserted. *Id.* at 1538*; see also Devices for Med. Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987). It is unclear, however, whether a patentee can avoid the requirements of §287(a) by only asserting the process claims. *Compare Boehl*, 822 F.2d at 1066, with *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed. Cir. 1983) and *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 906 F. Supp. 813, 817 (E.D.N.Y. 1995).

　　　3.　Actual notice requires "the affirmative communication of a specific charge of infringement by a specific accused product or device." *Omstead Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001). However, the charge of infringement may be "qualified". *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1346 (Fed. Cir. 2001).

　　　4.　If there are licensees of the patent, the requirement of notice applies to the patent holder and all licensees. In such a case, the bracketed language in the third paragraph should be used.

　　　5.　Damages may begin to run from the date of publication of the patent application. *See* 35 U.S.C. § 154(d). In such cases, this instruction will require substantial modification.

260　　　　　　(2008 ver.)

## 11.4.7      TOTALING THE DAMAGE AWARD

Any amounts that you award for lost profits and for reasonable royalties should be set out separately on the verdict form that I will give you.

### Committee Comments

1.   Requiring the jury to separately identify the amounts awarded for lost profits and reasonable royalties make review of the damage award in connection with JMOL's and appeals easier.

2.   This instruction should be coordinated with any additional instructions provided by the court regarding the method to be following in filling out the particular verdict form that the court decides to use.

261                                          (2008 ver.)