IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

E2INTERACTIVE, INC. and
INTERACTIVE COMMUNICATIONS
INTERNATIONAL, INC.,

OPINION AND ORDER

09-cv-629-slc

                Plaintiffs,

v.

BLACKHAWK NETWORK, INC.,

                Defendant.

---

In this patent infringement suit, judgment was entered on June 20, 2014 in favor of defendant Blackhawk Network, Inc. after it successfully appealed the judgment of infringement to the Court of Appeals for the Federal Circuit. Dkt. 559. On September 24, 2014, the clerk of court awarded Blackhawk costs totaling $236,874.56. Dkt. 569. Now before the court is the InComm plaintiffs' motion for review of costs brought pursuant to Fed. R. Civ. P. 54(d)(1). Dkt. 570. Specifically, InComm objects to the following costs taxed by the clerk: (1) $2,688.47 for lodging and meal expenses incurred by Blackhawk's expert witnesses; (2) $4,434.56 in flight expenses for Blackhawk's CEO (including three flights on a private jet); (3) $132.01 in meal expenses for a witness; (4) $849.39 for cars rented by two witnesses during trial; (5) $77,116.50 for demonstrative exhibits; (6) $1,457.97 for transcribing and videotaping the deposition of a business consultant; and (7) $34,475.83 for copying.

Having reviewed the parties' submissions, I find that most of the costs requested by Blackhawk were authorized by statute and reasonable and necessary to the litigation. Because certain costs related to witness travel are excessive or unexplained, I am reducing by $5,217.50 the amount taxed by the clerk, resulting in an award to Blackhawk of $231,657.06.

OPINION

Under 28 U.S.C. § 1920(2)-(4), the court may tax a prevailing party's costs associated with witness testimony; transcribing and video recording depositions; and the exemplification and copying of materials. *See Little v. Mitsubishi Motors North America, Inc.*, 514 F.3d 699, 701-02 (7th Cir. 2008) (finding statute covers videotaped depositions). Costs generally are accepted as long as they fall into one of the categories of costs statutorily authorized for reimbursement. *Id.* at 701; Rule 54(d). "[I]n addition to being authorized by statute, a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little*, 514 F.3d at 702. However, the court generally does not "conduct a painstaking inspection of the costs to determine that certain costs are 'reasonable and necessary' to the litigation." *Z Trim Holdings, Inc. v. Fiberstar, Inc.*, 2008 WL 3843507, *2 (W.D. Wis. Aug. 12, 2008) (citing *Anderson v. Griffin*, 397 F.3d 515, 522 (7th Cir. 2005); *Taco Bell v. Continental Casualty Co.*, 388 F.3d 1069, 1075 (7th Cir. 2004)). As this court noted in *Z Trim*, market incentives do a better job keeping costs in check than the court could possibly do after the fact. *Id.*

**I. Witness Expenses (Nos. 1-4)**

"Collectively, 28 U.S.C. §§ 1821 and 1920(3) authorize the award of costs to reimburse witnesses for their reasonable travel and lodging expenses." *Majeske v. City of Chicago*, 218 F.3d 816, 825-26 (7th Cir. 2000). InComm contends that several expenses incurred by Blackhawk's witnesses are excessive under the circumstances.

2

### A. Lodging

InComm objects to the $1,059 ($353 per night) awarded for Blackhawk's damages expert, Carl Degen, to stay three nights in a Washington, D.C. hotel even though he was deposed for a single day. Blackhawk does not explain why Degen needed to stay three nights in a hotel to attend a one-day deposition; it rejoins simply that this court awarded InComm the same type of costs when InComm was the prevailing party prior to the appeal. This is a potentially salient point, but it is meaningless without an apples-to-apples comparison. Further, Blackhawk never challenged the costs this court initially awarded to InComm. Although InComm would have the court reduce the claimed nightly rate to the $183 government (GSA) per diem rate, *that* isn't an apples-to-apples comparison either. In a patent lawsuit between relatively large companies, $353 for a hotel in Washington, D.C. is not out of the question. That said, I agree that three nights lodging for a one-day deposition is excessive, so I will pare off one night.

InComm also objects to the $1,100 that Blackhawk's liability expert, Lori Breitzke, claimed for staying two nights in Washington in connection with her two-day deposition. There is not a hotel receipt for this expense and Blackhawk does not itemize the cost of the hotel stay or identify the hotel by name. Although a two-night stay is reasonable, an average cost of $550 per night is not, at least not when you want your opponent to pick up the tab. I will default to the $353 rate that Degen paid and reduce the award from $1,100 to $706 (- $394).

### B. Meals

InComm challenges the $270.03 that Breitzke claimed as meal expenses, which according to her invoice included $109.08 for three breakfasts and two dinners on November 28, 2011 and another $90 for dinner on November 28 with one of Blackhawk's attorneys. Blackhawk has not

3

explained why Breitzke dated all of these expenses November 28, but I assume that she incurred them during her travel to Washington for her deposition on December 1 and 2, 2011. InComm has suggested awarding the GSA per diem rate of $71 for two days. However, one would expect that Brietzke incurred meal expenses on a travel day in addition to the two days of her deposition testimony. Three days at a per diem of $71 is $213; that's close enough to $270 that, in a case of this nature and scope I will not reduce the award.

InComm argues that the $132.01 that a witness spent on meals in connection with his single-day trial appearance is excessive, especially because Blackhawk only produced one in-room dining receipt for $20.01. Blackhawk responds that although the witness incurred meal expenses for two full days in addition to the $20 charge, he was only able to recover the one receipt. Therefore, Blackhawk used the February 2012 GSA per diem rate for Madison, which was $56, and claimed two days of meals ($112) plus the in-room dining receipt. Blackhawk's explanation is reasonable. I will not reduce the award.

### C.  Rental Cars

InComm objects to awarding $849.39 in rental car charges for two witnesses to travel from the airport to their hotel in downtown Madison, where each stayed about a week at a time and testified during two days of trial. *See* dkt. 562 at 15. Blackhawk does not explain why these witnesses needed to rent a car. It responds only that InComm had been awarded similar costs. That's the sort of response that should have been made to InComm's attorneys in an email meant to shame them into not fighting over nickels when Franklins and Grants are changing hands. Once Incomm complained to the court, the parties were stuck with what a government employee views as reasonable. So here we are. Records show that one witness drove the four hundred dollar rental car a total of 10 miles, about one round trip from the airport to the hotel, which was within easy walking

distance of the courthouse. Dkt. 562, exh. 11 at 28. InComm complains that it was unnecessary and unreasonable for these witnesses to spend over $800 to travel to the courthouse for two days of testimony. InComm is correct. In the absence of a counter-suggestion from Blackhawk, I will accept InComm's proposal that Blackhawk be awarded $13.46 in mileage for the witnesses to travel between the airport and the courthouse. The award will be reduced by $835.93.

### D. Private Jet

InComm objects to the award of $4,434.56 for Blackhawk's President, Talbot Roche, to fly three times on a private jet between her vacation home in Telluride, Colorado (3,114 miles at $1.29 per mile) and the courthouse in Madison, and then to fly to her home in San Francisco, California on a commercial airline ($471.51). Blackhawk argues that it may recover the cost of the private flights under the "privately owned vehicle" provision of 28 U.S.C. § 1821(c)(2), which provides that a "mileage allowance" be paid to a "witness who travels by privately owned vehicle." The federal mileage rate for airplanes at the time of trial was $1.29 per mile.

> However, as InComm points out, § 1821(c)(1) (emphasis added) requires:
>
>> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

Although the statute does not require the witness to use a commercial carrier, it makes clear that she should take the most practical route and seek the most economical rate available. Blackhawk has not explained why Roche "had" to fly on a private jet versus a common carrier between Telluride and Madison. InComm has produced evidence that commercial flights are available between the two

cities. See dkt. 564 at exh. 3-4. Because Blackhawk has failed to show that Roche's trips on the private jet were a reasonable and necessary expense, I will not award Blackhawk these costs.

InComm also takes issue with the fact that Roche made multiple trips to Madison to attend the trial. Blackhawk explains that because the trial was bifurcated, Roche returned to Telluride after closing arguments in the liability phase and flew back to Madison at the start of the damages phase. Although Blackhawk is correct that multiple trips to and from trial by a company executive could be reasonable under the appropriate circumstances, we do not have those circumstances here. Only a weekend separated the liability and damages phases of trial in this case. Making InComm pay for Roche to return to her vacation home for the weekend is unreasonable and not justified under the circumstances.

Roche may travel by private jet as she sees fit, and she was not required to spend weekends in Madison during trial if she would rather be in Telluride, but she cannot expect her litigation opponent to absorb the additional costs generated by these personal choices. Because I find the $4,434.56 award for Roche's travel to be excessive, I will reduce it by $3,634.57 and allow $800 for one flight from Telluride to Madison and another from Madison to San Francisco. See dkt. 564, exh. 4 (showing sample fares for Telluride–Madison–San Francisco flights).

## II. Demonstrative Exhibits (Nos. 5)

InComm challenges the $77,116.50 award for Blackhawk's graphics and animation costs on the ground that the following costs were not for time spent actually producing the demonstratives:

- $20,750 for third-party vendor IP Demons to "man the war room," travel to Wisconsin, load presentation equipment into a van, be present in court and pack up equipment.

- $1,872 in travel and lodging expenses for IP Demons's consultant.

- $16,275 for several unexplained tasks performed by IP Demons, including "meeting in city," "setting up cars and scene," "analogy construction," "developing analogy for demonstratives," "car analogy," "conference call with Jason," "phone call with Jason" and "road scene animations."

InComm also argues that many of the demonstratives that IP Demons created were not reasonably necessary for trial, including 34 slides that were made for but not used during the opening power point presentation: pictures of Blackhawk's witnesses, the word "Evidence," photos of each litigator involved at trial, a football field with the words "Falcons" and "Packers" in the end zones, images of railroad tracks and several introductory jury instructions.

Blackhawk argues that 28 U.S.C. § 1920(4) allows a prevailing party to recover exemplification fees and that it need not explain how it intended to use each graphic or animation. The use of demonstrative exhibits is not unusual. *E.g., United States v. Salerno*, 108 F.3d 730, 744 (7th Cir. 1997) ("Demonstrative aids are regularly used to clarify or illustrate testimony."). The Court of Appeals for the Seventh Circuit has explained that the term "exemplification," as it is used in § 1920(4), is "broad enough to include a wide variety of exhibits and demonstrative aids." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). By flagging specific demonstratives that InComm deems silly or unnecessary, InComm is asking the court to perform the painstaking review shunned in *Anderson* and *Taco Bell*. As a result, InComm's request to reduce the cost taxed for any "unnecessary" exhibit will be denied.

With respect to the other expenses, it is clear from the detailed invoices submitted by Blackhawk that IP Demons had consultants at the courthouse during trial to both present and make any necessary changes to the demonstratives. *See* dkt. 366 at exh. 6. Blackhawk cut approximately $12,000 of IP Demons's charges for equipment and printing. *Id*. at p. 9. Because I agree that the expenses that Blackhawk incurred were necessary to create and present its animated and computer-generated demonstratives, I will allow them. *See Cefalu*, 211 F.3d at 428 ("So long as the means of presentation furthers the illustrative purpose of an exhibit, we believe it is potentially compensable as exemplification. This approach allows appropriate room for the more sophisticated types of multi-media presentations made possible by technological advances.").

### III. Deposition Transcription (No. 6)

InComm asserts that Blackhawk should not have been awarded the $1,457.97 associated with the stenographic transcript and videotaping costs for the deposition of InComm's business consultant, Peter Quadagno, because his work did not relate to any issue in the litigation. Blackhawk argues that the deposition was necessary because Quadagno suggested to Blackhawk's General Counsel that Blackhawk hire him as a consultant because he had information that would undermine the validity of InComm's '439 patent. *See* dkt. 566, exhs. 2-3. Blackhawk also learned that Quadagno had worked on a prior art system similar to the '439 patent. Although Blackhawk did not hire Quadagno, it issued him a third party subpoena, whch Quadagno ignored because he had been retained by InComm as a non-testifying consultant. Blackhawk states that deposing Quadagno was the only way to discover what information he had concerning invalidity. Although the deposition did not result in any information used by Blackhawk at trial,[1] I agree with the clerk of court that Blackhawk reasonably believed that the deposition could provide discovery relevant to the case. Dkt. 539 at 3. *See also Majeske*, 218 F.3d at 825 ("[T]he introduction of testimony from a transcript is not a prerequisite for finding that it was necessary;" . . . "a transcript need not be 'absolutely indispensable in order to provide the basis of an award of costs.'").

### IV. Copying (No. 7)

Finally, InComm argues that the $34,475.83 awarded Blackhawk for copying is excessive and unreasonable and should be reduced to $22,050.80—the amount InComm initially was awarded—because Blackhawk has not provided any information from which the court can determine whether the copies were necessary for use in the case. Although Blackhawk did not identify any of the documents copied or how many copies were made of each document, I am satisfied from the records it submitted that the copies were made for this case and were billed in the normal course of

---

[1] Quadagno did not recall contacting Blackhawk or having any information regarding invalidity.

business.  *See Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) (noting similar).  Copying expenses in excess of $34,000 are high but not unreasonable for a contentious patent lawsuit.  As a result, I will not lower the amount awarded for copying expenses.

ORDER

IT IS ORDERED that the motion for review of costs filed by the InComm plaintiffs, dkt. 570, is GRANTED in part.  Defendant Blackhawk Network, Inc. is AWARDED $231,657.06 in costs under Fed. R. Civ. P. 54.

Entered this 20th day of February, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge